UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YOUNG AMERICA'S FOUNDATION; BINGHAMTON
UNIVERSITY COLLEGE REPUBLICANS; and JON
LIZAK, President of the College Republicans of
Binghamton University,

                                       *Plaintiffs*,

20-CV-0822

LEK/ML

-against-

HARVEY STENGER, President of SUNY-Binghamton, in
his official and individual capacities; BRIAN ROSE, Vice
President for Student Affairs of SUNY-Binghamton, in his
official and individual capacities; JOHN PELLETIER, Chief
of SUNY-Binghamton UPD, in his official and individual
capacities; COLLEGE PROGRESSIVE LEADERS OF
TOMORROW ("PLOT"); STUDENT ASSOCIATION OF
BINGHAMTON UNIVERSITY,

                                       *Defendants.*

*Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendant NYS Office of
Information Technology Services
The Capitol
Albany, New York 12224-0341

John F. Moore
Assistant Attorney General, of Counsel
Telephone:  518-776-2293
Fax: 518-915-7738 (Not for service of papers)

                                       Date: October 16, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

   A. The November 14, 2019 'Tabling Event' ....................................................... 3

   B.  November 18, 2019 'Dr. Laffer Event' .......................................................... 7

ARGUMENT ...................................................................................................... 10

   I. PLAINTIFFS' FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM. ............ 10

      A.  November 14, 2019 "Tabling Event" ........................................................ 11

      *i.  Plaintiff's Failed To Allege that the Moving Defendants Were Personally Involved in the 11/14/2019 Incident* .................................................................... 11

      *ii.  YAF does not have standing to bring a First Amendment claim as it pertains to the 11/14/19 incident*..............................................**Error! Bookmark not defined.**

      *iii. Plaintiffs Failed to Allege That Their First Amendment Activity Was a Substantial and Motivating Factor in escorting the College Republicans from the Tabling Event* ................................................................................................... 15

      B.    November 18, 2019 "Dr. Laffer Event"...................................................... 17

      i.    *There was no causal connection between any alleged "adverse action" on November 18, 2019, and any protected speech.* .................................................. 17

   II. PLAINTIFFS' SECOND CAUSE OF ACTION FAILS TO ALLEGE THAT DEFENDANTS STENGER AND ROSE RETALIATED AGAINST THE COLLEGE REPUBLICANS. ................................................................................................ 19

   III. THE COMPLAINT FAILS TO ALLEGE A CONSPIRACY CLAIM AGAINST THE MOVING DEFENDANTS. ........................................................................... 21

      A.   42 USC §1985(3) Claim. ........................................................................ 21

      B.    42 USC §1986 Claim. ........................................................................... 22

   IV. THE COMPLAINT FAILS TO ALLEGE AN EQUAL PROTECTION CLAIM AGAINST THE MOVING DEFENDANTS...................................................... 23

   V.  PLAINTIFFS ARE NOT ENTITLED TO "OBEY THE LAW" INJUNCTIONS OR DECLARATORY RELIEF. ............................................................................. 25

CONCLUSION................................................................................................... 27

i

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................10, 17, 20

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003)......................................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................10

*Bogart v. NYC Law Dep't.*,
    2001 U.S. Dist. LEXIS 21919 (S.D.N.Y. Dec. 20, 2001) ......................................20

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*,
    462 F.3d 219 (2d Cir.2006).......................................................................................14

*Brown v. City of Oneonta*,
    221 F.3d 329 (2d Cir. 2000).................................................................................21, 23

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011)......................................................................................14

*Cater v New York*,
    316 F.Supp.3d 660 (S.D.N.Y. 2018).........................................................................20

*Center for Bio-Ethical Reform v Black*,
    13-cv-581 (WDNY) ....................................................................................................3

*Ciambriello v. Cty. of Nassau*,
    292 F.3d 307 (2d Cir. 2002)......................................................................................21

*Cine SK8, Inc. v. Town of Henrietta*,
    507 F.3d 778 (2d Cir. 2007)......................................................................................21

*Clapper v. Amnesty Intern. USA*,
    568 U.S. 398 (2013)..................................................................................................14

*Corsini v. Brodsky*,
    No. 17-CV-1461, 2018 U.S. App. LEXIS 9209 (2d Cir. April 13, 2018)...............21

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989)............................................................................................4

*Cox v. Warwick Valley Cent. School Dist.*,
    654 F.3d 267 (2d Cir. 2011)....................................................................................11

*Ctr. for Bio-Ethical Reform, Inc. v. Black*,
    234 F. Supp. 3d 423 ............................................................................... passim

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..........................................................................................14

*Deshaney v. Winnebago County Dep't of Social Services*,
    489 U.S. 189 (1989)..........................................................................................12

*Dolan v. Connolly*,
    794 F.3d 290 (2d Cir. 2015)..............................................................................21

*Dublino v. McCarthy*,
    2019 U.S. Dist. LEXIS 78347 (N.D.N.Y. May 9, 2019).......................................25

*Dwares v. City of New York*,
    985 F.2d 94 (2d Cir. 1993)........................................................................... 11-12

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ........................................................................26

*Fries v. Barnes*,
    618 F.2d 988 (2d Cir. 1980)..............................................................................11

*Gaston v. Coughlin*,
    249 F.3d 156 (2d Cir. 2001)..............................................................................11

*Gentile v. Nulty*,
    769 F.Supp.2d 573 (S.D.N.Y. 2011)..................................................................24

*Goldberg v. Cablevision Sys. Corp.*,
    281 F. Supp. 2d 595 (E.D.N.Y 2003) ................................................................26

*Gonzalez v. Sarreck*,
    2011 U.S. Dist. LEXIS 122873 (S.D.N.Y. Oct. 24, 2011) ..................................20

*Graham v. Henderson*,
    89 F.3d 75 (2d Cir.1996)...................................................................................15

*Griffin v. Breckenridge*,
    403 U.S. 88 (1971)............................................................................................22

iii

*Harlen Assocs. v. Inc. Vill. of Mineola*,
    273 F.3d 494 (2d Cir. 2001)......................................................................................23

*Hershey v. Goldstein*,
    938 F. Supp. 2d 491 (S.D.N.Y. 2013)......................................................................16

*Keister v. Bell*,
    2020 U.S. Dist. 97794 (N.D. Ala. May 19, 2020) ..................................................16

*Kerman v. City of New York*,
    261 F.3d 229 (2d Cir.2001)................................................................................ 19-20

*L.K. v. Sewanhaka Central High School Dist.*,
    641 F. App'x 56 (2d Cir. 2016) ...............................................................................23

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993)..................................................................................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................14

*Nash v. McGinnis*,
    585 F.Supp.2d 455 (W.D.N.Y. 2008) ......................................................................24

*Papineau v. Parmley*,
    465 F.3d 46 (2d Cir. 2006)........................................................................................25

*Patterson v. Cnty. of Oneida*,
    375 F.3d 206 (2d Cir. 2004)......................................................................................11

*Peregrine Myanmar v. Segal*,
    89 F.3d 41 (2d Cir. 1996)..........................................................................................25

*Rowe v. New York State Division of Budget*,
    2012 U.S. Dist. LEXIS 132238 (N.D.N.Y. 2012) ..................................................25

*Samuels v. Fischer*,
    168 F. Supp.3d 625 (S.D.N.Y. 2016)........................................................................20

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)....................................................................................................14

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir. 1999)......................................................................................22

*Valley Forge Christian College v.  Ams. United for Separation of Church & State,*
    454 U.S. 464 (1982)..................................................................................................15

*Warth v. Seldin,*
    422 U.S. 490 (1975)..................................................................................................14

*White Plains Towing Corp. v. Patterson,*
    991 F.2d 1049 (2d Cir.1993).....................................................................................15

*White Plains Towing Corp. v. Patterson,*
    991 F.2d 1058 ...........................................................................................................18

*Wyatt v. Cole,*
    504 U.S. 158 (1992)..................................................................................................10

*Young America's Found. v. Kaler,*
    370 F.Supp.3d 967 (D.Minn. 2019)..........................................................................16

*Young America's Found. v. Napolitano,*
    2018 U.S. Dist. LEXIS 70108 (N.D. Cal. 2018) ..............................................17, 19

**U.S. CONSTITUTION**

First Amendment ............................................................................................... passim

United States Constitution Fourteenth Amendment ..............................................12, 23

**FEDERAL STATUTES**

28 U.S.C.
    § 2201(a) ...................................................................................................................26

42 USC
    § 1983......................................................................................................... passim
    § 1985(3)................................................................................................................2, 21
    § 1986..............................................................................................................1, 20, 22

**FEDERAL PRACTICE LAW & RULES**

FRCP 12(b)(1) .........................................................................................................1, 2

FRCP 12(b)(6) .......................................................................................1, 4, 10, 17

FRCP 65(d) ...............................................................................................................25

## PRELIMINARY STATEMENT

Defendants Harvey Stenger (President of SUNY Binghamton), Brian Rose (Vice President of Student Affairs at SUNY Binghamton) and John Pelletier (Chief of SUNY Binghamton University Police Department ("UPD") (collectively "State Defendants") submit this Memorandum of Law in support of their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), for failure to state a claim for which relief can be granted. The Verified Complaint (hereinafter "Complaint" or "Dkt. 1") alleges facts in support of six causes of action, which variously make claims against these and three other defendants: College Progressives (a student organization at SUNY Binghamton), Progressive Leaders of Tomorrow (hereinafter "PLOT") (a Binghamton-based non-student group), and the Student Association of Binghamton University (hereinafter "SA").

Plaintiffs' claims arise from two confrontations between politically progressive and politically conservative groups, both of which took place on the SUNY Binghamton campus. There are no allegations the State Defendants participated in either event, except that Defendant Pelletier ordered his officers to restore peace.  Plaintiff's Complaint (Dkt. 1) seeks money damages and declaratory/injunctive relief claiming violation of constitutional rights pursuant to the First Amendment of the U.S. Constitution, and the Fourteenth Amendment's equal protection clause and under 42 USC §1983, §1985(3), and §1986, alleging violation of free speech rights, retaliation, conspiracy and equal protection violations.  The Complaint contains six causes of action, five of which are directed as against these moving Defendants.[1]  *Id.*  Specifically, the five causes of action alleged in the Complaint and directed as against these moving Defendants are as follows: 1) First Cause of Action - that Defendants Stenger, Rose and Pelletier violated Plaintiffs' freedom of

---

1 The Plaintiffs' third cause of action sets forth no claims against these moving Defendants.

speech under the First Amendment and 42 USC §1983. (Dkt. 1, ¶¶ 148 – 156);  2) Second Cause of Action - First Amendment Retaliation under 42 USC §1983 as against Defendants Stenger, Rose and another defendant, Student Association of Binghamton University (hereinafter "SA") (*id.*, ¶¶ 157 – 161); 3) Fourth Cause of Action - that Defendants Stenger, Rose and Pelletier, as well as well as co-Defendants College Progressives and Progressive Leaders of Tomorrow (hereinafter "PLOT"), conspired to deprive Plaintiffs of their constitutional rights in violation of 42 USC §1985(3) (*id.*, ¶¶  170 – 173); 4) Fifth Cause of Action - that Defendants Stenger, Rose and Pelletier failed to prevent §1985(3) conspiracies, pursuant to 42 USC §1986 (*id.*,  ¶¶ 174 – 179), and 5) Sixth Cause of Action – that Defendants Stenger, Rose and Pelletier violated Plaintiffs' rights pursuant to the Fourteenth Amendment's equal protection clause.  (*Id,*, ¶¶ 180 – 186).

Defendants Stenger, Rose and Pelletier bring the instant Motion to Dismiss to the Complaint in its entirety pursuant to FRCP 12(b)(1) and 12(b)(6), since the Complaint fails to allege facts which state a claim under the aforementioned legal theories, and because Plaintiff YAF lacks standing to assert various claims herein.

## STATEMENT OF FACTS

The Plaintiffs in this matter are Young America's Foundation ("YAF"), a nonprofit organization, incorporated in Tennessee, Binghamton University College Republicans, an unincorporated SUNY Binghamton student organization ("College Republicans"), and Jon Lizak, a College Republicans member/President and SUNY Binghamton student.  Dkt. 1 ¶¶ 10 - 17. Plaintiffs' claims stem from two different events: a November 14, 2019 on campus outdoor "Tabling Event" by the College Republicans, and a November 18, 2019 lecture in a University lecture hall featuring Arthur Laffer, hosted by College Republicans ("Dr. Laffer Event").

As it pertains to these moving Defendants, Plaintiffs claim that Defendant Stenger is generally responsible for adopting, approving, creating and enforcing the policies, rules and regulations of the SUNY Board of Trustees and SUNY Binghamton regarding students', and student groups' speech activities.  Dkt. 1, ¶ 19.  Plaintiffs claim that Stenger had constructive knowledge of the SUNY Board of Trustees' rules which prevent the deliberate interference of any person's freedom to express their views, and also that he was actually or constructively aware of a settlement agreement in the case of *Center for Bio-Ethical Reform v Black,* 13-cv-581 (WDNY) *Id.*, ¶¶ 20 – 21.  Plaintiffs allege that Stenger, Rose and Pelletier enacted an unwritten "Speech Suppression Policy" to chill and suppress unpopular student speech, and/or speech with which they disagree, but provided no particulars as to this supposed policy. *Id.*, ¶¶ 22-25.  Plaintiffs allege that Defendant and University Police Department Chief Pelletier enforced and ordered others to enforce the "Speech Suppression Policy." *Id.*, ¶¶ 30-32.

## A. The November 14, 2019 'Tabling Event'

The Complaint alleges that Plaintiff College Republicans held a "tabling event"[2] on the SUNY Binghamton campus on November 14, 2019 beginning at 10 a.m. The event was held to promote the Dr. Laffer Event.  Dkt. 1, ¶¶ 47, 49 - 50.  The College Republicans did not obtain a required permit from the SA to table on that date.  *Id.*, ¶ 48.

Plaintiffs alleges that at approximately 1:30 p.m., members of Defendant College Progressives organized a confrontation with College Republicans over the content of the tabling. *Id.*, ¶¶ 50-51.  During this confrontation members of Defendant College Progressives allegedly "attacked" the table, confiscated/destroyed flyers and posters, broke down the table, hurled insults

---

2 Described in the Complaint as "setting up a table in a high-traffic area to interact with students for event promotion, organization recruitment, and information sharing."  Dkt. 1. ¶ 45.

at the College Republicans, and "physically assaulted" one member by removing her "Make America Great Again" hat. *Id.*, ¶¶ 53 – 55. Plaintiffs allege that the SUNY Binghamton UPD "applied" the vaguely-described "Speech Suppression policy" and "demanded" that the College Republicans leave the area of their unpermitted tabling. *Id.*, ¶ 55.

There is no allegation that Defendants Stenger, Rose and/or Pelletier endorsed or were aware of any of this conduct before, or at the time it occurred, nor that they were personally present at the tabling event and/or confrontation. Despite this, Plaintiffs allege that Defendants Stenger, Rose and Pelletier "failed to take action" to defend the College Republicans' constitutional rights at the tabling event, and "personally and actively supported" the actions of College Progressives present at the tabling event. Dkt. 1, ¶ 57.

In an apparent effort to overcome the lack of allegations that the State Defendants were present for the tabling event, or the ensuing encounter, Plaintiffs point to a November 18, 2019 statement issued by Defendant Rose. Dkt. 1, ¶¶58 – 63. That statement is annexed to and incorporated into the Complaint[3] as Exhibit "2" to the Complaint. See, Dkt. 1, Ex. 2, pp. 47 – 48 of 75 ("Rose November 18 Statement"). Plaintiffs allege that the Rose November 18 Statement was "false", because Defendant Rose characterized gun imagery used in the tabling event as "provocative." Dkt. 1, ¶¶ 59 – 60; Ex. 2 p. 47 of 75. Plaintiffs assert this gun imagery was being utilized by "another student organization that had an adjacent table," and that the College Republicans were only promoting the Dr. Laffer event and distributing hot chocolate. Dkt. 1, ¶¶60 - 62. Plaintiffs allege that Defendant Rose "effectively admitted [in the Rose Nov. 18 Statement] that he and Defendant Stenger had, consistent with the "Speech Suppression policy," caused

---

3 For the purposes of deciding a motion to dismiss under Rule 12(b)(6), the Second Circuit has deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989).

SUNY-Binghamton to violate College Republicans' free speech rights" because police directed Plaintiffs to abandon the area and escorted them away.  Dkt. 1, ¶63.

The Rose November 18 Statement includes numerous facts omitted from the numbered paragraphs of the Complaint, including: 1) Plaintiff College Republicans were joined by a second group, Turning Point, which was not chartered by the SA or recognized by the University; 2) that neither group had followed procedures to properly secure space at the reservable space; 3) that representatives of the University and SA had advised both groups that they were tabling without reservation[4]; 4) that both groups had been asked to relocate, and; 5) that both groups refused to relocate.  Dkt. 1, Ex. 2, p. 47 of 75.

The Rose November 18 statement also included an explanation that space reservation procedures exist to "avoid conflict among groups for use of the space," and "to safely manage activity in the area.".  *Id.*  It further noted that "[h]ad the groups followed procedures, the University would have been had the opportunity to plan … in a manner that may have facilitated expressive activity by both the tabling groups and those who wished to demonstrate against them." *Id.*  Rose's statement states multiple times that "University Police intervened to remove the tabling groups in the interest of the safety of all involved" and "stepped in between students from the tabling groups and protesting students to try to maintain safety".  *Id.*

Defendant Stenger also issued a statement, dated November 15, 2019, which is annexed to the Complaint as Exhibit "3".  Plaintiffs allege that through this statement Defendant Stenger also "defended the police's actions to completely shut down College Republicans' expression of their beliefs."  Dkt. 1, ¶64.

---

4 As stated, Plaintiffs conceded in the Complaint that they had not reserved space.  Dkt. 1, ¶ 48.

Contrary to the Plaintiffs' interpretation, Stenger's statement, dated November 15, 2019, states as follows:

> "There was a contentious gathering on campus Thursday afternoon that required the intervention of University Police.  Police were dispatched to the area because there were reports that conversations were getting loud, aggressive and possibly volatile.  Police response was appropriate and important to make sure that every student involved in this matter was safe and remained safe.  The incident ended and the crowd were able to be dispersed without anyone getting injured.
>
> This incident was from all perspectives unfortunate.  As a University, we encourage everyone to consider the perspectives of others – and the damaging impact words and images can have – even if they are protected as free speech under the First Amendment.  As an institution of higher education, **freedom of speech is fundamental to our core mission; academic inquiry and the exchange of ideas rest on the principle that all have the right to express their beliefs.**  We strongly condemn any acts that impede the expression of one's beliefs but also encourage everyone on this campus to enter into meaningful interactions with respectful dialogues and actions."

Dkt. 1, Ex. "3", pp. 52-53 of 75 (emphasis in original).

Plaintiffs also provide a May 2019 statement by Defendant Stenger, which is annexed to the Complaint as Exhibit "4".  Plaintiffs claim that this prior statement which allegedly involved a "pro-Palestinian student organization", "contrasts starkly" with his response to the events of November 13, 2019, because Defendant Stenger promised to take "swift and decisive action" and "[w]e will protect, support, and encourage the right of every individual to express concerns freely and to engage in peaceful protest."   Dkt. 1, ¶65.

Again, contrary to the Plaintiffs' allegation, Defendant Stenger's statement, dated May 8, 2019, states as follows:

> "A recent incident occurred in the Bartle Library lobby that is currently being investigated by Binghamton University Police and the Dean of Students Office, who will take swift and decisive action once the investigation concludes.
>
> The University deplores all acts of racism and any action that limits the expression of ideas.  **Freedom of speech is fundamental to the core mission of the University; academic inquiry and the exchange of ideas rest on the principle that all have the right to express their beliefs.**  We strongly condemn any acts that impede the expression of those

> beliefs and **caution anyone who attempts to inhibit another's free speech.**   We will protect, support and encourage the right of every individual to express concerns freely and to engage in peaceful protest.   Our campus is resolute in its support for those of any race, faith, gender, sexual orientation, background or identity."

Dkt. 1, Ex. "4", pp. 61 of 75 (emphasis in original).

Plaintiffs contend that removing the College Republicans from the scene of the November 14, 2019 incident was endorsement of a "heckler's veto" over Plaintiff College Republicans' free speech, and an equal protection violation.  Dkt. 1, ¶66.

After the tabling event, Defendant SA suspended the College Republicans as a group for engaging in tabling without proper approval.  Although they acknowledge that they did not have proper approval for the tabling event, Plaintiffs claim that the suspension was retaliatory, and based upon views expressed at the Tabling and Laffer Events. They also make the conclusory allegation that the SA is "controlled" by Stenger and Rose.  Dkt. 1, ¶¶ 130-133.

### B.  November 18, 2019 'Dr. Laffer Event'

The College Republicans held the tabling event to promote the Dr. Laffer Event, which was scheduled to occur on November 18, 2019.  Dkt. 1, ¶49.  Plaintiffs allege that prior to the Dr. Laffer Event, Plaintiff YAF hired security and that YAF's attorney requested "assurances" that any protestors would be removed from the Dr. Laffer Event, and that SUNY Binghamton's counsel "refused" to provide assurances.  *Id.*, ¶¶ 68-72.  Plaintiffs allege that defendants PLOT and College Progressives utilized social media to encourage disruption of the Dr. Laffer Event.  *Id.*, ¶¶ 73-76.

According to Plaintiffs, unnamed SUNY Binghamton and UPD representatives advised YAF and College Republicans that they were aware of the planned disruption and moved the Laffer Event to a lecture hall with more readily available exit routes for the speaker.  The College Progressives were provided with an alternate, adjacent lecture hall for their protest. Dkt. 1, ¶¶ 77-82.  Plaintiffs allege they objected to College Progressives being provided with a space in close

7

proximity to the Dr. Laffer event, and requested that any protestors be removed from the Laffer Event.  Plaintiffs further asked that the University make an announcement regarding its free speech policy prior to the event.  *Id.*, ¶¶83-88.

Plaintiffs allege that UPD officers met Dr. Laffer before the event and expressed concerns about the event and the planned disruption, and that Laffer decided to proceed with the speech. Plaintiffs claim this was evidence of a "Speech Suppression Policy". Dkt. 1, ¶¶ 91-93.  Plaintiffs claim that defendant Pelletier told Laffer's hired security that UPD would order Laffer's security to escort him out of the event if protestors approached the podium and told Dr. Laffer's driver to stay close in case he needed to make a "quick getaway."  *Id.*, ¶¶ 96-97.

Plaintiffs claim that when the Dr. Laffer event began, the lecture hall was "flooded" with hundreds of members of defendants College Progressives and PLOT, preventing some planned attendees from entering.  Dkt. 1, ¶¶ 98 – 103, 107.  The Complaint does not allege that Defendants Rose or Stenger were present.  *Id.*, ¶¶ 98-125.

According to the Complaint, the UPD made an announcement and asked those standing to take their seats, and the crowd refused, but UPD took no further action.  *Id.*, ¶104, 106.  Dr. Laffer took the podium, and Plaintiffs claim that disruptors, who Plaintiffs describe as members of defendants College Progressives and PLOT, began shouting, and an individual "disruptor student" utilized a megaphone, while protected by 10-15 other individuals, while Plaintiff College Republican members stood up and displayed "free speech" signs in response.  *Id.*, ¶¶ 110 – 117.

The UPD restrained the megaphone-wielding disruptor within two minutes.  *Id.*, ¶115.  A statement issued by Defendant Rose the same day indicates that the "megaphone disruptor" and one other disruptor were arrested. A copy of this statement is included with and incorporated into the Complaint as Exhibit "8".  Dkt. 1, Ex. 8, p. 72 of 75. Plaintiffs complain that upon direction

from Defendant Pelletier, Laffer's security detail removed him from the lecture hall, and Laffer departed for the airport.  Dkt. 1, ¶¶ 118 – 120.

Plaintiffs allege that the disruption of the Laffer Event was the result of measures Defendants Stenger, Rose and Pelletier took "pursuant to the Speech Suppression Policy," pointing to Rose's November 18 statement.  Dkt. 1, ¶¶ 126 – 128, Ex. "8" thereto.  Defendant Rose's statement indicates that the event was moved to a larger venue due to "safety concerns" and that demonstrators were provided an adjacent lecture hall "to hold their own speak-out."  Despite these efforts, the event was disrupted "by a large group of students and others." *Id.*, Ex. "8".   The University deployed a large number of police, and attendees were asked to allow the presentation to go forward and save questions until the end.  Id.  Two disruptors were arrested, and Defendant Rose stated that the "University is incredibly disappointed with the events that happened", particularly as "demonstrators were provided an adjacent lecture hall to engage in counter-discussion," but instead chose to "infringe on the expressive activity of others and … prevent those who wished the speaker from doing so." *Id.*  The statement indicated that an investigation would continue, and the University reserved the right to pursue possible charges or disciplinary action. *Id.*

Plaintiffs claim that, at a meeting between Stenger, Rose, College Republican and Lizak, facilitated by a local Congressman, defendants stated they would "ensure discipline" of College Progressives, but "upon information and belief", no action was taken. *Id.*, ¶ 138.

Plaintiffs allege that the moving defendants "personally conspired" with defendants PLOT and College Progressives by: 1) Failing to discipline disruptors after 11/14/19; 2) Providing an adjacent lecture hall to protestors; 3) "allowing" PLOT and College Progressives' members into the Dr. Laffer Event; and, 4) Removing Dr. Laffer. *Id.*, ¶142.

## ARGUMENT

## I.   PLAINTIFFS' FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM.

Plaintiffs' first cause of action alleges that defendants Stenger, Rose and Pelletier violated Plaintiffs' First Amendment free speech rights on November 14 and 18, 2019, by engaging in content and viewpoint discrimination, by ratifying and effectuating "heckler's vetos", and by aiding and joining disruptors' intent of suppressing speech.  Dkt. 1, ¶¶148-56.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a two-pronged approach for courts considering a FRCP 12(b)(6) motion to dismiss.  First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678; citing, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-67).

In order "[t]o state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege: (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  'The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.'" *Id.*

10

To hold an individual defendant liable under § 1983, a plaintiff must allege his or her "personal involvement in the claimed violation . . . ." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001). Personal involvement "includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Patterson*, 375 F.3d at 229.

"A plaintiff asserting a … First Amendment claim must allege facts showing that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

### A.  November 14, 2019 "Tabling Event"

Plaintiffs fail to establish that any of the State Defendants were personally involved in the "Tabling Event".  Therefore Plaintiffs' claims against the State Defendants must be dismissed. Further, Plaintiffs cannot establish standing regarding the Tabling Event as it pertains to all Plaintiffs, nor can Plaintiffs establish the other required elements of a First Amendment claim.[5]

### i.  Plaintiffs Failed To Allege that the Moving Defendants Were Personally Involved in the 11/14/2019 Incident.

A "state actor may be subject to liability for an action physically undertaken by private actors in violation of the plaintiff's liberty or property rights if the state actor directed or aided and abetted the violation." *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993) overruled on other grounds by *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993); citing *Fries v. Barnes*, 618 F.2d 988, 991 (2d Cir. 1980).

---

[5] For purposes of this motion, the State Defendants do not dispute that Plaintiff College Republicans' November 14, 2019 "tabling event" was activity protected by the First Amendment.

In *Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), the Supreme Court ruled that a State's failure to act to protect a four-year-old boy from abuse at the hands of his father did not amount to a deprivation of his liberty under §1983 and the due process clause of the Fourteenth Amendment. *Id.* at 191. In *DeShaney,* the petitioners had conceded that the state played no part in creating the danger to the child, and the Court therefore noted that "while the State may have been aware of the dangers that [the child] faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*" *Id.* at 201. In *Dwares v. City of New York*, the Second Circuit observed that in *Deshaney*, as is the case here, the State played no part in the creation of the danger. *Dwares v. City of New York*, 985 F.2d at 98.[6] Here, the moving Defendants had no role in the disruption of the "tabling event".

The first of the "adverse actions" Plaintiffs allege relating to the "Tabling Event" were not acts taken by Defendants Stenger, Rose or Pelletier, who had no personal involvement in the incident. Plaintiffs only allege that Defendants Stenger, Rose and Pelletier "failed to take action" to defend the College Republicans constitutional rights at the tabling event, and "personally and actively supported" the actions of College Progressives present at the tabling event. Dkt. 1, ¶ 57. However, Plaintiffs make no allegations that these State Defendants' had knowledge of the event until after it had occurred. They point only to statements made by Defendants Rose and Stenger after the incident. Id., ¶¶58 – 67.

The Plaintiffs provide no factual allegations which plausibly assert that the State Defendants created the danger of Plaintiffs' First Amendment rights being violated, as opposed to

---

6 In *Dwares*, the Second Circuit held that the *Dwares* facts "was unlike that in *DeShaney* because it went well beyond allegations that the defendant police officers merely stood by and did nothing, and that circumstances were merely suspicious. It alleged that the officers conspired with the "skinheads" to permit the latter to beat up flag burners with relative impunity…" *Dwares v. City of New York*, 985 F.2d at 99.

Plaintiffs being dissatisfied with Plaintiffs' response to the protests. The failure to allege that the Defendants created the danger to Plaintiffs is fatal to their claim.

The facts here are in contrast to those in *Ctr. for Bio-Ethical Reform, Inc. v. Black*, 234 F. Supp. 3d 423, a case cited by Plaintiffs.  There, the WDNY court denied a pre-answer motion to dismiss a Free Speech claim by an anti-abortion group which had displayed graphic "Genocide Awareness" murals. Those plaintiffs alleged that the (SUNY Buffalo) University defendants allowed  counter-demonstrators to use signs, umbrellas, and bed sheets to block the photo-murals from view.  *Id.* at 435.  There, plaintiffs made specific allegations of how University defendants acted to burden plaintiffs' speech <u>before</u> the event, including that: 1. defendants said that they did not want people to have to look at plaintiffs' Genocide Awareness photo-murals; 2. defendants attempted to change the location of the exhibition to a remote location on campus; 3. defendants attempted to cause plaintiff to diminish the size of the exhibition; 4. then, despite a threat of disruptive conduct that had occurred a day earlier, defendants refused to restrict the place and manner of a raucous and censorious counter-demonstration which ending up blocking plaintiffs' photo-murals from view. *Id.*   The *Bio-Ethical Reform* court held that those circumstantial allegations, if proven at trial, could satisfy the adverse-action element of a First Amendment § 1983 cause of action.  *Id.*

The Plaintiffs make no such allegation of direct participation by Defendants Rose, Stenger or Pelletier. Rather the entire basis of the Plaintiffs' claim as it pertains to the Tabling Event is that the defendants did not act to protect them from the counter-protestors or prevent the counter-protest, but not that Defendants took any personal action to limit Plaintiffs' speech either before or during the incident.  As such, Plaintiffs fail to state a claim related to the "Tabling Event" under § 1983.

### ii.  YAF does not have standing to bring a First Amendment claim as it pertains to the 11/14/19 incident.

A plaintiff must "demonstrate standing separately for each form of relief sought." *Ctr. for Bio-Ethical Reform, Inc. v. Black*, 234 F.Supp.3d 423, 430 (W.D.N.Y. 2017); citing, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). To seek prospective relief, such as injunctive relief or a declaratory judgment, the plaintiff is obliged to "satisfy the requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) (quoting *Lujan*, 504 U.S. at 565, n.2).

To establish standing, a plaintiff is required to demonstrate: (1) that he has "suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a sufficient "causal connection between the injury and the conduct complained of"; and (3) a "likel[ihood]" that "the injury will be redressed by a favorable decision." *Ctr. for Bio-Ethical Reform, Inc.*, 234 F.Supp.3d at 431 (citing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  The injury-in-fact requirement is met in the First Amendment context if "a plaintiff has suffered threatened or actual injury that results from a defendant's alleged illegal act." *Ctr. for Bio-Ethical Reform, Inc.*, 234 F.Supp.3d at 432; citing, *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir.2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

In addition, "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art[icle] III." *Ctr. for Bio-Ethical Reform, Inc.*, 234 F.Supp.3d at 431-2; citing, *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). "[S]tanding is not measured by the intensity of the litigant's interest or the

14

fervor of his advocacy." *Ctr. for Bio-Ethical Reform, Inc.*, supra; citing, *Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 486 (1982).

While Plaintiffs allege that Plaintiff College Republicans engaged in the Tabling Event, there is no allegation that YAF was directly involved in this incident, or that YAF's speech was suppressed.  As such YAF has no standing to pursue claims related to the "tabling event."  YAF's "abstract concern" regarding an event that they were not present for or affected by, does not give them standing to pursue a constitutional claim and as such their First cause of action must be dismissed as it pertains to the "tabling event".

### iii. Plaintiffs Failed to Allege That Their First Amendment Activity Was a Substantial and Motivating Factor in escorting the College Republicans from the Tabling Event.

To allege the necessary causal connection between the moving defendants and the alleged adverse action (here, UPD escorting College Republicans from the Tabling Event), plaintiffs are required to allege facts plausibly showing that the protected speech was "at least a 'substantial' or 'motivating' factor" in defendants' alleged discriminatory or retaliatory acts. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.1993) (citations omitted); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (same). Here, there are no specific allegations of statements and circumstances tending to show the defendants were hostile to the content and viewpoint of plaintiffs' promotion of the Laffer Event.

The Rose November 18 statement annexed to the Complaint as Ex. "2" includes numerous facts omitted from the numbered paragraphs of the Complaint, including that Plaintiff College Republicans were joined by a second group, Turning Point, which was not chartered by the SA or recognized by the University, that neither group had followed procedures to properly secure space at the reservable space, and that representatives of the University and SA had advised them that they were tabling without reservation, and asked them to relocate, which request was refused.  Dkt.

1, Ex. 2, p. 47 of 75.[7]  Rose's statement states multiple times that "University Police intervened to remove the tabling groups in the **interest of the safety** of all involved" and "stepped in between students from the tabling groups and protesting students **to try to maintain safety**".  *Id.* [**emphasis added**]. The Stenger statement (Dkt. 1, Ex. "3"), similarly described safety as the reason for the UPD response.

Even assuming that UPD's actions could be construed to be acts by Rose, Stenger or Pelletier, documents appended to and incorporated into the Complaint make clear that these were done for one purpose: safety.  A college campus has been widely recognized to be a "limited public forum" for First Amendment analysis purposed.  *See*, *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 509 (S.D.N.Y. 2013) (collecting cases); *Young America's Found. v. Kaler*, 370 F.Supp.3d 967, 983 (D.Minn. 2019)[8] (collecting cases); *Keister v. Bell*, 2020 U.S. Dist. 97794, *30-31 (N.D. Ala. May 19,  2020) (collecting cases).  Speech restrictions in a limited public forum must be viewpoint-neutral and reasonable in light of the forum's purpose.  *Hershey v. Goldstein*, 938 F. Supp. 2d at 507.

There is no specific speech restriction alleged here based on Plaintiff's viewpoint, rather an articulated justification of safety.  Courts have found safety concerns to be valid justification for restrictions on speech.  In *Young America's Found. v Napolitano*, the plaintiffs contended that

---

7 Rose's statement stated that space reservation procedures had purposes including to "avoid conflict among groups for use of the space", and "to safely manage activity in the area", and  "[h]ad the groups followed procedures, the University would have been had the opportunity to plan … in a manner that may have facilitated expressive activity by both the tabling groups and those who wished to demonstrate against them."  Id.

8 "In recognition of this delicate balance between the First Amendment rights of individual speakers and the property rights of university proprietors, the Supreme Court and Eighth Circuit have generally held that both university property (like lecture halls) and university programming (like student activity funds) are 'limited public forums.'"  *Young America's Found. v. Kaler*, 370 F.Supp.3d at 983.

University defendants' actions (canceling a speaking event and instituting a campus-wide lockdown) were taken in retaliation for plaintiffs' "holding and expressing conservative viewpoints by inviting conservative speakers to speak on the [University] campus" in particular, by having previously "engaged in a protected activity by inviting [controversial conservative speaker] Milo Yiannopoulos to speak on campus". *Young America's Found. v. Napolitano*, 2018 U.S. Dist. LEXIS 70108, *3-5, 25-26 (N.D. Cal. 2018). There, the Court granted a motion to dismiss First Amendment claims based upon the pleadings, which pled "undisputed factual circumstances prompting defendants' safety concerns, and have alleged no facts supporting a finding of discrimination or other animus." *Id.*, at *25-26. Consequently, the Court there found that because the factual allegations provide a "more likely explanation[]" than that asserted by the plaintiff, the complaint failed to state a "plausible" claim. *Id.*, citing, *Iqbal*, 556 U.S. at 681-82.

Here, the exhibits to Plaintiffs' Complaint make clear that the actions of the UPD in escorting College Republicans from the scene was related to safety, not unsubstantiated, shadowy allegations of a purported "Speech Suppression Policy", devoid of plausible factual allegations which sustain it. Accordingly, defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the free speech claims against these defendants under 42 U.S.C. § 1983 as it pertains to the "Tabling Event" should be granted.

### B.  November 18, 2019 "Dr. Laffer Event"

i.  *There was no causal connection between any alleged "adverse action" on November 18, 2019, and any protected speech.*

Plaintiffs' free speech claims as they pertain to the "Dr. Laffer Event" are similarly deficient. The Complaint does not allege that Defendants Rose or Stenger were present. Dkt. 1, ¶¶ 98-125. Plaintiff alleges that the UPD made an announcement and asked those standing to take their seats, and the crowd refused. *Id.*, ¶104. Plaintiffs complain that Pelletier and the UPD did

not take further action. *Id.*, ¶106. Dr. Laffer took the podium, and Plaintiffs claim that disruptors, who Plaintiffs describe as members of defendants College Progressives and PLOT, took actions such as shouting, and an individual "disruptor student" utilized a megaphone, while protected by 10-15 other members of those groups, while Plaintiff College Republican members stood up and displayed "free speech" signs in response. *Id.*, ¶¶ 110 – 117. The UPD restrained the megaphone-wielding disruptor within two minutes. *Id.*, ¶115. A statement issued by Defendant Rose the same day, and included with and incorporated into the Complaint as Exhibit "8", indicates that the "megaphone disruptor" and one other disruptor were arrested. (Dkt. 1, Ex. 8 thereto, p. 72 of 75).

Plaintiffs do not allege facts plausibly showing that the protected speech was a 'substantial' or 'motivating' factor" in defendants' decision to allow protestors to utilize an adjacent lecture hall or, even if true, Defendant Pelletier recommending that Dr. Laffer leave. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1058.

Plaintiffs suggest that Pelletier and UPD "endorsed a heckler's veto of Plaintiffs' free speech." Dkt. 1, ¶ 121. In *Ctr. For Bio-Ethical Reform*, the District Court Judge, while not using the term "heckler's veto", did find that allegations by plaintiffs "of statements and circumstances tending to show the defendants were hostile to the content and viewpoint of plaintiffs' photo-murals, and plaintiffs' insistence on exercising their rights to freedom of speech, are legally sufficient" to state a causal connection between the University defendants and the alleged adverse action (the failure to halt protestors' disruption of the speech). *Ctr. For Bio-Ethical Reform*, 234 F.Supp.2d at 435-6. Here, there are no such allegations and, again, safety concerns provide a "more plausible" explanation, as opposed to a vague, unsubstantiated, factually unsupported allegation of a shadowy "Speech Suppression Policy".

Plaintiffs contend defendants' actions amount to a "heckler's veto," by which "listeners react to speech based on its content and the government then ratifies that reaction by restricting the speech in response to listeners' objections." *Young America's Found. v. Napolitano*, 2018 U.S. Dist. LEXIS 70108, *16, fn. 13; citing, *Seattle Mideast Awareness Campaign*, 781 F.3d 489, 502 (9th Cir. 2015). Courts have found that such argument is unavailing, as the doctrine has "no relevance in a limited public forum" except to the extent a defendant's "claimed fear of a hostile audience reaction" can be shown to be a "mere pretext for suppressing expression because public officials oppose the speaker's point of view." *Id.* As discussed above, plaintiffs have failed to allege any such pretext. *Id.* Plaintiffs' free speech claims should be dismissed.

## II. PLAINTIFFS' SECOND CAUSE OF ACTION FAILS TO ALLEGE THAT DEFENDANTS STENGER AND ROSE RETALIATED AGAINST THE COLLEGE REPUBLICANS.

The Second Cause of Action alleges that Stenger, Rose and SA retaliated against Plaintiff College Republicans, "by using their authority to suspend them", while failing to hold College Progressives and non-student group PLOT accountable for disrupting the events. Dkt. 1, ¶¶ 157-61.

To state a prima facie case for First Amendment retaliation, a plaintiff must prove "(i) an interest protected by the First Amendment, (ii) the defendants' actions were motivated by or substantially caused by the plaintiff's exercise of that right and (iii) the defendants' actions chilled the exercise of those rights." *Kerman v. City of New York*, 261 F.3d 229, 241-42 (2d Cir.2001).

Plaintiff College Republicans fail to allege that Defendants Rose and/or Stenger were personally involved in their suspension as a student group. The Complaint alleges that the suspension was effectuated by a two-line email from Defendant SA, which suspended College Republicans for their admitted failure to table without proper approval. Dkt. 1, ¶ 130. The

Complaint pleads no affirmative facts which show personal involvement by Rose or Stenger in the decision to suspend, other than conclusory allegations that Rose/Stenger "caused" SA to suspend Plaintiff.  Id.[9]

This allegation is insufficient to adequately allege either Stenger or Rose's personal involvement. A vague allegation that these defendants "caused" SA to suspend Plaintiff, or that College Republicans later complained of the suspension, id., ¶¶ 134-37, does not plausibly allege personal involvement. *See*, *Cater v New York*, 316 F.Supp.3d 660, 669-71 (S.D.N.Y. 2018) (citing, *Samuels v. Fischer*, 168 F. Supp.3d 625, 637 (S.D.N.Y. 2016) ("Second Circuit case law makes clear that a plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing")); *Gonzalez v. Sarreck*, 2011 U.S. Dist. LEXIS 122873 (S.D.N.Y. Oct. 24, 2011) ("Broad, conclusory allegations that a high-ranking defendant was informed of an incident are ... insufficient.") (collecting cases); *Bogart v. NYC Law Dep't.*, 2001 U.S. Dist. LEXIS 21919 (S.D.N.Y. Dec. 20, 2001) (plaintiff's allegations that he sent emails to supervisor and Equal Employment Officer complaining of retaliation insufficient to demonstrate personal involvement); *see also*, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").

---

9 Plaintiff YAF also asks in the *ad dendum* clause that Defendants Stenger, Rose and SA "recognize the Young Americans for Freedom chapter as a registered student organization." Dkt. 1, p. 39 of 75, subd. (F).  This claim for relief should be dismissed as against Defendants Stenger and Rose because YAF, a national organization, has no standing to make a legal claim to be certified as a student group at SUNY Binghamton, and also because the Complaint makes no allegation that Stenger, Rose, or any Defendant other than SA have the power to deny recognition to YAF as a student organization, nor were involved in an October 2019 denial for recognition as a student group.  Id., ¶¶ 41-43.

## III. THE COMPLAINT FAILS TO ALLEGE A CONSPIRACY CLAIM AGAINST THE MOVING DEFENDANTS.

The fourth cause of action alleges that the moving Defendants conspired with College Progressives and PLOT to deprive plaintiffs of their constitutional rights in violation of 42 USC §1985(3). Dkt. 1 ¶¶ 170 – 173.  The fifth cause of action is brought under 42 USC §1986 and alleges that defendants Stenger, Rose and Pelletier failed to prevent §1985(3) conspiracies. Dkt. 1 ¶¶ 170 – 179.  These claims should be dismissed.

### A.  42 USC §1985(3) Claim.

"To state a claim under § 1985(3), . . . plaintiff must show '[i] a conspiracy; [ii] for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; [iii] an act in furtherance of the conspiracy; [iv] whereby a person is deprived of any right of a citizen of the United States.'" *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).  A motion to dismiss a conspiracy claim must be granted when a complaint fails to allege specific incidents of conduct sufficient to satisfy the elements of a conspiracy claim.  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  "[C]onclusory, vague, or general allegations" are insufficient to allege a cognizable constitutional claim.  *Id.*; *see also*, *Corsini v. Brodsky*, No. 17-CV-1461, 2018 U.S. App. LEXIS 9209 (2d Cir. April 13, 2018) (applying the pleading requirements of *Ciambriello*).

Plaintiffs fail to allege that Stenger, Rose or Pelletier participated in a "conspiracy". Plaintiffs' claims are based on conclusory allegations that the defendants: "1) fail[ed] to prohibit or discipline the College Progressive disruptors at the November 14, 2019 tabling incident (thereby

encouraging College Progressives and PLOT's future disruption of Plaintiffs' speech); 2) aid[ed] and assist[ed] in the disruption and violation by providing College Progressives with the lecture hall adjacent to the Dr. Laffer Event as a staging room for their disruption; 3) allow[ed] College Progressives and PLOT into the lecture hall despite their prior announcements of their intentions to disrupt the Dr. Laffer Event while ignoring the violations of the state Anti-Mask Law and the local fire code; and, 4) fail[ed] to disperse the disrupting College Progressives and PLOT from the Dr. Laffer Event while instead removing Dr. Laffer." *Id.*

Plaintiff's conclusory allegations suggest, at most, a failure to prevent the counter-protestors' disruptive conduct, not that the moving defendants and PLOT/College Progressives had a "tacit understanding to carry out the prohibited conduct." *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999).  "The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88 (1971).

Here, the element of intent to deprive plaintiffs of equal protection is missing from plaintiff's claim. The Supreme Court in *Griffin v. Brekenridge*, *supra,* made clear that there must be "invidiously discriminatory animus behind the conspirators' action" (*id.)* and Plaintiffs simply have not alleged any facts showing that any class-based animus existed.  This Court should not infer a conspiracy where one has not been sufficiently alleged to exist.

**B. 42 USC §1986 Claim.**

Because Plaintiffs' Section 1985 conspiracy claim is not "plausible on its face," the claim of neglect or refusal to prevent a Section 1985 conspiracy under 42 U.S.C. § 1986 fails as well.

A Section 1986 claim must be predicated on a valid Section 1985 claim and, in the absence of such a predicate claim, must be dismissed. *Brown*, 221 F.3d at 341; *L.K. v. Sewanhaka Central High School Dist.*, 641 F. App'x 56, 59 (2d Cir. 2016).

## IV. THE COMPLAINT FAILS TO ALLEGE AN EQUAL PROTECTION CLAIM AGAINST THE MOVING DEFENDANTS.

Plaintiffs' final claim is a § 1983 Equal Protection claim which alleges that "[t]he Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the equal protection of the laws, which prohibits Defendants . . . from treating Plaintiffs differently than similarly situated persons."  Dkt. 1, ¶182.  Plaintiffs allege that by "enforcing the Speech Suppression Policy, and thereby ratifying and effectuating a heckler's veto and permitting and joining disruptors (including College Progressives and PLOT) intent on suppressing . . . [defendants] have denied Plaintiffs the right to use a university forum for their expressive activity based on Plaintiffs' message, when other messages, even opposing ones are permitted, in violation of the Equal Protection Clause of the Fourteenth Amendment."  *Id*. at ¶184.

In order to "allege this selective enforcement cause of action, plaintiffs must plausibly allege: (1) that they were treated differently from other similarly-situated persons, and (2) that the treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

First, for the reasons set forth above in POINT I.A.ii., Plaintiff YAF does not have standing to make claims regarding the "tabling event".  Further, Plaintiff YAF, a national nonprofit organization which states that its purpose is to educate the public on various values-based concepts (Dkt. 1, ¶ 10) makes no claim that it was treated differently by Defendants from any other "similarly-situated" groups.  The sixth cause of action should be dismissed as it pertains to YAF.

Further, all Plaintiffs have failed to allege requisite "personal involvement" of these moving Defendants, as alleged above in POINT I.

As for the plaintiffs College Republicans and Lizak's claims under the Equal Protection clause, this too fails to state a claim for which relief can be provided. The above-cited elements must be sustained by plausible factual allegations, and "[c]onclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient.'" *Nash v. McGinnis*, 585 F.Supp.2d 455, 461 - 462 (W.D.N.Y. 2008).

The Complaint alleges that Plaintiffs were selectively treated because their "tabling event" was impaired by the acts of similar counter-demonstrators[10], and also that counter-demonstrators were given a nearby lecture hall to protest, which enabled those counter-demonstrators to disrupt the Laffer Event.  Because this equal protection claim depends upon the alleged violations of plaintiffs' First Amendment rights, discussed above, the claim here "coalesces" with the First Amendment claim. *Center for Bio-Ethical Reform*, 234 F.Supp.3d at 436 (citing, *Gentile v. Nulty*, 769 F.Supp.2d 573, 582-83 (S.D.N.Y. 2011)).

This case is distinguishable from the *Center for Bio-Ethical Reform* case because, unlike here, those plaintiffs made specific factual allegations were made which, if true, showed the University defendants' hostile motives to impair plaintiffs' exhibition in that case.  *Id.* at 435-6. No such facts have been pleaded here.   In this case, at most, Plaintiffs have alleged that at each event, the defendants should have physically interfered with the counter-protestors. Dkt. 1 ¶ 55,

---

10 Plaintiffs also appear to suggest that Defendant Stenger's previous May 2019 statement about another incident is evidence that the University's response in May 2019  "contrasts starkly" with his response to the events of November 14, 2019 (Dkt. 1, ¶65), but even read in the light most favorable to Plaintiffs, it is clear that the May 2019 statement referenced a racial incident, which Plaintiffs do not claim that the November 14, 2019 incident was – thus, it was not different treatment of a "similarly situated" person.  Dkt. 1, Ex. "4", pp. 61 of 75.

106. This is at odds with the admonition of the Second Circuit that "police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder." *Papineau v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006).

Here, the Plaintiffs allege, at most, that both groups were given separate space to engage in their First Amendment activities.  When the Plaintiffs' activities were disrupted, the UPD intervened to bring that disruption to an end, but not in the manner preferred by Plaintiffs.  This does not state an Equal Protection claim for the reasons set forth above, and the Complaint should be dismissed.

## V.  PLAINTIFFS ARE NOT ENTITLED TO "OBEY THE LAW" INJUNCTIONS OR DECLARATORY RELIEF.

Plaintiffs sue defendants in their official capacities and seek injunctions from the Court to a. enjoin Defendants from disrupting/silencing Plaintiffs' speech; b. enjoining these Defendants from ratifying "heckler's vetoes" and enforcing a "Speech Suppression Policy"; and c. enjoining Defendants from retaliating against Plaintiffs.  Dkt. 1, PRAYER FOR RELIEF, subd. (B) – (D).

Plaintiffs seek "obey the law" injunctions and these claims should be dismissed.  Courts will not grant an "obey the law" injunction because such injunctions are "vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement." *Rowe v. New York State Division of Budget*, 2012 U.S. Dist. LEXIS 132238, *18-19 (N.D.N.Y. 2012); *see also Peregrine Myanmar v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) (holding that "an injunction must be more specific than a simple command that the defendant obey the law").  As the Court recognized just last year, the Second Circuit has held that "[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Dublino v. McCarthy*, 2019 U.S. Dist. LEXIS 78347, at *52 (N.D.N.Y. May 9, 2019) (rejecting injunctive

relief where Plaintiff "essentially [sought] an order from this Court directing DOCCS officials to properly follow DOCCS Directives and not violate plaintiff's constitutional rights.")

Courts have also held that obey-the-law injunctions are equally unenforceable in the context of First Amendment claims. *See Elend v. Basham,* 471 F.3d 1199, 1209 (11th Cir. 2006). In *Elend*, the plaintiffs sought injunctive relief that was found to be impermissible under F.R.C.P. 65, as it would do nothing "beyond abstractly commanding the Secret Service to obey the First Amendment." *Id.* Such an injunction, if granted, would do no more than require that the defendants obey the law. *Id.* at 1210.

Plaintiffs also seek a declaration that Defendants violated Plaintiffs' constitutional rights. Dkt. 1, PRAYER FOR RELIEF, subd. (A). The Declaratory Judgment Act (DJA), allows a court to fashion declaratory relief, in an appropriate case. 28 U.S.C. §2201(a). However, a court may only do so "[i]n a case of actual controversy within its jurisdiction." *Id.* Since, as set forth above, all claims should be dismissed, this includes any claim for declaratory relief. *Goldberg v. Cablevision Sys. Corp.*, 281 F. Supp. 2d 595, 604 (E.D.N.Y 2003). In *Goldberg*, plaintiff requested relief against Defendant pursuant to the DJA. *Id.* The Court noted that because the Act does not confer subject matter jurisdiction, the plaintiff must have an independent basis for jurisdiction. *Id.* The Court held that "[a]s all the federal claims must be dismissed, the Court lacks jurisdiction to grant relief pursuant to the Declaratory Judgment Act." *Id.*

As such, the claims for relief sought in the PRAYER FOR RELIEF, subd. (A) – (D) should be dismissed.

## CONCLUSION

Based on the foregoing, all claims in the Complaint must be dismissed as against these

moving defendants.

Dated: October 16, 2020
       Albany, New York

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants Stenger, Rose and Pelletier
The Capitol
Albany, New York 12224-0341

By: *s/ John F. Moore*

John F. Moore
Assistant Attorney General, of Counsel
Telephone: 518-776-2293
Fax: 518-915-7738 (Not for service of papers)
Email: john.moore@ag.ny.gov


TO:   **Andrew Hruska, Esq. & Joseph Zales, Esq.**
      King, Spaulding Law Firm - NY Office
      Attorneys for Plaintiffs
      1185 Avenue of the Americas
      New York, NY 10036-4003
      212-556-2278
      Email: ahruska@kslaw.com
      Email: jzales@kslaw.com

      **Jonathan A. Scruggs, Esq.** & **Tyson Charles Langhofer, Esq.**
      Alliance Defending Freedom - AZ Office
      Attorneys for Plaintiffs
      15100 N. 90th Street
      Scottsdale, AZ 85260
      480-444-0020
      Email: jscruggs@alliancedefendingfreedom.org
      Email: tlanghofer@adflegal.org

**Thomas A. Saitta, Esq.**
Aswad, Ingraham Law Firm
Attorneys for Defendant Student Association of Binghamton University
46 Front Street
Binghamton, NY 13905
607-722-3495
Fax: 607-722-2566
Email: tom.saitta@ailaw.com

**Peter A. Orville, Esq.**
Orville & McDonald Law, P.C.
Attorneys for Defendant College Progressives
30 Riverside Drive
Binghamton, NY 13905
607-770-1007
Email: peteropc@gmail.com