**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

YOUNG AMERICA'S FOUNDATION;
BINGHAMTON UNIVERSITY
COLLEGE REPUBLICANS; and JON
LIZAK, President of the College
Republicans of Binghamton University,

        Plaintiffs,

        v.

HARVEY STENGER, President of
SUNY-Binghamton, in his official and
individual capacities; BRIAN ROSE, Vice
President for Student Affairs of SUNY-
Binghamton, in his official and
individual capacities; JOHN
PELLETIER, Chief of SUNY-
Binghamton UPD, in his official and
individual capacities; COLLEGE
PROGRESSIVES, a student organization
at SUNY-Binghamton; PROGRESSIVE
LEADERS OF TOMORROW ("PLOT");
STUDENT ASSOCIATION OF

BINGHAMTON UNIVERSITY,

        Defendants.

Civil Action No. 3:20-cv-822 (LEK/ML)

**Memorandum of Law in Support of**
**Motion for Entry of Default Judgment**

**TABLE OF CONTENTS**

**PAGE**

Introduction and Statement of Facts ........................................................................... 2

Legal Standard .......................................................................................................... 3

Argument ................................................................................................................. 7

   I.   Plaintiffs' Complaint Clearly Establishes Liability Under
42 U.S.C. § 1985(3). ............................................................................................. 7

   II.  Punitive Damages are Appropriate for PLOT's Purposeful and Malicious
Violation of Plaintiff's Constitutional Rights. ...................................................... 10

   III.   Punitive Damages are Appropriate Given PLOT's Refusal to Appear or
Respond to This Action ....................................................................................... 13

Conclusion .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. City of Milwaukee,*
   746 F.2d 1205 (7th Cir. 1984) ...............................................................................5

*BMW of N. Am., Inc. v. Gore,*
   517 U.S. 559 (1996)............................................................................ *passim*

*Coated Fabrics Co. v. Mirle Corp.,*
   No. 06-CV-5415, 2008 WL 163598 (E.D.N.Y. Jan. 16, 2008) .................................4

*Golub Corp. v. KLT Indus., Inc.,*
   No. 1:18-CV-1125, 2020 WL 3254133 (N.D.N.Y. June 16, 2020) (Kahn, J.).........................4

*Griffin v. Breckenridge,*
   403 U.S. 88 (1971)....................................................................................8, 10

*Hill v. Airborne Freight Corp.,*
   212 F. Supp. 2d 59 (E.D.N.Y. 2002), *aff'd*, 93 F. App'x 260 (2d Cir. 2004)...........................5

*Citizens Accord, Inc. v. Town of Rochester,*
   No. 98-CV-0715, 2000 WL 504132 (N.D.N.Y. Apr. 18, 2000) *aff'd*, 29 F.
   App'x 767 (2d Cir. 2002) ...............................................................................8

*Jennings v. Town of Stratford,*
   263 F. Supp. 3d 391 (D. Conn. 2017)...................................................................12

*Katz v. Klehammer,*
   902 F.2d 204 (2d Cir. 1990)..............................................................................8

*Moskowitz v. Coscette,*
   3 F. App'x 1 (2d Cir. 2001) .............................................................................12

*Payne v. Jones,*
   711 F.3d 85 (2d Cir. 2013)..............................................................................13

*Pert 35, Inc. v. Amari Aviation Ltd.,*
   No. 3:09-CV-448, 2010 WL 1257949 (N.D.N.Y. Mar. 5, 2010) .............................................3

*Smith v. Wade,*
   461 U.S. 30 (1983)......................................................................................5

*Stack v. Jaffee,*
   306 F. Supp. 2d 137 (D. Conn. 2003).....................................................................12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)................................................................................................6, 7, 12

*Terry v. Masterpiece Adv. Design*,
No. 17 Civ. 8240 (NRB), 2018 WL 3104091 (S.D.N.Y. June 21, 2018)................................5

**Statutes**

42 U.S.C. § 1983................................................................................................................5

42 U.S.C. § 1985(3) ................................................................................................ *passim*

**Other Authorities**

*Protestors Arrested at Broome County Legislature Meeting*, WNBF Radio,
Nov. 21, 2019 (https://wnbf.com/protesters-arrested-at-broome-county-
legislature-meeting/) ................................................................................................11, 13

Case Comment, *Private Conspiracies to Violate Civil Rights*, 90 Harv. L. Rev.
1721, 1728 (1977)................................................................................................................9

Fed. R. Civ. P. 55(b) ................................................................................................3, 8

N.D.N.Y. L.R. VII, 55.1 and 55.2................................................................................4, 8

## INTRODUCTION AND STATEMENT OF FACTS

Plaintiffs Young America's Foundation, Binghamton University College Republicans, and Jon Lizak (collectively "Plaintiffs"), submit this memorandum in support of their motion for entry of default judgment.  The well-pleaded facts in the Complaint establish the liability of Defendant Progressive Leaders of Tomorrow ("PLOT") and reinforce the appropriateness of an award of punitive damages against PLOT for its malicious and purposeful violation of Plaintiffs' First Amendment rights under 42 U.S.C. § 1985(3).

On November 18, 2019, Plaintiffs attempted to present a speech by renowned economist Dr. Arthur Laffer ("Dr. Laffer Event").  Compl. at ¶ 49.  In anticipation of this event, PLOT advertised on social media, asking its members and others to "disrupt" the Dr. Laffer Event, specifically targeting Plaintiffs' political views as the justification.  Compl. at ¶¶ 73-75.  PLOT worked with others, including Defendant College Progressives, to promote this message of suppression and to solicit additional disruptors to magnify its planned action.  Compl. at ¶ 76.  This planned disruption was not an anomaly, it was another in a long line of criminally disruptive activities PLOT engaged in throughout the Binghamton, New York area, and is in fact PLOT's raison d'être.  *See, e.g.,* Compl. at ¶¶ 36-38.  For example, masked PLOT members temporarily shut down Binghamton's 2019 Columbus Day parade by forming a human chain to block the parade path. Compl. ¶ 37.  This led to four arrests and a public condemnation from Binghamton's Mayor. *Id.*

Prior to the Dr. Laffer Event, PLOT members and their co-conspirators from College Progressives staged themselves nearby in an adjacent room provided to them by co-conspirators Rose, Pelletier, and Stenger ("State Defendants") and, wearing masks to conceal their identities, disrupted it almost immediately. Compl. at ¶¶ 81-82, 98-103. PLOT and their co-conspirators successfully shouted down Dr. Laffer before he even gave his opening remarks, prevented even UPD's insincere and delayed "attempts" to remove the disruptors, and ultimately forced Dr. Laffer's removal from the stage, as intended and planned by their enabling State Defendant co-conspirators. Compl. at ¶¶ 82-84, 95-103, 110-111, 115-118. PLOT continued to celebrate suppressing Plaintiffs' speech by occupying the lecture hall, slandering Plaintiffs as "white supremacists" and "racists," and justifying the violation of Plaintiffs' First Amendment rights based on their skin color, alleging that Plaintiffs "are always heard as [white males] in this country." Compl. at ¶¶ 123-125. State Defendants took no action to disperse the perverse celebration of the suppression of Plaintiffs' civil rights, nor did it discipline the perpetrators, choosing instead to pile-on sanctions on the victims. Compl. at ¶¶ 125, 129-132. In shutting down the Dr. Laffer Event, PLOT conspired with co-Defendant College Progressives and State Defendants to deprive Plaintiffs of their First Amendment rights.

## LEGAL STANDARD

"Rule 55(b) of the Federal Rules of Civil Procedure provides for the entry of default judgment in the event a defendant has failed to plead or otherwise defend in an action." *Pert 35, Inc. v. Amari Aviation Ltd.*, No. 3:09-CV-448 (TJM/DEP), 2010

3

WL 1257949, at *3 (N.D.N.Y. Mar. 5, 2010) (citing *Parise v. Riccelli Haulers, Inc.*, 672

F. Supp 72, 74 (N.D.N.Y. 1987)). "Under Local Rule 55.2(b), the moving party must

submit with its motion for default judgment: (1) a clerk's certificate of entry of default;

(2) a proposed form of default judgment; (3) a copy of the pleading to which no

response has been made; and (4) an affidavit." *Golub Corp. v. KLT Indus., Inc.*, No.

1:18-CV-1125 (LEK/ATB), 2020 WL 3254133, at *2 (N.D.N.Y. June 16, 2020) (Kahn,

J.) (citing N.D.N.Y. L.R. VII, 55.2(b)).

"The affidavit must set forth that: (1) the party against whom judgment is

sought is not an infant, incompetent, or in military service; (2) the party against

whom judgment is sought has defaulted in appearance in the action; (3) service was

properly effected under Federal Rule of Civil Procedure 4; (4) the amount sought is

justly due and owing, and no part of that amount has been paid; and (5) the

disbursements sought to be taxed have been made in the action or will necessarily be

made or incurred." *Golub Corp.*, 2020 WL 3254133, at *2 (citing N.D.N.Y. L.R. VII,

55.2(a)).

"When a default judgment is entered, the defendant's failure to respond

constitutes an admission of the well-pleaded factual allegations in the complaint,

except as to claims relating to damages." *Coated Fabrics Co. v. Mirle Corp.*, No. 06-

CV-5415, 2008 WL 163598, at *4 (E.D.N.Y. Jan. 16, 2008) (citing *Greyhound

Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Accordingly, all of Plaintiffs' well-pleaded allegations in the Complaint pertaining to

liability are admitted as true by PLOT. Despite these admissions, "prior to entering

4

default judgment, a district court is required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Terry v. Masterpiece Adv. Design*, No. 17 Civ. 8240 (NRB), 2018 WL 3104091, at *1 (S.D.N.Y. June 21, 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)) (internal quotation marks omitted) (alterations in original).

Punitive damages are "a discretionary moral judgment" that the defendant has engaged in conduct that is so reprehensible that it warrants punishment. *Smith v. Wade*, 461 U.S. 30, 52 (1983). Punitive damages may be awarded for a 42 U.S.C. § 1983 claim if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56. The same standard applies to cases brought under 42 U.S.C. § 1985(3). *Bell v. City of Milwaukee*, 746 F.2d 1205, 1266-67 (7th Cir. 1984) ("The same standard should apply under Section 1985 as well as Section 1983. . . . the *Smith v. Wade* standard for assessing punitive damages applies to [Section 1985] as well."). "As an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite evil motive.'" *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 75 (E.D.N.Y. 2002), *aff'd*, 93 F. App'x 260 (2d Cir. 2004) (quoting *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 538 (1999)). The purpose of a punitive

5

damages award is to punish the defendant for reprehensible conduct and to deter the defendant and others from committing similar acts. *Id.* at 76.

To adequately apprise a defendant of "the severity of the penalty" for punitive damages, the Supreme Court has outlined three factors to consider when evaluating the reasonableness of a punitive damages award:  (1) the degree of reprehensibility of the defendant's conduct, (2) the disparity between the punitive damages award and the harm caused to plaintiff, and (3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).  "In most cases, the ratio will be within a constitutionally acceptable range." *Id.* at 583 (holding a ratio of 500-to-1 "raised a suspicious judicial eyebrow").  For example, the Court has upheld punitive damage awards of more than four times the amount of compensatory damages, stating that "[s]ingle digit multipliers are more likely to comport with due process" than larger ones. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. The Supreme Court has elucidated several factors in determining reprehensibility:  whether the harm caused was physical as opposed to economic; whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; whether the conduct involved repeated actions or was an

6

isolated incident; and whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Gore*, 517 U.S. at 576-77; *State Farm*, 538 U.S. at 409.

**ARGUMENT**

Quite simply, the factual allegations in the Complaint plainly establish PLOT's liability under 42 U.S.C. § 1985(3) for depriving Plaintiffs of their First Amendment rights by planning and executing a coordinated attack on the speech Plaintiffs sponsored on November 18, 2019. PLOT's activities before, during, and after this disruption show a malicious and blatant disregard for the fundamental constitutional values of this country, the specific targeting of Plaintiffs based on their political party affiliation and race, and PLOT's continued intent to violate Plaintiffs' and others' rights going forward.

Unless it is punished in a meaningful way, PLOT's actions show it will continue to target and suppress political viewpoints with which it disagrees, rather than engaging them in meaningful dialogue. Because PLOT has demonstrated reprehensible conduct in this case by blatantly violating Plaintiffs' civil rights, and because PLOT believes it is above the judicial process, Plaintiffs ask this Court to impose punitive damages to deter PLOT from future violations.

**I.    PLAINTIFFS' COMPLAINT CLEARLY ESTABLISHES LIABILITY UNDER 42 U.S.C. § 1985(3).**

Plaintiffs have met all of the procedural requirements under the rules for a default judgment request. Namely, Plaintiffs have provided the required entry of default, affidavit, proof of service, and accompanying documents. *See* Fed. R. Civ. P.

7

55(b)(2); N.D.N.Y. L.R. VII, 55.1 and 55.2. Plaintiffs have previously served PLOT and its leaders (Dkts. 17, 20, and 21), and in addition to following this Court's directive for service (Dkt. 36), Plaintiffs have continued to provide additional service to PLOT to attempt to solicit its involvement in the case. *See* Certificate of Service for Motion for Entry of Default Judgement. PLOT's default is clearly willful.

In addition, the Complaint easily supports a finding of liability. Accepting Plaintiffs' well-pleaded facts as true, PLOT was part of a conspiracy to deprive Plaintiffs' of their First Amendment rights motivated by Plaintiffs' political party affiliation and race, both of which are identifiable and protected classes, in violation of 42 USC § 1985(3). "Section 1985(3) prohibits conspiracies that are intended to deprive 'either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Citizens Accord, Inc. v. Town of Rochester*, No. 98-CV-0715, 2000 WL 504132, at *8 (N.D.N.Y. Apr. 18, 2000) *aff'd*, 29 F. App'x 767 (2d Cir. 2002) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1993)).

As detailed in the Complaint, PLOT targeted, disrupted, and suppressed Plaintiffs' speech on the basis of both Plaintiffs' race and affiliation with the Republican Party. Compl. at ¶¶ 75, 123-125. As overt acts in furtherance of this conspiracy, PLOT advertised the disruption to others and then shouted down Dr. Laffer on November 18, 2020. *Id.*; *See also Katz v. Klehammer*, 902 F.2d 204, 207 (2d Cir. 1990) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) (noting that the

8

Second Circuit requires that a § 1985(3) conspiracy claim include allegations of "some overt act in furtherance of the conspiracy")).

PLOT's own words allow this Court to conclude that its behavior was clearly motivated by political party and racial animus.  As the Complaint makes clear, PLOT's advertising for their disruption targeted Plaintiffs' political affiliation, and PLOT subsequently justified its behavior on account of Plaintiffs' race.  Compl. at ¶¶ 75, 123-125; Exhibits 5 and 7.  Plaintiff College Republicans exists to support and promote the Republican Party.  Compl. at ¶ 13.  Plaintiffs Lizak and YAF were partnering with College Republicans to engage in protected expression in furtherance of those goals.  Compl. at ¶¶ 11, 17.

In *Keating v. Carey*, the Second Circuit held that class-based discriminatory animus against a person motivated by their membership in a political party creates a § 1985(3) claim.  Specifically, the court held:  "Republicans are a protected class for the purpose of § 1985(3) (as would be Democrats or members of any political party, in the circumstances herein alleged)."  706 F.2d 377, 379 (2d Cir. 1983); *see also* Case Comment, *Private Conspiracies to Violate Civil Rights*, 90 Harv. L. Rev. 1721, 1728 (1977) ("the legislative history behind section 1985(3) points unmistakably to the conclusion that discrimination on [the basis of political affiliations or beliefs] was intended to be actionable").  This Court continues to follow *Keating's* holding that animus against a person motivated by their membership in a political party creates a § 1985(3) claim.  *See, e.g., Citizens Accord, Inc.*, 2000 WL 504132, at* 8-9 (stating

that *Keating* is still binding authority and noting that political organizations "fall within the purview of *Keating*").

PLOT also conspired to deprive Plaintiffs of their constitutional rights because of the color of their skin, admitting during their disruption that they were taking over Plaintiffs' event because "white male[s]" are "always heard".  Compl. at ¶ 124. PLOT's disruption based on Plaintiffs' race violates 42 U.S.C. § 1985(3).  *Griffin v. Breckenridge*, 403 U.S. 88 (1971) at 102-03 (holding racial animus meets the class-based discrimination requirement of 42 U.S.C. § 1985(3)).  There can be no doubt the well-pleaded facts support PLOT's liability under § 1985(3).

## II. PUNITIVE DAMAGES ARE APPROPRIATE FOR PLOT'S PURPOSEFUL AND MALICIOUS VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.

As laid out in *Gore*, three factors govern the propriety of punitive damages: (1) the degree of reprehensibility of the defendant's conduct, (2) the disparity between the punitive damages award and the harm caused to plaintiff, and (3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Gore*, at 517 U.S. at 575.  PLOT's actions here were a reprehensible and direct attack on Plaintiffs' fundamental constitutional right to free speech, a right that is the bedrock of our nation.  *Gore* measures reprehensibility based on whether the harm caused was physical as opposed to economic; whether the tortious conduct showed indifference to or a reckless disregard of the health or safety of others; whether the conduct involved repeated actions or was an isolated incident; and whether the harm was the result of intentional malice, trickery, or deceit, or mere

10

accident.  *Gore*, 517 U.S. at 576-77.  These factors weigh in favor of punitive damages. While PLOT's actions in disrupting the Dr. Laffer Event caused no personal injury, inciting a mob directed towards an individual held the potential for physical confrontation, evidencing PLOT's disregard for the health and safety of others.  In fact, the confrontation on campus only days before included physical assault against one member of Plaintiff College Republicans.  Compl. at ¶¶ 53-54.  In addition, PLOT's activities violated local safety ordinances.  Compl. at ¶¶ 102-104.  These actions demonstrate PLOT was indifferent to the health and safety of others.

PLOT's violation of Plaintiffs' civil rights was also purposeful, malicious, and repetitive—the  latest in a series of similar PLOT disruptions in the Binghamton area targeted at political messages with which PLOT disagrees.  Compl. at ¶¶ 36-38. PLOT members were previously arrested for disrupting Binghamton's Columbus Day Parade (Compl. at ¶ 36), should have been arrested at the Dr. Laffer Event, and just days afterwards were arrested for disrupting a local government meeting.  *See Protestors Arrested at Broome County Legislature Meeting*, WNBF Radio, Nov. 21, 2019  (https://wnbf.com/protesters-arrested-at-broome-county-legislature-meeting/). PLOT has and will continue to repeatedly commit crimes to violate the rights of others, as shown by its pattern of behavior.  Despite an invitation to engage in political discussions and voice their own views as part of the Dr. Laffer Event, PLOT intentionally excluded interested members of the public from the event by blocking their entry, and subsequently shut down Plaintiffs' speech. Compl. at ¶¶ 98-105, 107-112,  115-120,  123-124.    Shunning  dialogue,  PLOT  chose  violent,  unlawful

11

suppression. This behavior was intentionally calculated to minimize Plaintiffs' opportunity to exercise their rights.

Finally, *Gore* holds that punitive damages awards should be commensurate both with the harm to plaintiffs and with similar cases. *Gore,* 517 U.S. at 575. The harm to Plaintiffs here was the cost of the event, $37,717.93. Compl. at ¶ 145; Exhibits 1-5 of Affidavit in Support of Motion for Default Judgment. Plaintiffs' request for $100,000 in punitive damages (a ratio of just under 3-to-1) is entirely appropriate. *State Farm*, 538 U.S. at 425 (upholding award of punitive damages four times the compensatory damages). Further, Plaintiffs' request is entirely in line with awards from courts in this Circuit punishing intentional and similarly reprehensible attacks on First Amendment rights and deterring future violations. *See, e.g., Stack v. Jaffee*, 306 F. Supp. 2d 137, 142 (D. Conn. 2003) (granting punitive damages of $25,000 on top of $2,000 in compensatory damages for intentional first amendment violations by police officer); *Moskowitz v. Coscette,* 3 F. App'x 1, 6-7 (2d Cir. 2001) (upholding compensatory damages of $125,000 and punitive damages of $75,000 for intentional violation of police officer's First Amendment rights by employer); *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 415 (D. Conn. 2017) (granting punitive damages of $500,000 in addition to $1 million in compensatory damages for intentional violations of police officer's First Amendment rights by employer). Plaintiffs' request for punitive damages is entirely in line with similar cases of intentional violations of First Amendment rights and comports with the rough ratio of punitive to compensatory damages other courts have found appropriate.

12

### III.    PUNITIVE DAMAGES ARE APPROPRIATE GIVEN PLOT'S REFUSAL TO APPEAR OR RESPOND TO THIS ACTION

In addition, PLOT's contemptuous refusal to appear in this action, despite repeated notice, demonstrates its view that its goals and actions are above the law. As discussed above and in the Complaint, PLOT and its members have repeatedly been arrested for acts in the Binghamton area designed to advance their political aims. *See* Compl. at ¶¶ 36-38. Despite Plaintiffs' service of process, (*see* Dkts. 17, 20, and 21), PLOT has chosen to attempt to evade review of its actions by this Court and evade consequences for the same by refusing to appear.

As such, punitive damages are necessary to deter PLOT and others from similar further violations of the political rights of Plaintiffs and others. Mere days after disrupting the Dr. Laffer Event, PLOT advertised an "Annoy the Police" rally, which disrupted a Broome County Legislature meeting, resulting in multiple arrests. *See Protestors Arrested at Broome County Legislature Meeting*, WNBF Radio, Nov. 21, 2019 (https://wnbf.com/protesters-arrested-at-broome-county-legislature-meeting/). Contempt for and disruption of the operation of local government, as with PLOT's suppression of political viewpoints with which it disagrees, in this case and others, demonstrates PLOT's continued intention to attack the bedrock ideals embodied by the First Amendment to the Constitution. Without sufficient deterrence, PLOT is likely to continue violating the rights of Plaintiffs and others. Plaintiffs' request for modest punitive damages is reasonable to achieve this goal and in line with similar awards in other cases. *See, e.g., Payne v. Jones*, 711 F.3d 85, 95 (2d Cir. 2013) ("At a

13

societal level, the community benefits from the deterrent effect of such [punitive] awards").

## CONCLUSION

For the foregoing reasons, Plaintiffs request entry of default judgment against Defendant PLOT.