**UNITED STATES DISTRICT COURT**
**<u>NORTHERN DISTRICT OF NEW YORK</u>**

| | |
|---|---|
| YOUNG AMERICA'S FOUNDATION; BINGHAMTON UNIVERSITY COLLEGE REPUBLICANS; and JON LIZAK, President of the College Republicans of Binghamton University,<br><br>    Plaintiffs,<br><br>    v.<br><br>HARVEY STENGER, President of SUNY-Binghamton, in his official and individual capacities; BRIAN ROSE, Vice President for Student Affairs of SUNY-Binghamton, in his official and individual capacities; JOHN PELLETIER, Chief of SUNY-Binghamton UPD, in his official and individual capacities; COLLEGE PROGRESSIVES, a student organization at SUNY-Binghamton; PROGRESSIVE LEADERS OF TOMORROW ("PLOT"); STUDENT ASSOCIATION OF BINGHAMTON UNIVERSITY,<br><br>    Defendants. | Civil Action No. 3:20-cv-822 (LEK/ML) |

**PLAINTIFFS' RESPONSE TO *PRO SE* AFFIDAVITS DENYING EFFECTIVE SERVICE**

Andrew C. Hruska
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
Bar Roll No. 701840
Attorney for Plaintiffs

January 4, 2021

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.   Plaintiffs completed proper service on Andrews and Friedman...............................1

    A.   Aviva Friedman ................................................................................................ 2

    B.   Masai Andrews ................................................................................................. 3

II.  Proper service on Andrews and Friedman constitutes proper service on PLOT. .....5

III. This Court should rule in favor of Plaintiffs' Motion for Default Judgment against PLOT. ......................................................................................................................8

IV.  Alternatively, this Court should authorize discovery in aid of service. ...................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
   739 F. Supp. 854 (S.D.N.Y. 1990)..........................................................................................5, 6

*Estate of Ungar ex rel. Strachman v. Palestinian Authority*,
   153 F. Supp. 2d 90 (D.R.I. 2001)............................................................................................6, 7

### INTRODUCTION

Plaintiffs personally served Masai Andrews and Aviva Friedman more than three months ago. Andrews and Friedman are known leaders and agents of Defendant Progressive Leaders of Tomorrow ("PLOT"). Despite personally accepting service, both Andrews and Friedman ignored this lawsuit and PLOT defaulted. On the eve of a hearing on Plaintiffs' motion for default judgment, they now lodge eleventh-hour objections falsely claiming that Plaintiffs never properly served them and arguing that despite their activity on behalf of PLOT, this service should not qualify as proper service on the Defendant. (Dkts 42 & 43).

There is no credible dispute that Plaintiffs completed valid service of process on Andrews and Friedman. This service constitutes valid service on PLOT because Andrews and Friedman are both known in the local Binghamton community as leaders of PLOT and are authorized agents of the organization. Moreover, PLOT was well aware of this lawsuit because Plaintiffs provided notice to PLOT's organizational email and Facebook page. Given PLOT's continued refusal to appear in this case despite repeated notice, we ask this Court to rule on the pending motion for default judgment. Alternatively, we ask this Court to permit discovery to resolve any factual disputes regarding service.

### I.   PLAINTIFFS COMPLETED PROPER SERVICE ON ANDREWS AND FRIEDMAN.

As Plaintiffs explained in the September 18, 2020 status letter to Magistrate Lovric, Plaintiffs completed valid service on Andrews and Friedman by hand-delivering a copy of the summons and complaint to them as authorized agents of PLOT. (Dkt 21). Additionally, to further ensure PLOT had adequate notice of the lawsuit against it, Plaintiffs emailed a copy of the summons and complaint to Masai Andrews and to PLOT. On September 8 and 11, 2020, Plaintiffs emailed the summons and complaint to Masai Andrews' email address at the Office for People with Developmental Disabilities (Dkt 21-6, pp. 19-20). That is the same email address that Andrews used to respond to Plaintiffs' November 19, 2020 email notifying him of the Motion for Default Judgment. (*See* attached Exhibit A). On September 16, 2020, Plaintiffs emailed the summons and complaint to PLOT's listed email address (binghamton.plot@gmail.com). (Dkt. 21-

1

1, p. 7). Plaintiffs also sent the group a direct message on Facebook the same day attaching the summons and complaint. Facebook provided a "read receipt" indicating that someone operating the group's Facebook account viewed the direct message. (Dkt. 21-2, pp. 9-11).

On October 20, 2020, Clerk of Court John Domurad certified that Plaintiffs properly served Andrews and Friedman when he entered a default against PLOT and stated that "proof of proper service for [PLOT] has been filed and that this party has not appeared in the action." (Dkt. 37-13).

Faced with the prospect of a default judgment against PLOT because their organization has refused to appear, Andrews and Friedman now claim that Plaintiffs failed to properly serve them with the summons and complaint. For the following reasons, this Court should find that Plaintiffs have properly served both individuals and confirm the entry of the default judgment.

### A. Aviva Friedman

Plaintiffs completed in-person service on Aviva Friedman on September 5, 2020. (Dkt. 17). On that day, process server John Russell arrived at Friedman's residence, 68 Pine Street, and delivered a copy of the summons and complaint directly to Friedman. (*See* attached Exhibit B ¶¶ 1-7). Russell knew that he served the summons and complaint to Friedman because he obtained a publicly available photograph of her via the internet. (*Id*. ¶ 3). Russell also knew that he had served Friedman because she confirmed her identity to Russell. (*Id*. ¶¶ 5-7). Russell knew that 68 Pine Street was her residence because a process serving agency provided him that information. (*Id*. ¶ 2). Friedman acknowledged in her affidavit that 68 Pine Street is, in fact, her home residence. (Dkt. 43 ¶ 17).

Despite Russell's testimony confirming service, Friedman denies that Russell delivered the summons and complaint to her residence on September 5. Russell's original affidavit of service, Clerk Domurad's entry of default against PLOT, and Russell's supplemental affidavit attached to this letter all contradict that denial. Friedman contends that Russell's original affidavit "should not be considered credible" because some of Russell's descriptions "do not match" her. (Dkt 43 ¶ 22). While Russell's descriptions of Friedman's race, height, and age do not match the exact

2

description in Friedman's affidavit, Russell's descriptions are reasonably accurate given that he made his assessments based on a very brief encounter with Friedman. In addition, he verified her appearance against a publicly available photograph and Friedman confirmed her identity to Russell. (*See* attached Exhibit B ¶ 3).

For those reasons, this Court should find that Plaintiffs have properly served Friedman.

### B. Masai Andrews

Plaintiffs completed in-person service on Masai Andrews on September 14, 2020, handing him a copy of the summons and complaint at his place of business. (Dkt. 20). On that day, process server Russell called Andrews' place of business and asked if Andrews was available. (*See* attached Exhibit B ¶ 14). The person who answered the phone said "yes" and transferred the call to Andrews. (*Id.*). The person who received the transferred call confirmed that he was Masai Andrews, and Russell informed Andrews that he had some legal documents that he needed to serve on Andrews and would like to come to Andrews' place of business. (*Id.* ¶ 15). After Andrews agreed to look at the documents, Russell arrived at Andrews' place of business and asked a person at the front desk if he could speak with Andrews. (*Id.* ¶ 18). That person called Andrews to the lobby. (*Id.* ¶ 18).

Russell had a publicly available photograph of Andrews, and a person who matched that photograph arrived shortly thereafter. (*Id.* ¶¶ 17-18). Russell again informed Andrews that he was a process server and had legal documents to give Andrews. (*Id.* ¶ 19). Andrews took the documents and quickly reviewed them. (*Id.*). After reviewing the documents, Andrews stated that he had nothing to do with "PLOT" and was not sure why he had anything to do with the situation. (*Id.*). While Andrews still had the legal documents in his hands, Russell stated that he was simply the process server doing his job and did not need anything further from Andrews. (*Id.* ¶ 20).

Russell has clarified in his supplemental affidavit that while his original affidavit of service incorrectly listed 29 Glenwood Road as Andrews' place of business, the correct address is 249 Glenwood Road and that he effected service on Andrews at that address. (*Id.* ¶¶ 12-13). Russell

3

knew that 249 Glenwood Road was Andrews' place of business because a process serving agency provided him that information.  (*Id.* ¶ 11).

Andrews now contends that Russell never delivered the summons and complaint to his place of business.  (Dkt. 42 ¶ 15).  That bald assertion directly contradicts Russell's credible testimony that he personally served Andrews despite his refusal to "accept" the documents.  Clerk Domurad also certified that Plaintiffs served Andrews with his entry of default against PLOT on October 20.  (Dkt. 37-13).

Andrews also claims that he received a "phishing" email at his work address on September 8, 2020, requesting that he provide the name of PLOT's designated agent for service.  (Dkt. 42 ¶ 8 n.1).  Andrews states that he did not respond because he "did not know the answer and using work email for personal purposes is generally prohibited."  Andrews misconstrues the content of that September 8 email by omitting that Plaintiffs attached a copy of the summons and complaint to the email and asked if Andrews would agree to accept service on behalf of PLOT.  (Dkt 21-6, pp. 19-20).  Andrews also ignores that Plaintiffs sent him a follow-up email on September 11 asking if he would agree to accept service via email or certified mail.  (*Id.*).

These emails provided actual notice to Andrews of the lawsuit against PLOT and demonstrate Plaintiffs' efforts to provide PLOT notice by every available means.  Further, the email to Andrews provided him actual notice that Plaintiffs considered him to be an authorized agent of PLOT.

Andrews used his business email address to respond to Plaintiffs' November 19, 2020 email alerting him of the motion for default judgment against PLOT, which Plaintiffs provided in addition to a mailed copy of the papers.  (*See* attached Exhibit A).  While Andrews initially ignored Plaintiffs' first two emails to the same address, he apparently could not ignore the third when faced with a substantial default judgment against PLOT.  The Court should not reward Andrews or PLOT for their prior attempts to evade this suit.

## II. PROPER SERVICE ON ANDREWS AND FRIEDMAN CONSTITUTES PROPER SERVICE ON PLOT.

By properly serving Andrews and Friedman, Plaintiffs have completed proper service on PLOT, which is an unincorporated association, described by both Andrews and Friedman as a "Community Group." (Dkt. 42 ¶¶ 21-26; Dkt. 43 ¶¶ 35-40). An unincorporated association is defined as a "group of persons formed voluntarily without a charter for the purpose of promoting a common enterprise or objective." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 739 F. Supp. 854, 858 (S.D.N.Y. 1990), *vacated on other grounds by* 937 F.2d 44 (2d Cir. 1991). In *Klinghoffer*, the court found that the Palestine Liberation Organization (PLO) was an unincorporated association because it was a group composed of individuals, without a legal identity apart from its membership, acting for the common purpose of restoring the rights of the Palestinian people. 739 F. Supp. at 858.

PLOT similarly is a group composed of individuals, without a legal identity apart from its membership, who act for the purpose of promoting common objectives. For example, PLOT describes itself as a "collective of advocates, artists, and agitators organizing around issues of race, class, gender, and state violence through an anti-capitalist lens. . . . PLOT has grown into an independent, multi-generational entity" that is not "formally affiliated with any established organizations, although we frequently collaborate with various groups and individuals when our objectives align."[1] To further its common enterprise and objectives, PLOT "host[s] bi-weekly public meetings to coordinate our efforts, gauge our progress, check in on members, and practice fostering safe, healthy, and inclusive environments."[2]

While PLOT enjoys the benefits of a common enterprise that organizes and acts in pursuit of shared objectives, it also goes to great lengths to evade legal process by masking the identities of its members and – when it suits it to do so – pretending it has no leadership. For example, Friedman, who is an elected member of the Binghamton City Council, confirmed in a Facebook post on October 16, 2019 that she is a member of PLOT "as much as one can be [a member] of a

---

[1] *See* PLOT Website, last accessed on December 28, 2020, https://binghamtonplot.wixsite.com/home/about.
[2] *Id.*

5

group that has no formal hierarchy or roster." (Dkt. 21-4, p. 15). In a June 19, 2020 Facebook post, Andrews, acting through his pseudonym "Roderick Douglass" – which he does not deny in his affidavit – claimed that "PLOT is not even an actual org. And PLOT doesn't speak for the community. PLOT amplifies the community." (*See* attached Exhibit C).

In another Facebook post on November 21, Andrews acknowledged being named in "several pending civil suits" while simultaneously scoffing at the legal process and highlighting the fact that he conceals his true identity. Andrews stated: "Like, judges be spending their afternoons sifting through screenshots of my Facebook posts to determine if I'm one individual or many, and if my true identity can be ascertained from snazzy one-liners." Andrews ended the post with the hashtags "#WasteTheirTime2020 #SueMe #Please". (*See* attached Exhibit D).

Because groups like PLOT do not have a legal identity apart from their members, service on unincorporated associations in federal question cases is "not limited to titled officials of the association or those expressly authorized to accept service. 'Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.'" *Klinghoffer*, 739 F. Supp. at 867 (collecting cases) (some internal quotations omitted).

In *Estate of Ungar ex rel. Strachman v. Palestinian Authority*, for example, the court found that it was fair, reasonable, and just to imply that an individual was authorized to receive service on behalf of the PLO and Palestinian Authority (PA) because he was a senior representative of the PLO and PA's Observer Mission to the United Nations and participated as a guest speaker "to present the views of Palestine to the interested public." 153 F. Supp. 2d 76, 90 (D.R.I. 2001).

Here, Andrews and Friedman are both leaders of PLOT. Friedman is an elected member of the Binghamton City Council and confirmed that she is a member of PLOT in a public Facebook post on October 16, 2019. (Dkt. 21-4, p. 15). Local press has also covered Friedman's participation as a featured speaker at PLOT protests. For example, the Binghamton University paper, *Pipe Dream*, covered a speech on "racism and inequality" that Friedman gave at a PLOT protest in October 2018. (*See* attached Exhibit E). Because Friedman is an elected leader in the

6

local political community, has confirmed her membership in PLOT, and has led PLOT protests as a featured speaker on issues that are core to PLOT's purpose, it is fair and just to infer that she has the authority to receive service on behalf of PLOT.

Andrews is also a leader of PLOT. According to the attached affidavit of Binghamton Mayor Richard David, Andrews is known in the local Binghamton community as a leader of PLOT. (*See* attached Exhibit F ¶ 3). According to David, several incidents demonstrate Andrews' leadership in the organization:

> a) In October 2019, Andrews was arrested in Binghamton for leading a PLOT group that illegally disrupted a city parade. Andrews stood in the middle of the parade route while shouting his message through a megaphone. At one point, he led other protesters in a chant of "No justice, no peace." (*Id*. ¶ 4).
> b) On about November 7, 2019, David attended a public PLOT meeting at the Broome County Public Library. Before the meeting began, Andrews walked up to the microphone to address the seated audience and informed them that the meeting would begin shortly. However, Andrews told the audience that David was seated in the back of the room and would not be welcome to stay. It was evident to David from this interaction that Andrews was one of the people leading the PLOT meeting that night. (*Id*. ¶ 5).
> c) David, who works at City Hall, has witnessed Andrews leading PLOT protests outside of City Hall on multiple occasions. (*Id*. ¶ 6).

Additionally, Andrews is a primary organizer for PLOT on social media. According to David, it is well-known in the Binghamton community that Andrews operates on social media under the pseudonym "Roderick Douglass." (*Id.* ¶ 7). Open source research shows that Andrews uses his "Roderick Douglass" pseudonym to call for PLOT volunteers. For example, a January 21, 2020 Facebook post states that one way to help is to "Volunteer: PLOT always needs physical and creative labor." He also encourages people to "[c]ome to PLOT's free community events" and to donate money through PLOT's PayPal account. (*See* attached Exhibit G). Andrews has also used his "Roderick Douglass" Facebook account to post press releases on behalf of PLOT (Dkt. 21-10, pp. 32-33) and has asked his followers to donate to PLOT causes like the "PLOT: Bystander Intervention Training" which is designed to train PLOT members to obstruct law enforcement action. (Dkt. 21-11, pp. 36-39). While Andrews attempts to distance himself from

7

PLOT's Facebook account in his affidavit (Dkt. 42 ¶¶ 23-25), his purported lack of control over that account is meaningless because he uses his own Facebook account to organize for PLOT.

Andrews' role as a PLOT protest leader is also evident from his November 18, 2019 Facebook post regarding the Dr. Laffer Event at Binghamton University that Defendant PLOT helped shut down. Speaking again through his "Roderick Douglass" Facebook profile, Andrews stated: "Students successfully shut down the Trump lecture scheduled tonight at BU, and then rallied (LOUDLY) inside and out. However, two of our people were arrested—one student and one community member. Both well known." (*See* attached Exhibit H). Andrews notes that their court date will likely be December 3 at 9 a.m. and asks his followers to "SAVE THE DATE" because "we're sure as fuck gonna support them. More details to come." In this post, Andrews claims ownership of these actions – "our people" and "we're sure as fuck gonna support them" – reinforcing the obvious conclusion that he speaks on behalf of PLOT. Andrews also offers his advice to protesters that he believes will prevent them from getting arrested and protect them from police violence in the event they are arrested. (*Id.*).

Because Andrews is known in the local Binghamton community as a PLOT leader and because he organizes and fundraises for the group on social media, it is fair and just to infer that Andrews is authorized to receive service on behalf of PLOT.

### III.  THIS COURT SHOULD RULE IN FAVOR OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST PLOT.

PLOT was properly served via Andrews and Friedman and was additionally made aware of this lawsuit through electronic communications to its email and social media accounts. Despite these efforts, it knowingly defaulted. It now belatedly seeks to evade this Court's jurisdiction through untimely and inaccurate affidavits from PLOT members who personally received service of this suit months ago.

These facts notwithstanding, Plaintiffs have further reason to believe that PLOT has actual notice of the lawsuit against it. On September 21, 2020, during discussions with opposing counsel regarding a case management plan, counsel for the Binghamton University Student Association,

Thomas Saitta, informed Plaintiffs: "I spoke to someone involved with Plot, and I believe they are going to consult with counsel." (*See* attached Exhibit I). Plaintiffs have not heard anything further regarding whether PLOT retained counsel, but this email from opposing counsel is a clear indication that PLOT is actively trying to deceive the Court and evade the legal process.

PLOT's contemptuous refusal to appear in this action shows that the group believes its goals and actions are above the law. Without sufficient deterrence, PLOT is likely to continue violating the rights of Plaintiffs and others, and it will continue evading this Court's authority and the legal process.

### IV. ALTERNATIVELY, THIS COURT SHOULD AUTHORIZE DISCOVERY REGARDING SERVICE.

To the extent the Court believes there are still factual issues to resolve regarding who is an authorized agent for PLOT, Plaintiffs request discovery to determine that fact. Plaintiffs have a reasonable basis to believe that limited discovery would reveal (i) additional information demonstrating that Andrews and Friedman are leaders and agents of PLOT, and (ii) additional individuals who could fairly be considered agents of PLOT for service. Plaintiffs would request discovery of numerous areas, including:

   a) Documents and information regarding PLOT's webpage provider, who could provide names of any PLOT contacts who pay for the webpage or are responsible for maintaining the webpage. If PLOT does not have a webpage provider, we would request discovery of the contact person who maintains PLOT's webpage;

   b) Documents and information regarding who created and maintains PLOT's PayPal account, through which the organization accepts donations;

   c) Documents and information regarding the community center space where PLOT holds bi-weekly meetings;

   d) Documents and information showing PLOT member lists and PLOT e-mail distribution lists, including e-mails from PLOT's gmail account;

9

e) Documents and information regarding PLOT's protests, including names of organizers and video recordings of the protests; and

f) Depositions of Andrews and Friedman to explore their involvement with PLOT.

Respectfully Submitted,

<u>/s/ Andrew C. Hruska</u>
Andrew C. Hruska
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
Bar Roll No. 701840
Attorney for Plaintiffs