UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YOUNG AMERICA'S FOUNDATION; BINGHAMTON UNIVERSITY COLLEGE REPUBLICANS; and JON LIZAK, President of the College Republicans of Binghamton University,<br><br>    Plaintiffs,<br><br>v.<br><br>HARVEY STENGER, President of SUNY-Binghamton, in his official and individual capacities; BRIAN ROSE, Vice President for Student Affairs of SUNY-Binghamton, in his official and individual capacities; JOHN PELLETIER, Chief of SUNY-Binghamton UPD, in his official and individual capacities; COLLEGE PROGRESSIVES, a student organization at SUNY-Binghamton; PROGRESSIVE LEADERS OF TOMORROW ("PLOT"); STUDENT ASSOCIATION OF BINGHAMTON UNIVERSITY,<br><br>    Defendants. | Civil Action No. 3:20-cv-822 (LEK/ML) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATION OF EFFECTIVE SERVICE ON DEFENDANT PLOT**

Plaintiffs in this case purported to effect service on the Progressive Leaders of Tomorrow, hereafter PLOT, an unincorporated collective of activists with no formal structure or organization, by serving two individuals. Because PLOT is an unorganized, unincorporated entity, it lacks capacity to be sued under Federal Rule of Civil Procedure 17(b)(3). A non-entity incapable of being made a defendant such as PLOT cannot be served by any means, certainly not by causing a copy of the Complaint to be served at the address of a non-party such as Aviva Friedman, who has not been sued, and is not alleged in the Complaint to have played any role in the events described therein.

Having received the Complaint, and because non-entity PLOT cannot advance legal arguments, non-party Aviva Friedman makes this special appearance for the purpose of advising the Court regarding this deficiency in Plaintiffs' lawsuit and respectfully requests that the Court deny Plaintiffs' Responses to Friedman's and Andrews' Rule 12(b)(5) Motions to Dismiss (ECF Nos. 58 and 59) and dismiss the action against PLOT pursuant to F.R.C.P. § 12 (b)(5). To rule otherwise would leave the individual non-parties who received the Complaint in an untenable position -- as they are not named in the Complaint, nor alleged to have any role in the far-fetched and sprawling allegations described therein.

## ARGUMENT

Plaintiffs' complaint names PLOT as a defendant and Plaintiffs have asked the Court to declare PLOT properly served. *See* ECF No. 59. However, as reflected in Plaintiffs' own filings (specifically the Complaint, ECF No. 1, and Plaintiffs' memorandum in support of their Motion in Response, ECF No. 59), PLOT is not an entity that, under Federal Rule of Civil Procedure 17(b), has capacity to be sued, and thus it cannot be properly served. Because PLOT is a loose collective of activists, not an entity, and has no structure, leadership, or formal membership, there was no agent to serve. It would be proper to dismiss PLOT as a defendant, without permitting Plaintiffs leave to engage in the charade of what they describe as "discovery in aid of service," but is more accurately described as an attempt to harass and intimidate non-parties. See ECF No. 59 at 9.

Plaintiffs ignore the fundamental flaw underlying their attempt at service: an entity not capable of being sued cannot be properly served anywhere. Rule 17(b) defines when a party has the capacity to sue or be sued in federal court. *Klinghoffer v S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 53 (2d Cir. 1991). Plaintiffs, however, have failed to even mention Rule 17(b) anywhere in their Motion.

Under Rule 17(b)(3), PLOT lacks capacity to be sued, and the Court should deny Plaintiffs' Motion.[1]

Rule 17(b) provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States." *Arbor Hill Concerned Citizens Neighborhood Ass'n v City of Albany, N.Y.*, 250 F. Supp. 2d 48, 60-61 (N.D.N.Y. 2003). *See also Modeste v Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU, AFL-CIO*, 850 F. Supp. 1156, 1164 (S.D.N.Y. 1994), *as amended* (Sept. 2, 1994), *aff'd,* 38 F.3d 626 (2d Cir 1994). Therefore, if PLOT, as an unincorporated association, cannot be sued under New York law, the inquiry will turn to federal law to determine PLOT's capacity, or lack thereof, to be sued. Ultimately, PLOT lacks capacity to be sued under either New York law or federal law.

1. **PLOT Lacks Capacity to Be Sued Under New York Law**

Pursuant to N.Y. General Associations Law §§ 12 and 13, an unincorporated association is afforded the capacity to sue (or be sued) through its president or treasurer. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany, N.Y.,* 250 F. Supp. 2d 48, 62 (N.D.N.Y. 2003). *See also Tibaldi v. Brezenoff*, 65 N.Y.2d 710, 711, 492 N.Y.S.2d 4, 481 N.E.2d 544 (1985). If an organization has no president or treasurer, suit can be brought in the name of, or against, "an officer who is the functional equivalent" to a president or treasurer. *Id.* If the association has no president or treasurer, the court must examine the organization's structure to determine if the person named in the

---

[1] Ms. Friedman offers the legal analysis set forth herein on her own behalf, to guard against a finding by this Court that PLOT has been properly served via Ms. Friedman. Undersigned counsel does not represent PLOT.

complaint is an elected or *de facto* officer performing equivalent functions and responsibilities as a president or treasurer. *Id.* If an unincorporated entity has no president or treasurer, the functions of the person against whom the suit is brought require delineation in the pleadings. *Id.*

By contrast, in this case, Plaintiffs have not sued PLOT by naming its president or treasurer in the complaint, or alleging that any elected or *de facto* officers of PLOT serve these functions. Rather, Plaintiffs attempt to sue PLOT in its common name without even engaging in the relevant Rule 17(b) analysis. PLOT lacks capacity to be sued directly under New York law, as it does not have a president or treasurer. Indeed, as far as Ms. Friedman knows, PLOT has *no* officers or leadership, elected or otherwise. *Declaration of Aviva Friedman*, attached as Exhibit A, ¶¶ 3-4. Plaintiffs have not named Ms. Friedman in their complaint, but even if they had, they have not raised a single argument as to why, in this instance, Ms. Friedman should be considered a president or treasurer of PLOT sufficient to permit PLOT capable of being sued in her name.

2. **PLOT Lacks Capacity To Be Sued Under Federal Law**

Because PLOT clearly lacks capacity to be sued under New York State law, and the instant complaint alleges constitutional claims, federal law controls here. *Klinghoffer*, 937 F.2d 44 at 53 (unincorporated association's capacity to sue or be sued is determined by state law *except* that federal law controls when the "complaint alleges violations of 'substantive right[s] existing under the laws or the Constitution of the United States'"). As the instant complaint alleges violations of substantive constitutional rights, however spurious or tenuous the state action connected to PLOT may be, federal law will determine whether PLOT may be sued.

As the 1937 Committee Note to the creation of Rule 17 states, this language in subsection (b)(3)(A) codifies "the existing law as to such associations" set forth in the 1922 Supreme Court decision in *United Mineworkers of America v. Coronado Coal Co.,* 259 U.S. 344 (1922). Fed. R. Civ. Proc. 17 advisory committee's Note to Subdivision (b) (1937). *See also* 6A Wright & Miller,

Federal Practice & Procedure § 1564 at 627. The Court held in that case that a vast labor union that lacked any corporate legal form but had officers, a defined chain of command, assets, and formal membership could be sued (along with its similarly organized locals). *See United Mineworkers,* 259 U.S. at 383-85. In light of the growth and importance of unions in society, Chief Justice Taft's opinion held that such entities could be "properly made parties . . . and properly served by process on their principal officers." *Id.* at 392.

Rule l 7(b)(3)(A) does not define "partnership or other unincorporated association," but whether an entity is an 'unincorporated association' is a question of federal law. Under the precedent of *United Mineworkers* and its progeny, the hallmark of an unincorporated association within the meaning of Rule 17(b)(3)(A) is a deliberate, organized group coming together for a sufficiently concrete and non-generic purpose. *See Ellul v. Congregation of Christian Bros,* No. 09 CIV 10590 PAC, 2011 WL 1085325, at *3 (S.D.N.Y. Mar. 23, 2011), *aff'd,* 774 F.3d 791 (2d Cir. 2014) ("In addition, the common purpose to which Plaintiffs point — charity — is too vague to unify these regional organizations into a single legal entity."). When evaluating whether an informal unincorporated entity is sufficiently "deliberate" and "organized" to enable it to sue or be sued under Rule 17, federal courts in New York weigh such factors as whether the entity holds regular meetings, keeps records of members; and whether there is any stated, formal leadership or authority in any form. *See Centro De La Comunidad Hispana De Locust Val. v Town of Oyster Bay*, 954 F. Supp. 2d 127, 137 (E.D.N.Y. 2013), *affd,* 868 F.3d 104 (2d Cir. 2017), and *affd,* 705 Fed. Appx. 10 (2d Cir. 2017) ("It is clear from the record that even though Centro does not have formal membership policies, it is still comprised of individuals present at its bimonthly meetings. In addition, Centro keeps record of these members, including names and addresses, and some of these members even participate in Centro's elected steering committee."). *See also Boynton v. Headwaters, Inc.,* 252 F.R.D. 397, 401 (W.D. Tenn. 2008) ("[V]oluntary and knowing

membership is the hallmark of an unincorporated association."); *Yonce v. Miners Mem'l Hosp. Ass'n*, 161 F. Supp. 178, 186 (W.D. Va. 1958) ("[s]uch an association suggests an organized group made up of persons who become members of the association voluntarily, but subject to certain rules or by-laws; the members are customarily subject to discipline for violations or non-compliance with the rules of the association.").

This analysis of whether and when an unincorporated entity may be subject to suit is consistent with the Supreme Court's holding in *United Mine Workers*, in which a highly-organized labor union with every indicia of corporate form except a formal legal charter was held amenable to suit. Allowing such an association to be named and served through its officers, rather than requiring the individual naming and service of all its formal members and officers, promotes the procedural goals of the Federal Rules — "the just, speedy, and inexpensive determination of every action and proceeding" (Fed. R. Civ. Proc. 1) — because such a process is more efficient than requiring resort to a class action. Holding individual members responsible through such a suit would not be unfair, given their voluntary, knowing, formal membership in an organized, hierarchical union led by officers elected by the members.

The converse is also true: if an association's membership does not formally select its leadership, and the leadership does not control the actions of the membership, it would be fundamentally unfair for a plaintiff to assert that all members of an unincorporated association should be potentially held liable for the actions of some few. In order for the imposition of collective responsibility to constitute due process, control must run in *both* directions, bottom-up and top-down: the members must be able to assert control over the choice of who their leaders shall be, and that leadership must exert effective control over the actions of the entire organization. Otherwise, it would be unfair to assign liability to all members for the actions of some. Moreover, service on the leadership must be capable of constituting fair notice of such potential liability to the entire

membership, and the leadership must be able to direct the defense of suit in court. All of these factors were present for the unincorporated yet highly-structured labor union at issue in *United Mineworkers*.

PLOT bears no resemblance to such a "partnership or other unincorporated association" capable of being sued under Federal Rule of Civil Procedure 17(b)(3)(A). Plaintiffs have not alleged, and indeed PLOT lacks, any of the hallmarks that courts look to in determining whether an unincorporated entity can be subject to suit. As Plaintiffs themselves state, PLOT is "a group composed of individuals, without a legal identity apart from its membership, who act for the purpose of promoting common objectives." ECF No. 44 at 5. PLOT lacks any member rolls, does not have regular meetings, keeps no records, and lacks any leadership, formal or otherwise, falling well short of the threshold required to constitute an "unincorporated association" subject to suit under Rule 17(b)(3)(A). *See Declaration of Aviva Friedman*, attached as Exhibit A.

3. **Service on Ms. Friedman and Mr. Andrews is not Effective Service on PLOT.**

Even if PLOT were capable of being sued, which it is not, service on Ms. Friedman and Mr. Andrews does not effectively serve PLOT. Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure requires that service on an unincorporated association is made "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *See Estates of Ungar ex rel. Strachman v Palestinian Auth.*, 153 F. Supp. 2d 76, 89 (D.R.I. 2001) ("Under Rule 4(h)(1), service of process on an unincorporated association shall be effected "by delivering a copy of the summons and of the complaint to an officer, [or] a managing or general agent.""). In a federal question case, federal law determines whether a person is an agent for purposes of service under Rule 4. *See Nat'l Equip. Rental, Ltd v. Szukhent*, 375 U.S. 311, 316, 84 S. Ct. 411, 11 L.Ed.2d 354 (1964); *Dodco,*

*Inc. v. Am. Bonding Co.*, 7 F.3d 1387, 1388 (8th Cir.1993).

Nowhere do Plaintiffs set forth any legal basis for the proposition Ms. Friedman or Mr. Andrews are officers or agents of PLOT sufficient to render service effective. In support of the proposition that Ms. Friedman is sufficiently a "leader of PLOT to render service on her sufficient on PLOT," Plaintiffs seemingly attempt to argue that because Ms. Friedman is a leader in the community in general (as a city councilwoman), *and* because she has stated that she is a member of PLOT, by some magical unknown legal process, she is therefore a leader of PLOT. *See* ECF No. 44 at 6-7. As Plaintiffs cite no legal authority for this proposition, it is left to Ms. Friedman to parse the matter.

"If an unincorporated association has no president or treasurer, the Court must examine the organization's structure to determine if the [party] is an elected or *de facto* officer performing equivalent functions and responsibilities as a president or treasurer." *Locke Associates, Inc. v. Foundation for the Support of the United Nations,* 173 Misc. 2d 502, 504, 661 N.Y.S.2d 691 (1997). *See also CA-POWZ (Citizens Alert: Protect our Waters) v Town of Greece, New York,* 10-CV-6035-CJS, 2010 WL 3663409, at *3 (W.D.N.Y. Sept. 14, 2010) ("in the event that an unincorporated association has no president or treasurer the specific functions of the person in whose name the suit is brought require delineation in the pleadings.").

Service under Rule 4(d)(3) is not limited to titled officials of the association or those expressly authorized to accept service. "Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Klinghoffer v S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 739 F. Supp. 854, 867 (S.D.N.Y.1990), *vacated,* 937 F2d 44 (2d Cir. 1991). *See also Montclair Electronics., Inc. v. Electra/Midland Corp.,* 326 F. Supp. 839, 842 (S.D.N.Y.1971); *Insurance Co. of N. Am. v. S/S "Hellenic Challenger,"* 88 F.R.D.

545, 547 (S.D.N.Y.1980) (quoting *Montclair* ).

Indeed, Plaintiffs make much of this proposition, insisting that PLOT has been placed on notice simply because Plaintiffs emailed the summons and complaint to PLOT's listed email address, as well as sending a message on Facebook which they claim was read by "someone operating the group's Facebook account." ECF No. 44 at 4-5. Plaintiffs also cite a number of third parties, including a statement made by an attorney for Defendant Binghamton University Student Association, and a docket entry created by a clerk. ECF No. 44 at 5, 12. Suffice it to say, there is no legal authority cited for the notion that these statements by third parties utterly unconnected to Ms. Friedman or PLOT in any way have any authority or relevance to the determination of whether PLOT has been served under Rule 4.

Plaintiffs seek to engage in what they call "limited discovery," a thinly veiled attempt to further harass non-party Ms. Friedman. Without even passingly addressing the issue of whether PLOT is an entity capable of being sued at all, let alone whether service on Ms. Friedman constitutes service on PLOT, this court should not permit Plaintiffs to engage in a fishing expedition. A defendant incapable of being sued as a legal matter under Rule 17 obviously cannot be properly served under Rule 4, as the rule itself makes clear. See Fed. R. Civ. Proc. 4(h) (governing form of service on a corporation, partnership, or "other unincorporated association that is subject to suit under a common name" (emphasis added)). It is a non-sequitur to request limited discovery to enable Plaintiffs to serve PLOT before engaging with the gateway question of whether PLOT is capable of being sued at all under federal law.

## CONCLUSION

Because the facts as set forth by Plaintiffs themselves demonstrate that PLOT lacks capacity to be sued under Federal Rule of Civil Procedure 1 7(b)(3), and because Plaintiffs have made no

9

coherent argument why causing the Complaint to be served on two individuals constituted proper service on the entire unorganized unincorporated entity PLOT, Ms. Friedman respectfully requests that this Court deny Plaintiffs' Motion for a declaration of effective service on PLOT. Moreover, on the record before the Court, it would be proper to dismiss PLOT as a Defendant, without permitting Plaintiffs leave to engage in the charade of "limited discovery," as Plaintiffs concede that PLOT is unincorporated and discovery cannot resolve the heretofore unaddressed Rule 17 issue.

      Respectfully submitted, this 30th day of April, 2021.

      <u>*s/ Rebecca Chapman*</u>
      Rebecca Chapman
      The Civil Liberties Defense Center
      1430 Willamette St. #359
      Eugene, Oregon 97401
      Phone: 541.687.9180
      rchapman@cldc.org

      *Attorney for non-party* Aviva Friedman

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YOUNG AMERICA'S FOUNDATION; BINGHAMTON UNIVERSITY COLLEGE REPUBLICANS; and JON LIZAK, President of the College Republicans of Binghamton University,<br><br>Plaintiffs, v.<br><br>HARVEY STENGER, President of SUNY-Binghamton, in his official and individual capacities; BRIAN ROSE, Vice President for Student Affairs of SUNY-Binghamton, in his official and individual capacities; JOHN PELLETIER, Chief of SUNY-Binghamton UPD, in his official and individual capacities; COLLEGE PROGRESSIVES, a student organization at SUNY-Binghamton; PROGRESSIVE LEADERS OF TOMORROW ("PLOT"); STUDENT ASSOCIATION OF BINGHAMTON UNIVERSITY,<br><br>Defendants. | Civil Action No. 3:20-cv-822 (LEK/ML) |

## DECLARATION OF AVIVA FRIEDMAN

I, Aviva Friedman, declare under penalty of perjury that:

1. I am a 2014 graduate of SUNY Binghamton and currently serve as a Binghamton city councilor.
2. From my understanding, PLOT is a group of organizers and community advocates who are interested in activism around issues of race, class, and state violence.
3. PLOT has no leadership structure, and is non-hierarchically organized; indeed, PLOT has no officers (such as a president or a treasurer).
4. PLOT has no leaders and no offices; as far as I know, it is a leaderless, structure-less association of individuals and is beyond any individual or group's control.
5. As far as I know, PLOT does not have regular meetings.
6. As far as I know, PLOT does not have membership requirements, take attendance at any meeting, or keep records pertaining to any of its so-called members.
7. I describe myself as a member of PLOT because I have, in the past, attended PLOT meetings and events organized by individuals affiliated with PLOT. I have not attended a PLOT meeting since 2018.

8. I do not have any leadership role in PLOT. I do not have any ability to tell anyone else affiliated with PLOT what to do or to set an agenda. Indeed, I would not know how to get in touch with everyone claiming membership in PLOT, as there are no requirements for membership and anyone may claim membership in PLOT. Additionally, as far as I know, PLOT keeps no records of membership.
9. I have attended events in the past that PLOT had a role in organizing. These events were organized with other groups, and were open to the public. Anyone who wanted to could attend and even speak at these events; as far as I know, there was no requirement that someone be affiliated with PLOT to speak at any of these events. These events were voluntary, and had no list of requirements or attendees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 26, 2021

*Aviva Friedman*
Aviva Friedman