### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

YOUNG AMERICA'S FOUNDATION;
BINGHAMTON UNIVERSITY COLLEGE
REPUBLICANS; and JON LIZAK, President
of the College Republicans of Binghamton
University,

     Plaintiffs,

     v.

HARVEY STENGER, President of SUNY-
Binghamton, in his official and individual
capacities; BRIAN ROSE, Vice President for
Student Affairs of SUNY-Binghamton, in his
official and individual capacities; JOHN
PELLETIER, Chief of SUNY-Binghamton
UPD, in his official and individual capacities;
COLLEGE PROGRESSIVES, a student
organization at SUNY-Binghamton;
PROGRESSIVE LEADERS OF TOMORROW
("PLOT"); STUDENT ASSOCIATION OF
BINGHAMTON UNIVERSITY,

     Defendants.

Civil Action No. 3:20-cv-822 (LEK/ML)

### NON-PARTY AVIVA FRIEDMAN'S
### REPLY ON MOTION FOR PROTECTIVE ORDER and
### RESPONSE TO REQUEST FOR SANCTIONS

Comes now non-party Aviva Friedman, by and through her undersigned counsel, Melissa
Wischerath, and replies in support of her motion for a protective order regarding plaintiff's
discovery requests and deposition questions pursuant to Fed. R. Civ. Proc. 26(c), as explained
herein and in Friedman's motion.

First, although in an abundance of caution Ms. Friedman responds to plaintiffs' request
for sanctions under 28 U.S.C. 1927 (addressed *infra* at 7-8), it appears to undersigned counsel
that that request for relief has not been separately filed as a motion, and therefore is not properly

1

before the Court. Had it been docketed as a motion, Ms. Friedman would have 21 days to respond rather than a few days (as currently ordered by the Magistrate). *See* Local Rule 7.1(a)(2). Therefore, if the Court treats the request as a motion for sanctions, Ms. Friedman respectfully requests that she be allowed until November 26, 2021, to respond to that request/motion.

On the merits of Ms. Friedman's motion for protective order, as explained herein, the Magistrate did not rule on the key issues presented therein, and therefore Ms. Friedman respectfully requests that, before Ms. Friedman is required to attend a deposition, the Court rule squarely on the motion as presented, with the benefit of these briefs.

## I.  THE MAGISTRATE DID NOT RULE ON THE KEY ISSUES PRESENTED IN THE MOTION FOR PROTECTIVE ORDER

At the time of the October 18, 2021, hearing, the Magistrate did not have the benefit of any case law or written argument from Ms. Friedman, because of the timing of plaintiffs' letter motion. Plaintiffs' letter motion (Dkt 88) was filed on October 14, 2021. Normally, a response would not have been due until November 4, 2021 (21 days after the motion). *See* Local Rule 7.1(a)(2). The telephonic oral argument with the magistrate was held only two working days later, on October 18, without benefit of a responsive written briefing.

One working day prior to the hearing, on October 15, Ms. Friedman had filed a motion for protective order *pro se*, because her counsel (undersigned counsel) had not yet been admitted to the District. *See* Docket 95. However, that motion was stricken on the Court's own motion, due to undersigned counsel having given notice that she represented Ms. Friedman in this matter. Docket 96. But, in a Catch-22 situation, because Ms. Wischerath was not yet admitted to the District, she was not able to refile the Motion for Protective Order until after the oral argument. Declaration of Wischerath.

There is no indication in the transcript of the October 18 hearing that the Magistrate

reviewed or considered the key issues raised in that stricken motion, as further discussed *infra*.

Only yesterday was undersigned counsel able to obtain the transcript of the October 18, 2021, telephonic hearing on plaintiff's letter motion to compel. Undersigned counsel, Ms. Wischerath, participated in that telephone conference with the Court. However, Ms. Wischerath unfortunately came down with cold and flu symptoms earlier in the day of the conference (to the extent she got tested for Covid), which affected her memory of exactly what was said during the hearing. Declaration of Wischerath; *see* Exhibit A (transcript) at 17 lines 16-19.

The only written memorialization of the oral argument, until the transcript was obtained yesterday, was a Text Order entered as Docket 93, which simply stated:

> TEXT ORDER: For the reasons set forth on the record at the 10/18/2021 Hearing, Letter Motion 88 is GRANTED insofar as (1) no later than 9:00 a.m. on 10/19/2021, Aviva Friedman shall provide to Plaintiffs an Unredacted and Unaltered version of Exhibit C which is also found at Dkt. No. 88-3; (2) Plaintiffs are authorized to question Aviva Friedman at the deposition as to the identity of persons who on behalf of PLOT may receive service of process and the identity of such PLOT persons. SO ORDERED by Magistrate Judge Miroslav Lovric on 10/18/2021.(Plaintiffs shall serve a copy of this text order on attorney M. Wischerath) (jdp ) (Entered:10/19/2021)

Ms. Friedman, via her attorney, complied with proviso number (1), timely producing an un-redacted Exhibit C. Therefore, what is at issue is proviso number (2). As explained in detail herein, in ordering Ms. Friedman to a deposition regarding "the identity of persons who on behalf of PLOT may receive service of process and the identity of such PLOT persons," the Magistrate did not address the key issues that were presented in Ms. Friedman's *pro se* filing (Docket 95, which was stricken) and which are now are presented again in Ms. Friedman's motion filed by undersigned counsel (Docket 105).

Specifically, the Magistrate did not address whether Ms. Friedman would be allowed to file a motion for protective order after undersigned counsel was admitted to the District. Nor did the Magistrate address any of the other key issues presented in the Motion for Protective Order,

as discussed *infra*.

At the October 18 hearing, the Magistrate made the following statements (in relevant

part):

> In reading that order, it appears to this court that Judge Kahn, in issuing his order, directed that discovery take place to allow the parties to engage in discovery to either confirm or otherwise not confirm that Friedman or Andrews are the proper agents of PLOT, and to otherwise either confirm and divulge who other individuals might be that are proper agents of PLOT. And if I understand this Exhibit 3, the plaintiffs are seeking to find out the identity of these individuals that are involved in this communication, this online communication in order to find out who other persons that are communicating with Ms. Friedman and maybe others are and whether or not those people are appropriate PLOT individuals to serve process on.
>
> * * *
>
> I think that's what Judge Kahn was authorizing the parties to do, which is no one is running to the door to say, I'm a PLOT officer and you can serve me, and everyone appears to be not claiming to be affiliated with PLOT, and the plaintiffs are saying, well, somebody is an officer of this organization or someone that can be lawfully identified to be accepting service, and since Ms. Friedman apparently from the filings is saying, I'm not it, and Mr. Andrews is saying, I'm not it, and no one is raising their hand, Judge Kahn, not me but Judge Kahn said, well, I'm going to allow discovery so that the plaintiffs can go out and attempt to locate and find persons that might be suitable, either officers to be identified or that legally may be found to be the person that can be served with process. And I don't know how plaintiffs can do that unless they conduct depositions of Ms. Friedman, Mr. Andrews, and maybe perhaps others, and also identify persons that are communicating with Ms. Friedman and Mr. Andrews and then be able to investigate whether or not that individual, after they know their identity, is an officer of PLOT and/or is someone that the law would recognize can be served on behalf of PLOT. Unless they know the identification of that person, I don't know how it is that they can pursue that, and most importantly, that's what Judge Kahn ordered, ordered that that's what this limited discovery is for, to identify persons that either are agents of PLOT or potentially can be viewed as agents of PLOT, and inherent in that order, at least to this court, is that that will involve identification of persons that are affiliated with PLOT. And it just seems that that is what the plaintiffs are seeking to do with these depositions, and also with requiring that Ms. Friedman provide an unredacted version of this Exhibit 3 or C, depending on how you catalog that.
>
> So Ms. Wischerath, I'm going to grant the motion by plaintiffs, and I will direct that Ms. Friedman provide to the plaintiffs an unredacted and unaltered version of Exhibit C, also known in these discussions as Exhibit 3 to Docket Number 88, and to provide that in unredacted, unaltered version. It seems to this court that that is precisely what Judge Kahn intended to happen during this limited discovery, and I'm going to direct that that

be accomplished by 9 a.m. tomorrow morning, October 19th, that you and your client provide that to the plaintiffs.

\* \* \*

I'm not going to in advance rule on questions at the deposition, but I know that in their Docket 88, the plaintiffs are asking for some clarification as to the questioning of Ms. Friedman at the deposition and the scope of that, and I'm simply identifying what I believe is Judge Kahn's order which is that the plaintiffs have a right to depose persons such as Ms. Friedman and Mr. Andrews on the topic of whether they are appropriate officers of PLOT and/or whether or not any other persons that Ms. Friedman or Mr. Andrews knows the identity of that may be an appropriate PLOT officer of the type that can receive service of process. That clearly is what Judge Kahn's order intended to do, so that topic is, in this court's view, legitimate and is a topic that can be explored at the deposition. Beyond that, I can't rule on specifics unless the parties bring it to my attention, as far as questions and things of that sort. So that's going to be my ruling, Ms. Wischerath. And you know, lastly, on that point, any disagreement in my view about this ruling, what you really have is a disagreement of Judge Kahn's order that he issued at Docket 72, and if that disagreement was or is there, then you're most likely looking or asking Judge Kahn to reconsider his order, but nobody has made that application, and the way I read his order, I think it's very, very clear as to what his intent was.

Exhibit A (transcript) at 22-27.

As explained in Ms. Friedman's motion (Docket 105 at 6-7), member lists, mailing lists, the locations where PLOT has had meetings, communications about protests, and videos of protests, do not address the relevant inquiry. This issue was not addressed by the Magistrate in his oral ruling.

As also explained in Ms. Friedman's motion, the closest plaintiffs came to the scope of the Court's limited discovery order, in their discovery requests to Ms. Friedman, was "names of organizers . . . of [PLOT's] protests." But as Ms. Friedman explained in her *pro se* objection, and as demonstrated by the document she produced to plaintiffs, PLOT did not organize the protest that is at issue. Docket 105 at 7. This issue was not addressed by the Magistrate in his oral ruling.

In addition, Ms. Friedman explained in her general objections that she "ha[s] no information about PLOT's current activities, and ha[s] not attended a PLOT meeting since early

2019." Therefore no information Ms. Friedman could provide would lead to discovery of agents for purpose of service. *Id.* This issue was not addressed by the Magistrate during oral argument.

As further explained in Ms. Friedman's motion, Ms. Friedman objected to some of plaintiff's requests on the basis of the First Amendment (Freedom of Association), and cited relevant case law that precludes discovery of such information. Docket 105 at 7-8. This issue was not addressed in any way by the Magistrate during oral argument.

The First Amendment protection of the names of people who cannot be deemed agents of PLOT but simply are on the mailing list, or who attended meetings, or similar non-managerial associations, is a threshold issue, and must be addressed in order to prevent irreparable harm from  the compelled disclosure of protected information. *See NAACP v. Alabama*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171 (1958) (NAACP was entitled to keep its membership lists secret; "compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective * * * restraint on freedom of association * * *"); *Shelley v. Kraemer*, 334 U.S. 1, 14-15, 68 S. Ct. 836, 842-43 (1948); *Marrese v. Am. Academy Ortho. Surgeons*, 726 F.2d 1150 (7th Cir. 1984) (protecting American Academy of Orthopaedic Surgeons from having to disclose its membership list to two doctors rejected for admission who sued the Academy). As the court noted in *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987), it would be error for the trial court to fail to consider the merits of the claim of First Amendment privilege.

As requested in Ms. Friedman's motion, of the Court does order disclosure of names, Ms. Friedman requests that the Court limit and protect that disclosure, through a confidentiality provision or other means. This issue, too, was not addressed in any way by the Magistrate during oral argument. *See Int'l Union, UAEAIWA, et al. v. Nat'l Right to Work Legal Defense and Educ. Fndn*, 590 F.2d 1139, 1153 n.19 (D.C. Cir. 1978). Such a limitation is especially appropriate

6

here, where the names are being sought solely to accomplish service on PLOT, not for the merits of the case.

## II. IT IS INAPPROPRIATE TO ORDER ANY SANCTIONS UNDER 28 U.S.C. 1927

The Supreme Court has clearly held that the courts' powers to levy attorney fees for bad faith "must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S. Ct. 2455, 2463 (1980). Ms. Friedman and undersigned counsel did not act recklessly or in bad faith in filing the Motion for Protective Order (Docket 105), and therefore imposing fees under 28 U.S.C. 1927 would be improper.

This situation is analogous to *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222 (2d Cir. 1991), wherein a party continued to raise an argument until it was finally heard (unsuccessfully) on its merits. The court declined to impose fees under § 1927, because it did not agree that the party "repeatedly reasserted the undisclosed principal argument to 'vexatiously multiply proceedings.' Instead, we find that Baker only raised the claim until it was actually reviewed on the merits." *Id*. at 231. The same is true here, and fees under § 1927 would be improper.

"In determining the issue of bad faith, a court must decide whether a reasonable attorney could have concluded that facts supporting the claim might be established, and not whether such facts actually had been established." *Matter of Capitol-York Const. Corp.*, 52 B.R. 317, 321 (S.D.N.Y. 1985) (citing *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980)). This standard requires the court to find that a competent attorney could not have formed "a reasonable belief that the pleading is well grounded in fact." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).

Assessing fees under 28 U.S.C. § 1927 is appropriate only when the attorney's actions

7

both multiplied the pleadings, and were "reckless[] or in bad faith." *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985). "The standards for bad faith are necessarily stringent." *Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975). The courts' power to impose fees under § 1927 should thus be exercised "only in instances of a serious and studied disregard for the orderly processes of justice." *Kiefel v. Las Vegas Hacienda*, 404 F.2d 1163, 1167 (7th Cir. 1968), *cert. denied*, 395 U.S. 908 (1969). *See also Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985).

"[G]ood faith assertions of colorable claims or defenses" are not punishable by sanctions under § 1927. *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C. Cir. 1980) (citing *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S. Ct. 2157, 2165). Where the allegedly vexatious conduct is merely "the filing and arguing of a claim, it is not sufficient that the claim be found meritless; the claim must be without a plausible legal or factual basis and lacking in justification." *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226-27 (7th Cir. 1984). "The good faith filing of a claim supported by an arguable legal theory will not be viewed as 'vexatious.' The term ' vexatious' is defined as 'lacking justification and intended to harass.' Webster's International Dictionary (1971)." *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983). In *Overnite*, the Seventh Circuit held that since there was a legal basis for the losing party's "even though that position was found to be legally incorrect, we hold Overnite's claim . . . cannot be characterized as 'lacking justification,' and therefore the district court abused its discretion when finding the attorney's conduct was vexatious." *Id.*

If the Court considers plaintiffs' request for attorney fees as a motion (even though not so docketed), that motion should be denied.

## CONCLUSION

Ms. Friedman respectfully requests a protective order, protecting the identities of all persons affiliated with PLOT, except to the extent plaintiffs can demonstrate that their requests are reasonably calculated to lead to the admissible evidence regarding "agents" of PLOT, as discussed in this brief and in Ms. Friedman's Motion.

If this Court does order disclosure of any names, Ms. Friedman requests a protective order keeping that information confidential, to minimize any repercussions to those people and their First Amendment rights to freedom of association.

Sanctions under 28 U.S.C. 1927 would be inappropriate. If the Court does consider plaintiffs' request within their response to the Motion for Protective Order to be a motion, the Court should deny that motion (or at the very least allow Ms. Friedman until November 26, 2021, to respond to that motion for sanctions).

Respectfully submitted, this 11th day of November, 2021.

_/s/ Melissa Wischerath_
Melissa Wischerath