UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YOUNG AMERICA'S FOUNDATION, *et al.*,

      Plaintiffs,

  -against-         3:20-CV-0822 (LEK/TWD)

HARVEY STENGER, *et al*.,

      Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

Young America's Foundation ("YAF"), the Binghamton University College Republicans ("College Republicans"), and Jon Lizak (collectively, "Plaintiffs") brought this action pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986 against Harvey Stenger, Brian Rose, John Pelletier, the College Progressives, the Progressive Leaders of Tomorrow ("PLOT"), and the Student Association of Binghamton University (collectively, "Defendants"), alleging infringement of "Plaintiffs' fundamental rights to free speech and equal protection of law by state actors on their own and in conspiracy with private actors." Dkt. No. 1 ("Complaint") ¶ 2. Now before the Court are (1) Plaintiffs' motion for default judgment against PLOT, Dkt. No. 163 ("Motion for Default Judgment"), and (2) Lizak's motion to dismiss his own claims against Defendants, Dkt. No. 208 ("Lizak's Motion for Dismissal"). For the reasons below, the Court grants Lizak's Motion for Dismissal, with a conditional order of prejudice, but denies the Motion for Default Judgment.

## II.  BACKGROUND

### A. Factual Allegations

The following facts are derived from the Complaint and are accepted as true only for purposes of assessing liability on the Motion for Default Judgment against PLOT. For a more

complete statement of Plaintiffs' factual allegations against all Defendants, reference is made to the Complaint, see Compl. ¶¶ 10–147, and this Court's August 24, 2021, decision granting in part and denying in part Stenger, Rose, and Pelletier's (collectively, "State Defendants") motion to dismiss the Complaint, see Dkt. No. 70 at 2–12.

When Plaintiffs filed their Complaint, Plaintiff Lizak was "a full-time student at SUNY-Binghamton," and the President of the College Republicans. Compl. ¶ 16.[1] The College Republicans are an unincorporated association of SUNY-Binghamton students and are also a named Plaintiff in this suit. Id. ¶ 12. The College Republicans regularly engage in expressive, political activities on campus. Id. ¶ 44. Plaintiff YAF "is a nonprofit organization . . . whose mission is to educate the public on the ideas of individual freedom, a strong national defense, free enterprise, and traditional values." Id. ¶ 10. "YAF partners with like-minded student organizations on university campuses to, among other things, co-host speakers." Id. ¶ 11.

Defendant PLOT—the unincorporated association against which Plaintiffs seek a default judgment, see Mot. for Default J.—"is a non-student group based in Binghamton, New York." Id. ¶ 35. According to Plaintiffs, "PLOT describes itself as a collective of advocates who organize around issues of, among other things, race, class, gender[,] and economics . . . ." Id. ¶ 36 (footnote omitted). PLOT "engage[s] in, among other things, 'direct action' against the people of the Binghamton area and, in concert with the College Progressives,[2] against the students of SUNY-Binghamton." Id. (footnote added).

---

[1] In an affirmation accompanying Lizak's Motion for Dismissal, his attorney declares under penalty of perjury that "Lizak stepped down as the president of the . . . College Republicans . . . in December 2021," and "graduated from Binghamton University in May 2022." Dkt. No. 208-2 ¶¶ 2, 4.

[2] "Defendant College Progressives is a registered student organization at SUNY-Binghamton and an unincorporated association of SUNY-Binghamton students." Id. ¶ 33.

> For example, in October 2019, members of PLOT led a protest of more than 20 people (including members of [the] College Progressives) that formed a human chain and temporarily shut down Binghamton's Columbus Day Parade. A number of protesters wore masks to conceal their identities, which reportedly startled some of the Binghamton residents who attended, including children. Police arrested four of the protesters for disorderly conduct, and the Binghamton Mayor publicly condemned PLOT's actions.
>
> In November 2019, PLOT disrupted a Broome County Legislature meeting on the passage of a new law. Local police agencies arrested ten protesters for disorderly conduct, obstructing governmental administration, and resisting arrest after the protesters reportedly became unruly and refused to obey directives from security.

Id. ¶¶ 37–38 (footnotes omitted).

On November 18, 2019, YAF and the College Republicans attempted to present a speech at SUNY-Binghamton "by renowned economist and presidential advisor Dr. Arthur Laffer . . . ('Dr. Laffer Event')." Id. ¶ 49. However, in the days leading up to this public event, "PLOT posted a flyer to social media encouraging its members and others to disrupt [it]." Id. ¶¶ 73–75 (citing id. at 65–66 ("Exhibit 5")). The "College Progressives [then] reposted PLOT's flyer to their Instagram account," Compl. ¶ 76 (citing id. at 67–68 ("Exhibit 6")), and in another post, "explicitly asked its supporters via Instagram to '[c]ome out and support BING PLOT . . . to speak out against College [R]epublicans . . .' and to 'come out to lecture hall 8 . . . and put an end to this clownery,'" Compl. ¶ 76 (alterations in original) (citing id. at 69–70 ("Exhibit 7")).

"At least one hour before the Dr. Laffer Event was scheduled to begin, [the] College Progressives and PLOT and their co-conspirators were lined up outside the lecture hall and packed into the adjacent lecture hall provided . . . by SUNY-Binghamton administrators." Id. ¶ 98. "Once the doors to the Dr. Laffer Event were opened, hundreds of students and non-students, many of them members of [the] College Progressives and PLOT, flooded in and packed the

room." <u>Id.</u> ¶ 99. "[M]any of these individuals remained standing in the rows, side aisles, and back of the lecture hall." <u>Id.</u> ¶ 100.

"The Dr. Laffer Event started promptly at 7:30 [PM] EST with John Restuccia, the then-President of the College Republicans, providing a brief two-minute introduction of Dr. Laffer." <u>Id.</u> ¶ 108. "Dr. Laffer took the podium and, just a few seconds in, a member of Defendant College Progressives and/or PLOT stood up in the second row and began shouting accusations at Dr. Laffer." <u>Id.</u> ¶ 110. "The majority of those present greeted these accusations with applause, and the disrupting student was soon handed a megaphone and urged to continue." <u>Id.</u> ¶ 112. The "College Republicans, who were sitting in the first row, stood up and displayed 'Free Speech' signs in response to the disruptors." <u>Id.</u> ¶ 114. The disrupting student "spoke through the megaphone for nearly two minutes before UPD [i.e., the New York State University Police at Binghamton] took any action to restrain him." <u>Id.</u> ¶ 115. "Ten to fifteen members of [the] College Progressives and PLOT then formed a protective barrier around the megaphone-wielding disruptor." <u>Id.</u> ¶ 116. "Additional members of [the] College Progressives and PLOT flooded into the lecture hall from the adjacent room which SUNY-Binghamton administrators had provided to them and which had connecting doors to the lecture hall." <u>Id.</u> ¶ 117.

During these events, Pelletier, the Chief of UPD, directed two security agents hired by YAF "to remove Dr. Laffer from the lecture hall." <u>Id.</u> ¶¶ 30, 118. The agents—who were "hired [by YAF] to protect Dr. Laffer's personal safety—complied with the directive and escorted Dr. Laffer and his aides out of the lecture hall into a hallway behind the podium." <u>Id.</u> ¶ 119.

Eventually, the disruptor with the megaphone was removed, but "he handed off the megaphone" to others. <u>Id.</u> ¶ 122. The "College Progressives and PLOT and their supporters continued to occupy the lecture hall, surrounding hallways, and the area outside of the lecture

4

building for more than one hour." Id. ¶ 123. "As their disruption continued, [the] College

Progressives and PLOT [called] Plaintiffs . . . 'white supremacists' and 'racists,'" which

Plaintiffs have characterized as slander. Id. ¶ 124. "When Plaintiffs attempted to engage them in

dialogue, one disruptor stated: 'The only time we have to mobilize on issues are in these spaces.

Because we are never heard. Because you are always heard as a white male in this country.'" Id.

### B.  Relevant Procedural History

The procedural history of this case, which has been litigated for nearly three years now, is

complex. See Docket. For the purposes of this Memorandum-Decision and Order, the Court

narrows its retelling of the procedural history to the developments most relevant to resolving the

pending Motion for Default Judgment and Lizak's Motion for Dismissal. For a more complete

statement of the case's procedural history, reference is made to the Docket.

On July 22, 2020, Plaintiffs filed their Complaint, which, among other causes of action,

raised two claims against PLOT for conspiring with other Defendants to deprive Plaintiffs of

their First Amendments rights. Compl. ¶¶ 162–73 (citing 42. U.S.C. § 1985(3)). On September 9,

2020, Plaintiffs filed proof of service on Stenger, Rose, Pelletier, the College Progressives, and

the Student Association of Binghamton University (collectively, "non-PLOT Defendants"). See

Dkt. Nos. 10–13. Two days later, on September 11, 2020, Plaintiffs filed an affidavit of service

of the summons and Complaint on PLOT "by delivering to and leaving a true copy thereof with

[non-party] Aviva Friedman, who is a/the authorized agent of/for Progressive Leaders of

Tomorrow (PLOT)." Dkt. No. 17. Then, on September 16, 2020, Plaintiffs filed another affidavit

of service of the summons and Complaint on PLOT "by delivering to and leaving a true copy

thereof with [non-party] Masai Andrews, who is a/the Authorized Agent of/for Progressive

Leaders of Tomorrow (PLOT)." Dkt. No. 20.

On September 18, 2020, Plaintiffs filed a status report regarding service on PLOT, and represented to the Court that:

> We have personally served a copy of the summons and [C]omplaint on two leaders of PLOT, Aviva Friedman and Masai Andrews. PLOT is an unincorporated organization that explicitly refrains from establishing a formal hierarchy or published membership. As such, service on two individuals who are known as members and leaders constitutes effective service on the organization. . . .
>
> Additionally, to further ensure PLOT has adequate notice of the lawsuit against it, Plaintiffs emailed a copy of the summons and [C]omplaint directly to PLOT's organizational email address on September, 2020[,] and sent the group a direct message on Facebook attaching the summons and [C]omplaint. Facebook provided a "read receipt" indicating that a PLOT leader operating the group's Facebook account viewed the direct message.

Dkt. No. 21 at 1–2 (citations omitted). In the same status report, Plaintiffs provided the Court with further information to support Plaintiffs' position that non-parties Friedman and Andrews are "leaders" of PLOT, and that personal service on them should count as "effect[ing] proper service on [D]efendant PLOT." Id. at 4.

The following month, in a Text Order dated October 13, 2020, the Honorable Miroslav Lovric, United States Magistrate Judge, observed that PLOT's "time to answer or otherwise respond to the Complaint . . . expired," and thus directed Plaintiffs "to file either (1) a request for [a] Clerk[']s entry of default [against PLOT], or (2) a status report." Dkt. No. 27. On October 19, 2020, Plaintiffs requested an entry of default from the Clerk of the Court, Dkt. No. 34, which was granted the next day, Dkt. No. 35. Then, on November 19, 2020, Plaintiffs made their first motion for a default judgment against PLOT, Dkt. No. 37, and served the motion papers on PLOT by sending them electronically to non-parties Andrews and Friedman's work email addresses, and mailing physical copies to various addresses affiliated with non-parties Andrews and Friedman, Dkt. No. 37-3.

6

On December 14, 2020, non-party Andrews filed a pro se affidavit in opposition to

Plaintiffs' motion for default judgment. Dkt. No. 42. In the affidavit, non-party Andrews

declared that he "was not served properly with" Plaintiffs' summons and Complaint, and that he

is "not a Principal or Agent of 'PLOT.'" Id. ¶ 5. Two days later, non-party Friedman filed a

similar pro se affidavit, also declaring that she "was not served (properly or otherwise) with"

Plaintiffs' summons and Complaint, and that she is "not a Principal or Agent of 'PLOT.'" Dkt.

No. 43.

On January 4, 2021, Plaintiffs replied, arguing that "[t]here is no credible dispute that

Plaintiffs completed valid service of process on Andrews and Friedman," and that "[t]his service

constitutes valid service on PLOT because Andrews and Friedman are both known in the local

Binghamton community as leaders of PLOT and are authorized agents of the organization." Dkt.

No. 44 at 4.[3]

On July 13, 2021, non-party Friedman submitted further documents to the Court "as

proof that not only was [she] never properly served, but [she] was not even in the state at the

time . . . [P]laintiffs claim to have served [her] at [her] home in Binghamton, NY." Dkt. No. 49 at

1. The next day, non-party Andrews also provided evidence that the process server never entered

his place of employment to serve Andrews back in September 2020. Dkt. No. 50 at 1 (citing id.

at 2–9). In the same filing, non-party Andrews asked the Court to "dismiss the [C]omplaint . . . ."

Id. at 1.

On February 11, 2021, non-party Andrews followed up from his earlier dismissal request

with a more formal pro se motion to dismiss the Complaint pursuant to Federal Rule of Civil

---

[3] For the avoidance of doubt, the Court uses the pages numbers generated by ECF—the Court's
electronic filing system—when citing to specific pages in papers filed on the docket.

Procedure 12(b)(5). Dkt. No. 51. He asked the Court to "dismiss this action against . . . PLOT because I am not an authorized agent of PLOT or otherwise affiliated," id. ¶ 8, and to dismiss the action "to the extent it involves [Andrews]" personally, id. ¶ 9.

Four days later, on February 15, 2021, Plaintiffs filed new affidavits of service on non-parties Andrews and Friedman with the Court. See Dkt. Nos. 52–53. Then, in early March 2021, non-party Friedman filed two pro se letter motions, the first of which requested a 10-day extension to file an answer to the Complaint. Dkt. No. 54. The second letter motion requested dismissal pursuant to Rule 12(b)(5) on the ground that she is not a representative of PLOT. Dkt. No. 55.

On March 3, 2021, Judge Lovric denied non-party Friedman's pro se letter motion seeking dismissal of the Complaint without prejudice. In his denial, Judge Lovric noted that:

> A person who is not an attorney may only represent himself in a pro se action; he may not represent another person. See 28 U.S.C. § 1654 (In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.); United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 92 (2d Cir. 2008) (Because [§1654] permits parties only to plead and conduct their own cases personally, we have held that an individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause. That is, in order to proceed pro se, [a] person must be litigating an interest personal to him.).

Dkt. No. 56.

Non-party Friedman then retained counsel and moved the Court for leave to proceed as a non-party to the action, or, in the alternative, as an amicus curiae. Dkt. No. 60. However, Judge Lovric ordered that the Court strike this attorney-drafted filing from the docket because:

> Only a party or an attorney representing a party may file papers in this action. Aviva Friedman is neither a party in this action or an attorney. Rebecca Chapman, Esq. represents non-party Aviva

Friedman and has not filed a notice of appearance representing any party in this action. Motion [at Dkt. No.] 60, as filed by Aviva Friedman and Rebecca Chapman, Esq., attempts to represent the interests of and on behalf of Defendant Progressive Leaders of Tomorrow ("PLOT"). But Rebecca Chapman, Esq., does not represent "PLOT," has never filed a notice of appearance on behalf of "PLOT," and therefore cannot file anything on behalf of "PLOT." Aviva Friedman is not an attorney nor a party in this action. Friedman therefore cannot file anything on behalf of "PLOT." A person who is not an attorney may only represent himself in a pro se action; he may not represent another person.

Dkt. No. 61 (citations omitted).

Given the factual and legal disputes regarding the sufficiency of service on PLOT, on July 27, 2021, the Court ordered Plaintiffs to submit another filing by August 10, 2021, "discussing whether an evidentiary hearing is needed to determine whether Andrews and Friedman were properly served before Plaintiffs filed their motion for default judgment and the impact of Plaintiffs' February 2021 service of Andrews and Friedman in relation to the motion for default judgment, especially if the initial service was not proper." Dkt. No. 68. In this Text Order, the Court specifically authorized non-parties Andrews and Friedman to submit a response to this additional filing, id., especially in light of Judge Lovric's earlier admonition that Friedman was not allowed to file anything in this case because she is both a non-party to this action, and not a licensed attorney admitted in the Northern District of New York.

On August 10, 2021, Plaintiffs complied with the July 27, 2021, Text Order, and submitted their additional filing regarding service on PLOT. In the filing, Plaintiffs argued that "no hearing is necessary because . . . Andrews does not rebut facts regarding service and Plaintiffs need only serve one representative of PLOT to properly serve PLOT." Dkt. No. 69 at 2. Plaintiffs added: "Even if the Court were to disregard the September 2020 service, Plaintiffs again served PLOT in February 2021," and that extension of the service period is warranted "due

to Plaintiffs' 'reasonable efforts and diligence' to effectuate service and provide notice to PLOT . . . ." <u>Id.</u> at 8.

Non-party Friedman responded to this additional filing on August 24, 2021, with a filing of her own that characterizes itself as pro se but appears to have been drafted with the aid of an attorney. Dkt. No. 71. In the filing, non-party Friedman argued that service on two individuals who contest their relationship to PLOT "cannot constitute service on PLOT." <u>Id.</u> at 1. She also maintained that "the purported service on [herself in September 2020] did not occur." <u>Id.</u>

More than two weeks later, on September 9, 2021, the Court issued a decision, finding that "Plaintiffs are entitled to a discretionary extension of time [to serve PLOT] and deem[ing] the February 2021 service of the summons and [C]omplaint upon [non-parties] Andrews and Friedman as timely and proper." Dkt. No. 72 at 7. However, the Court expressly reserved judgment on the question of whether such personal service on non-parties Andrews and Friedman could amount to proper service on PLOT. <u>Id.</u> The Court observed that "[a]t this time, the Court does not have enough evidence to conclusively decide whether [non-parties] Friedman or Andrews are 'an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process' for PLOT." <u>Id.</u> at 7–8. "Therefore, the Court will allow [Plaintiffs] the appropriate amount of time to conduct limited discovery to 1) confirm if Friedman or Andrews are the proper agents of PLOT and 2) confirm other individuals who are proper agents of PLOT, if necessary." <u>Id.</u> at 8. Given that it remained unclear to the Court whether service on PLOT had been effected, the Court denied Plaintiffs' motion for a default judgment against PLOT with leave to renew. <u>Id.</u>

After the Court issued its September 9, 2021, decision, Plaintiffs and the non-parties litigated several discovery disputes over documents relevant to the question of PLOT's

leadership, which need not be recounted in detail here. See, e.g., Dkt. Nos. 76, 79, 80, 82, 87, 88, 89, 91, 93, 96, 97, 98, 99, 100, 102, 122. While Plaintiffs and the non-parties continued to litigate those disputes, Plaintiffs requested the Court for an order "holding that [non-party] Andrews is authorized to accept service on PLOT's behalf," on November 1, 2021. Dkt. No. 103 at 2. On November 19, 2021, the Court denied this request without prejudice and with leave to renew after Plaintiffs submitted an updated status report by December 7, 2021. Dkt. No. 125.

On February 16, 2022, after reviewing the limited discovery provided by Plaintiffs on PLOT's leadership, the Court granted Plaintiffs' "request to hold that [non-party] Andrews is authorized to accept service on PLOT's behalf . . . ." Dkt. No. 142 ("February 2022 Order") at 6.[4] Hence, to the extent that PLOT legally exists, the Court found that "there was proper service on PLOT via Andrews," and "afford[ed] PLOT a final **30 days** to respond to [the] Complaint." Id. at 5 (emphasis in original). However, the Court explicitly reserved on the questions of "PLOT's legal existence[,] and [its] capacity to be sued" under 42 U.S.C. § 1985(3), noting that "any future motion for default judgment" would have to address these threshold legal issues. Id.

After the Court issued the February 2022 Order, non-party Andrews then attempted to file an answer to the Complaint, wherein he reiterated his position that he has no affiliation to, or leadership position within, PLOT. Dkt. No. 144 ¶ 4.[5] But Judge Lovric ordered that this filing be

---

[4] Given this finding, the Court found it unnecessary to reach the question of whether non-party Friedman was authorized to accept service on PLOT's behalf. Dkt. No. 142 at 5 n.4.

[5] The Court acknowledges that in recounting the procedural history of this case, it is relying, in part, on filings that Judge Lovric ordered stricken from the docket. In referring to these stricken filings, the Court notes that, in general, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016). These filings, and the reasons Judge Lovric relied upon to strike them, are crucial to understanding the complex procedural history of this case. It would not be efficient, nor expedient, for the Court simply to ignore their contents in evaluating where this case stands today with respect to PLOT and non-parties Andrews and Friedman.

stricken from the docket "because it was filed by non-party . . . Andrews, who does not appear to be an attorney and therefore cannot represent other parties." Dkt. No. 145. Then, on March 25, 2022, an attorney, who was "happy to put in an appearance for [non-party Andrews] as [PLOT's] agent," sought an extension of time to respond to the Complaint, Dkt. No. 146, but Judge Lovric ordered this filing be stricken from the docket as well "because it was filed by an attorney who has failed to file a Notice of Appearance on behalf of PLOT but nevertheless claims to make requests and representations on behalf of Defendant PLOT." Dkt. No. 147.

Then, on March 30, 2022, another attorney filed a notice of appearance with the Court to represent non-party Andrews, "solely in his individual capacity," and not PLOT, Dkt. No. 148, and requested a conference "to clarify what the responsibilities of [non-party] Andrews in fact are." Dkt. 149. This attorney noted that non-party Andrews "approached" him because Andrews "fear[ed] that he personally has been burdened with the mantle of a group that, according to him, does not exist." Id. However, Judge Lovric denied the request for a conference because the attorney appeared to be seeking "an advisory opinion from the Court as to any possible future consequences that may be brought upon . . . Non-Party . . . Andrews." Dkt. No. 150.

On April 5, 2022, Plaintiffs sought another entry of default against PLOT from the Clerk of the Court. Dkt. No. 154. The Clerk granted the request the next day. Dkt. No. 155. A month later, on May 9, 2022, Plaintiffs filed their renewed Motion for Default Judgment as to PLOT, arguing, among other things, why PLOT has the legal capacity to be sued under 42 U.S.C. § 1985(3). See Mot. for Default J; Dkt. No. 163-4 ("Default Judgment Memorandum"). Since the filing of the Motion for Default Judgment, PLOT still has not appeared in the action or responded to the Motion. See Dkt. Nos. 163, et seq.

12

After Plaintiffs filed their Motion for Default Judgment, Plaintiffs and the non-PLOT Defendants continued to engage in discovery. See Dkt. Nos. 165–207. Then, on January 23, 2023, Lizak filed a motion for an order dismissing his claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Dkt. No. 208. Stenger, Rose, and Pelletier (collectively, "State Defendants") opposed the motion, primarily on the ground that Lizak sought to dismiss his claims to avoid sitting for a deposition while he defends against "criminal charges . . . in connection with his involvement in the January 6, 2021[,] insurrection that took place at the U.S. Capitol." Dkt. No. 212-9 at 8. In the alternative, the State Defendants argued that Lizak's "claims should be dismissed in their entirety with prejudice and Lizak should be required by this Court to give deposition testimony in this case." Dkt. No. 212-9 at 5. In his Reply, Lizak submitted that "counsel have [already] set a mutually agreeable date for [his] deposition," and that "this Court could further order [his] deposition as a condition of dismissal . . . ." Dkt. No. 217 at 2. Lizak also represented to the Court that, "in the interest of resolving this [specific] dispute, [he] does not object to [the State] Defendants' request to dismiss his claims with prejudice, so long as this Court orders that *all* parties are to bear their own costs and fees associated with [his] dismissed claims." Id. (emphasis added).

On the same day that Lizak filed his Reply, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge,[6] ordered Lizak's deposition to be completed on March 16, 2023. Dkt. No. 216. On March 20, 2023, the State Defendants notified the Court that the deposition of Lizak "ha[s] been completed." Dkt. No. 220 at 1.

---

[6] This matter was reassigned from Judge Lovric to Judge Dancks on October 26, 2022. Dkt. No. 200.

### III.     MOTION FOR VOLUNTARY DISMISSAL

Given that (1) the pending Motion for Default Judgment was brought on behalf of all Plaintiffs, including Lizak, see Dkt. No. 163-1 at 1, but (2) Lizak now seeks to remove himself from this case, the Court will address Lizak's Motion for Voluntary Dismissal first.

### A.  Legal Standard

Rule 41(a)(1) provides that "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(i), (ii). If the plaintiff cannot satisfy subsections (i) or (ii), then the plaintiff must rely on Rule 41(a)(2), which allows for a voluntary dismissal "at the plaintiff's request *only* by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2) (emphasis added). "Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Id.

Dismissals pursuant to Rule 41(a)(2) are at the district court's discretion and only will be reviewed for an abuse of that discretion. See D'Alto v. Dahon California, Inc., 100 F.3d 281, 283 (2d Cir. 1996). "Although voluntary dismissal without prejudice is not a matter of right, the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." Gap, Inc. v. Stone Int'l Trading, 169 F.R.D. 584, 588 (S.D.N.Y. 1997) (citations omitted). "The United States Supreme Court recognized long ago that starting a litigation all over again does not constitute legal prejudice." D'Alto, 100 F.3d at 283 (citing Jones v. SEC, 298 U.S. 1, 19 (1936)).

In Zagano v. Fordham Univ., the Second Circuit outlined several factors relevant to determining whether a plaintiff's claims have proceeded so far such that dismissing them without

14

prejudice—thereby leaving open the possibility that the plaintiff may bring these claims in the future—would prejudice the defendant. 900 F.2d 12, 14 (2d Cir. 1990). These factors include: "[1] the plaintiff's diligence in bringing the motion; [2] any 'undue vexatiousness' on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss." Id. (brackets in original).

Elsewhere, the Second Circuit has also "conclude[d] that a district judge may convert a dismissal sought to be entered without prejudice to one with prejudice." Gravatt v. Columbia Univ., 845 F.2d 54, 56 (2d Cir. 1988) (footnote omitted). However, the district judge "must . . . afford[]" the plaintiff who brought the motion "an opportunity to withdraw his motion in the event the [district] judge decides that, if the motion is granted, [the plaintiff's claims] will be dismissed *with* prejudice." Id. at 54 (emphasis in original).

## B. The Court's Analysis

As Lizak correctly notes in his Reply, the State "Defendants point[ed] only to a single . . . source of prejudice: their inability to take [his] deposition." Dkt. No. 217 at 2. As noted above, since responding to Lizak's Motion for Dismissal, the State Defendants have been able to complete Lizak's deposition. Dkt. No. 220 at 1. Accordingly, the Court sees no reason to deny Lizak's Motion because of substantial prejudice to the State Defendants.

The only question that remains is whether the dismissal should be granted with or without prejudice. While Lizak initially moved to dismiss his claims without prejudice, he has since represented to this Court that "in the interest of resolving this dispute, [he] does not object to [the State] Defendants' request to dismiss his claims with prejudice, so long as this Court orders that all parties are to bear their own costs and fees associated with [his] dismissed claims." Id. at 2.

While the Second Circuit has cautioned that "Rule 41(a)(2) ought not to become a mechanism to impose upon a plaintiff the extreme sanction of a dismissal with prejudice," that warning only applies "where the plaintiff would rather pursue the litigation than accept that result." Gravatt, 845 F.3d at 57. Lizak appears to have "accepted that result," so long as all parties bear their own costs and fees associated with his dismissed claims. Id.

Accordingly, the Court dismisses Lizak's claims with prejudice, conditioned on all Defendants not bringing a motion against Lizak for costs and fees associated with his dismissed claims. Should any Defendant bring such a motion, the dismissal of Lizak's claims shall be deemed without prejudice.

## IV.    MOTION FOR DEFAULT JUDGMENT

Now that Lizak's claims have been dismissed from the litigation, the Court proceeds to examine whether YAF and the College Republicans—as the only remaining Plaintiffs in this case—are entitled to a default judgment against PLOT.

### A.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." After the clerk enters the default, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). Even if a court determines that service was properly effected, the court must still examine whether the plaintiff's "allegations [accepted as true]

16

establish [the defendant's] liability as a matter of law." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). That examination of liability, in turn, requires an inquiry into whether the plaintiff has Article III standing to pursue her claims against a given defendant. See Sanchez v. Ms. Wine Shop Inc., No. 22-CV-2178, 2022 WL 17368867, at *9 (E.D.N.Y. Nov. 30, 2022) ("Where the plaintiff . . . lacks Article III standing . . . the district court lacks subject matter jurisdiction to enter default judgment." (citation omitted)).

"In determining whether a default judgment should enter, courts have [also] cautioned that a default judgment is an *extreme* remedy that should only be granted as a last resort." Bravado Intern. Group Merchandising Services, Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (emphasis added) (citing Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). While the Second Circuit has recognized "the push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously," the Second Circuit has also emphasized that a trial court must balance that interest with the trial court's responsibility to "afford[] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993) (citations omitted). Because of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt should be resolved in favor of the defaulting party." Id. "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." Bravado, 655 F. Supp. 2d at 186 (citing Erwein DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

District courts have significant discretion over whether to enter a judgment of default, and "may consider a number of factors in deciding whether or not to grant a default judgment." Bravado, 655 F. Supp. 2d at 186. These factors include:

> [W]hether the grounds for default are clearly established and the
> amount of money potentially involved—the more money involved,

> the less justification for entering the default judgment. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.

Id. (cleaned up).

### B. The Court's Analysis

The Court begins its analysis by examining the threshold legal question of whether PLOT exists as a matter of law, which is "separate and distinct" from the related question of whether PLOT has the capacity to be sued. Roby v. Corp. of Lloyd's, 796 F. Supp. 103, 110 (S.D.N.Y. 1992), aff'd, 996 F.2d 1353 (2d Cir. 1993); see also Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 382–83 (2d Cir. 2021) (collecting cases). As noted earlier, in determining whether to grant a motion for default judgment, a court must examine whether a plaintiff's "allegations establish [the defendant's] liability as a matter of law." Finkel, 577 F.3d at 84. A fundamental part of that inquiry is whether a plaintiff has Article III standing to pursue her claims against a given defendant. See Sanchez, 2022 WL 17368867, at *9. As the Supreme Court has observed, "it is elemental that there must be parties before there is a[n] [Article III] case or controversy." Ellis v. Dyson, 421 U.S. 426, 434 (1975). This Court will not exercise its judicial power if it "doubt[s] the existence of sufficient adversary interest to stimulate the parties to a full presentation of the facts and arguments." Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3530 (3d ed.). Accordingly, if PLOT does not have legal existence, Plaintiffs are not entitled to a default judgment against it.

While Plaintiffs have made a compelling case in their Motion for why unincorporated associations have the *capacity* to be sued under 42 U.S.C. §§ 1985(3), see Default J. Mem. at 12–14, Plaintiffs have conceded that, under New York law, PLOT has "no legal existence

18

separate and apart from its individual members." <u>Id.</u> at 15 (quoting <u>L&L Assoc. Holding Corp. v. Charity United Baptist Church</u>, 935 N.Y.S.2d 450, 452 (N.Y. Dist. Ct. 2011)); <u>see also</u> <u>Fund Liquidation</u>, 991 F.3d at 385–86 (noting that while "[f]ederal law sets the parameters on what is necessary to possess Article III standing . . . state law . . . can supply the answers to certain antecedent questions relevant to whether those federal requirements are satisfied," including "[w]hether a particular [entity]" has "legal existence"). Plaintiffs' concession that PLOT lacks independent legal existence under New York law (and under any other law that might be relevant, including federal law) is therefore fatal to their Motion, as the Court lacks the power to enter a default judgment against an entity that does not legally exist.[7]

Plaintiffs' contention that "Plaintiffs' service of [non-party] Andrews overcomes PLOT's lack of legal existence as an unincorporated association under New York law," Default J. Mem. at 17, does not change this determination. The rules of service, as outlined in the Federal Rules of Civil Procedure, cannot bestow legal existence upon an entity that would otherwise not have it. <u>See</u> <u>Roby</u>, 796 F. Supp. at 110–11 (citing the Rules Enabling Act, 28 U.S.C. § 2072(b)) (other citations omitted). In light of that, the Court will not read its February 2022 Order—which explicitly reserved on the question of PLOT's legal existence—as somehow bestowing legal

---

[7] It is worth noting that in <u>United Mine Workers of America v. Coronado Coal Co.</u>—an authority Plaintiffs have offered in support of their argument that PLOT has the legal capacity to be sued as an unincorporated association, <u>see</u> Default J. Mem. at 12–13—former Chief Justice William Howard Taft observed that "the growth and necessities of these great labor organizations" like the unincorporated defendant in that case "have brought *affirmative legal recognition of their existence* and usefulness and provisions for their protection, which their members have found necessary. . . . They have been given *distinct and separate representation* and the right to appear to represent union interests in statutory arbitrations, and before official labor boards." 259 U.S. 344, 385–86 (1922) (emphasis added). Of course, these same characteristics do not apply to PLOT. Plaintiffs can point to no "affirmative legal recognition of [PLOT's] existence" that is "distinct and separate" from its alleged members.

existence upon PLOT simply because the Court found that Plaintiffs satisfied Rule 4(h)(1)(B) by serving the summons and Complaint on non-party Andrews.[8]

In an effort to save the Motion from PLOT's lack of legal existence, Plaintiffs posit that "[i]t has been uniformly held that an action or proceeding against an unincorporated association may be maintained even though the president or treasurer was not named in the title of the action, **provided such president or treasurer was actually served with process**." Default J. Mem. at 16 (brackets and emphasis in original) (quoting United Min. & Chem. Corp. v. United Mechanics' Union, Local 150 F, 252 N.Y.S.2d 581, 582 (N.Y. Sup. Ct. 1964)) (other citations omitted). Plaintiffs thus characterize their failure to join non-party Andrews as a defendant to this action as a "mere irregularity." Default J. Mem. at 12 (quoting L&L Assoc., 935 N.Y.S.2d at 452). But that characterization cannot save their Motion for Default Judgment against PLOT. Importantly, none of the cases provided by Plaintiffs stand for the unique proposition that, on a plaintiff's motion for default judgment against an entity with no legal existence of its own, a court may somehow join an entity's associate to the action to remedy a plaintiff's earlier failure to do so, and then still enter a default judgment against the entity without allowing the associate

---

[8] Subsequent developments in this case, see Dkt. Nos. 145, 147–50, and a more searching review of the record have also led the Court to doubt the correctness of its earlier finding that service was properly effected on PLOT via personal service on non-party Andrews. Feb. 2022 Order at 5; Young America's Foundation v. Stenger, No. 20-CV-0822, 2022 WL 474152, at *2–3 (N.D.N.Y. Feb. 16, 2022) (Kahn, J.). In that short seven-page order, the Court resolved a significant factual dispute concerning non-party Andrews' relationship to PLOT in favor of Plaintiffs without an evidentiary hearing, which raises serious due process concerns. See id. However, the Court need not vacate its earlier finding regarding the sufficiency of service on PLOT from the February 2022 Order to resolve Plaintiffs' Motion for Default Judgment. Of course, the Court may still do so in the future if circumstances warrant it. See generally Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

of that entity to respond. The perversity of allowing such a maneuver is plainly apparent.

Notably, non-party Andrews attempted to file a pro se answer after this Court deemed service

effective upon PLOT, Dkt. No. 144, but Judge Lovric ordered it stricken from the docket

"because it was filed by non-party . . . Andrews, who does not appear to be an attorney and

therefore cannot represent other parties," Dkt. No. 145. Non-party Andrews has indicated to this

Court several times in this litigation that he was not involved in the conduct giving rise to

Plaintiffs' Complaint. If Plaintiffs joined him as a defendant, he would have the opportunity to

defend against their claims on the merits. See generally Enron, 10 F.3d at 95–96 (noting that

courts, before awarding a default judgment, must ensure that litigants have been "afford[ed] . . . a

reasonable chance to be heard").

      Plaintiffs' related statement that "if the Court finds that Plaintiffs are required to add

Andrews as a defendant, Plaintiffs will do so," Default J. Mem. at 17, is too clever by half.

Having recognized the possible shortcomings of their litigation strategy—i.e., pursuing the

nebulous PLOT in litigation for nearly three years, rather than seeking to join PLOT-affiliated

individuals as defendants to the action and stating plausible allegations against them based on

facts learned in discovery—Plaintiffs now ask this Court to endorse the joinder of non-party

Andrews as a defendant to this action in order to resolve their Motion. But the Court will not

entertain such an under-the-table joinder request, especially after the deadlines for joinder of

parties and amended pleadings have passed. See Dkt. No. 160 ("Joinder of Parties due by

7/12/2022. Amended Pleadings due by 7/12/2022."). Plaintiffs would have to seek leave from the

Court to file an amended complaint in order to join new parties to this action. And to be clear,

simply tacking on non-party Andrews' name as a defendant to the Complaint as it currently

exists would not state a claim against him, as there are no allegations in the Complaint

concerning him, his personal involvement in the complained-of events, and his relationship to PLOT. See Compl. ¶¶ 10–147.

While Plaintiffs may desire the headline, "Federal judge awards default judgment against PLOT," the Court will not award something so detached from its narrow mandate to adjudicate Article III cases or controversies. There are several legitimate pathways to "punish[ing] [PLOT-affiliated individuals] in a meaningful way" for their actions in November 2019, Mot. to Default. J. at 11, but this is not one of them. As Plaintiffs concede, PLOT's "obfuscation" has not prevented them from discovering meaningful facts about the identities of various PLOT-affiliated individuals. But for reasons unknown to this Court, in March 2023, nearly three years after this litigation commenced, the only PLOT-affiliated defendant Plaintiffs have sued remains the nebulous PLOT entity itself.

Accordingly, the Court denies the Motion for Default Judgment. The Court also sua ponte dismisses Plaintiffs' claims against PLOT for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs have been on notice since February 2022 that the Court had concerns about "PLOT's legal existence," Feb. 2022 Order at 5, which is a threshold requirement for this Court exercising jurisdiction over any claims against PLOT. See Ellis, 421 U.S. at 434 ("[I]t is elemental that there must be parties before there is a[n] [Article III] case or controversy."). In their Motion, Plaintiffs conceded PLOT's lack of legal existence. They need not be given another opportunity to revise their position.

## V.    ORDER TO SHOW CAUSE

Given the Court's obligation to ensure it has subject matter jurisdiction sua sponte, Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006), cert. denied, 549 U.S. 1282 (2007), the Court

also finds it necessary to raise the following two issues. First, now that "Lizak [has] stepped down as the [P]resident of the . . . College Republicans," Dkt. No. 208-2 ¶ 2, and has successfully dismissed his individual claims from this action, see supra Section III.B, the Court has reason to believe that the unincorporated association of College Republicans no longer has Article III standing to pursue claims on behalf of its members. See generally Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 (1977) (outlining the circumstances under which "an association has standing to bring suit on behalf of its members").

Second, many of the Court's concerns regarding Plaintiffs' Article III standing with respect to their claims against PLOT, see supra Section IV.B, apply with equal force to their claims against the College Progressives. While PLOT and the College Progressives are distinguishable insofar as an attorney has appeared on behalf of the College Progressives, Dkt. No. 29, whereas none has appeared on behalf of PLOT, both entities are unincorporated associations without independent legal existence under New York law. The College Progressives' attorney has also represented to this Court that the "College Progressives [are] no longer an active organization at Binghamton University," and that "the students who were associated with [the] College Progressives are no longer students" there. Dkt. No. 167.

Accordingly, Plaintiffs shall have fourteen days to show cause, in a memorandum of law not to exceed fifteen pages, double-spaced, as to (1) why this Court should not sua sponte dismiss the College Republicans' claims for lack of Article III standing, and (2) why this Court should not sua sponte dismiss YAF and the College Republicans' claims against the College Progressives for lack of Article III standing. The limit of fifteen pages does not apply to exhibits that may be needed to prove certain jurisdictional facts. Should any Defendant wish to respond to

Plaintiffs' memorandum to show cause, Defendants must first seek leave of Court in a letter brief not to exceed one page, single-spaced.

VI.     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Lizak's Motion for Dismissal (Dkt. No. 208) is **GRANTED**; and it is further

**ORDERED**, that Lizak's claims against Defendants are hereby **DISMISSED**. The dismissal shall be **with prejudice**, so long as no Defendant brings a motion against Lizak for costs and fees associated with his dismissed claims. Should any Defendant bring such a motion, the dismissal of Lizak's claims shall be **without prejudice**; and it is further

**ORDERED**, that Plaintiffs' Motion for Default Judgment (Dkt. No. 163) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court is respectfully directed to **VACATE** the prior entries of default against PLOT (Dkt. Nos. 35, 155); and it is further

**ORDERED**, that Plaintiffs' claims against PLOT are **DISMISSED** for lack of subject matter jurisdiction; and it is further

**ORDERED**, that the Clerk is respectfully directed to **TERMINATE** Plaintiff Jon Lizak and Defendant PLOT from the docket of this action; and it is further

**ORDERED**, that Plaintiffs shall have **fourteen (14) days** to **SHOW CAUSE**, in a memorandum of law not to exceed **fifteen (15) pages**, double-spaced, as to (1) why this Court should not sua sponte dismiss the College Republicans' claims for lack of Article III standing, and (2) why this Court should not sua sponte dismiss YAF and the College Republicans' claims against the College Progressives for lack of Article III standing. The limit of **fifteen (15) pages**

does not apply to exhibits that may be needed to prove certain jurisdictional facts; and it is further

      **ORDERED**, that should any Defendant wish to respond to Plaintiffs' memorandum to show cause, Defendants must first seek leave of Court in a letter brief not to exceed **one (1) page**, single-spaced; and it is further

      **ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**

DATED:      March 23, 2023
              Albany, New York

LAWRENCE E. KAHN
United States District Judge