UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

YOUNG AMERICA'S FOUNDATION;
BINGHAMTON UNIVERSITY
COLLEGE REPUBLICANS; and REIN
BEY, in her official capacity as President of the
College Republicans of Binghamton
University,

                    Plaintiffs,

        v.

HARVEY STENGER, President of
SUNY-Binghamton, in his official and
individual capacities; BRIAN ROSE, Vice
President for Student Affairs of SUNY-
Binghamton, in his official and individual
capacities; JOHN PELLETIER, Chief of
SUNY-Binghamton UPD, in his official
and individual capacities; and STUDENT
ASSOCIATION OF BINGHAMTON
UNIVERSITY,

                    Defendants.

---

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
PELLETIER'S MOTION FOR
SUMMARY JUDGMENT PURSUANT
TO FRCP 56**

Case No.: 3:20-cv-822-LEK/TWD

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 1

STANDARD OF REVIEW .............................................................................. 2

ARGUMENT ................................................................................................ 3

I.   PLAINTIFFS' CLAIMS AGAINST PELLETIER IN HIS OFFICIAL CAPACITY
     MUST BE DISMISSED. ........................................................................... 3

     A.   Plaintiffs' claims against Pelletier in his official capacity are really claims against
          the State of New York that are barred by sovereign immunity. ............................ 3

     B.   There is no State policy or custom that can support official capacity claims
          against Pelletier. ........................................................................................ 5

     C.   There was no underlying constitutional violation. ................................................. 7

II.  THE CLAIMS AGAINST PELLETIER IN HIS INDIVIDUAL CAPACITY MUST
     BE DISMISSED BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY. ... 8

III. PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF
     LAW. ................................................................................................... 11

     A.   The Spine is a limited public forum, and the alleged police actions in ending
          plaintiffs' Tabling Event did not violate plaintiffs' First Amendment rights. ...... 11

     B.   Pelletier's actions in the lecture hall during the Laffer Event did not endorse a
          heckler's veto or infringe plaintiffs' First Amendment rights. ............................ 18

     C.   The lack of more arrests after the Tabling and Laffer Events did not violate
          plaintiffs' constitutional rights. ..................................................................... 20

IV.  PLAINTIFFS' EQUAL PROTECTION CLAIMS UNDER THE FOURTEENTH
     AMENDMENT FAIL AS A MATTER OF LAW. ................................................. 21

V.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES OR
     INJUNCTIVE RELIEF. ............................................................................. 22

     A.   Punitive damages are not warranted in this case. ................................................. 22

# TABLE OF CONTENTS

B.    Plaintiffs are not entitled to the injunctive relief they request. ............................ 23

VI.   PLAINTIFF REIN BEY HAS NO STANDING TO BRING THIS ACTION. ....... 24

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355 (2d Cir. 2002) ................. 21

*Agosto v. New York City Department of Education*, 982 F.3d 86 (2d Cir. 2020).............. 6

*Akinlawon v. Mayo*, 2024 U.S. Dist. LEXIS 41749 (N.D.N.Y. 2024) ............................ 24

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
    880 F. Supp. 2d 456 (S.D.N.Y. 2012)......................................................................... 12

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ..................................................... 3

*Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013) ............................................................ 7

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*,
    226 F. Supp. 2d 401 (S.D.N.Y. 2002)......................................................................... 13

*Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010) ............................................................... 13

*Caldarola v. Calabrese,* 298 F.3d 156 (2d Cir. 2002) ..................................................... 2

*Chaney v. Koupash*, 2008 U.S. Dist. LEXIS 104924 (N.D.N.Y. 2008) .......................... 21

*Christian Legal Socy. Ch. of the Univ. of California v Martinez*,
    561 U.S. 661 (2010)..................................................................................................... 19

*City of Canton v. Harris*, 489 U.S. 378 (1989)................................................................. 7

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)..................................................................................................... 21

*City of Escondido, et al. v. Marty Emmons*, 586 U.S. 38 (2019)....................................... 8

*Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267 (2d Cir. 2011)........................ 12

*Davis v. Stratton*, 360 F. App'x 182 (2d Cir. 2010) ........................................................ 13

*Deferio v. City of Syracuse,* 306 F. Supp. 3d 492 (N.D.N.Y. 2018)................................ 18

*Dublino v. McCarthy*, 2019 U.S. Dist. LEXIS 78347 (N.D.N.Y. 2019) .......................... 24

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993).................................................. 6

## <u>TABLE OF AUTHORITIES</u>

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ........................................................ 24

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................ 11

*Ex parte Young*, 209 U.S. 123 (1907) .............................................................................. 4

*Feiner v. New York*, 340 U.S. 315 (1951) ...................................................................... 17

*Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98 (2d Cir. 2001) .................... 4

*Gentile v. Nulty*, 769 F. Supp. 2d 573 (S.D.N.Y. 2011) ................................................ 21

*Gilles v. Blanchard*, 477 F.3d 466 (7th Cir. 2007) ........................................................ 14

*Graham v. Henderson*, 89 F.3d 75 (2d Cir.1996) ........................................................... 18

*Hafer v. Melo*, 502 U.S. 21 (1991) ........................................................................ 4, 5, 8

*Hansen v. Town of Smithtown*, 342 F Supp 3d 275 (E.D.N.Y. 2018) ............................. 15

*Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) ......................................... 13

*Hickok v. Orange Cty. Cmty. Coll.*, 472 F. Supp. 2d 469 (S.D.N.Y. 2006) ..................... 12

*Hotel Emples. & Rest. Emples. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.,*
    311 F.3d 534 (2d Cir. 2002) ...................................................................................... 13

*Johnson v. Perry*, 859 F.3d 156 (2d Cir. 2017) ....................................................... 13, 17

*Keister v. Bell*, 2020 U.S. Dist. 97794 (N.D. Ala. 2020) ................................................ 13

*Keister v. Bell*, 29 F.4th 1239 (11th Cir. 2022) .............................................................. 14

*Kempkes v. Downey*, 2008 U.S. Dist. LEXIS 25981 (S.D.N.Y. 2008) ............................ 21

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ................................................ 3, 5, 8

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163 (1993) .................................................................................................... 6

*Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996) ................................................................ 23

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) .................................................................. 9

40821905.v2

# **TABLE OF AUTHORITIES**

*LeVine v. NY State Police*, 2022 US Dist LEXIS 173677 (N.D.N.Y. 2022) ..................... 5

*Lis v. Leahy*, 1991 U.S. Dist. LEXIS 21749 (W.D.N.Y. 1991) ....................................... 20

*Lucente v. Cnty. of Suffolk*, 980 F.3d 284 (2d Cir. 2020) ................................... 5

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ........................ 3

*McClean v. County of Westchester*,
    2018 U.S. Dist. LEXIS 204269 (S.D.N.Y. 2018) ................................................ 5

*Mediavilla v. City of NY*, 259 F Supp 3d 82 (S.D.N.Y. 2016)) ......................................... 7

*Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978) .................................................. 4, 5

*Montero v. City of Yonkers,* 890 F.3d 386 (2d Cir. 2018) ................................. 5

*Myers v. Barrett*, 1997 U.S. Dist. LEXIS 3995 (N.D.N.Y. 1997) .................................... 21

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
    442 F.3d 101 (2d Cir. 2001) ....................................................................... 23

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139 (1993) ................... 4

*Papineau v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ........................................................ 17

*Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206 (2d Cir. 2004)) ..................................... 3

*Pearson v. Callahan*, 555 U.S. 223 (2009) .............................................................. 92

*Peregrine Myanmar v. Segal*, 89 F.3d 41 (2d Cir. 1996) ................................................ 24

*Phillips v. DeAngelis*, 571 F. Supp. 2d 347 (N.D.N.Y. 2008)
    *aff'd*, 331 F. App'x 894 (2d Cir. 2009) .......................................................... 7

*Pierre v. N.Y. Dep't of Corr. Servs.*, 2009 U.S. Dist. LEXIS 51798 (S.D.N.Y. 2009) ...... 4

*Pikulin v. City Univ. of N.Y.*, 176 F.3d 598 (2d Cir. 1999) ........................................... 3

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) .................................................. 15

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) .............................................................. 9

## TABLE OF AUTHORITIES

*Puerto Rice Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)........ 4

*R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533 (2d Cir. 2011) .......... 12, 19

*Rahman v. Fisher*, 607 F. Supp. 2d 580 (S.D.N.Y. 2009) ................................................... 3

*Regan v. Boogertman*, 984 F.2d 577 (2d Cir. 1993)....................................................... 11

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir. 1991)........................................... 5

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008)....................................................... 3

*Roth v. Levittown Union Free Sch. Dist.*,
  2023 US Dist LEXIS 171865 (E.D.N.Y. 2023)........................................................... 19

*Rother v. NYS Dep't of Corr. & Cmty. Supervision*,
  970 F. Supp. 2d 78 (N.D.N.Y. 2013)........................................................................... 4

*Rowe v. N.Y. State Div. of the Budget*,
  2012 U.S. Dist. LEXIS 132238 (N.D.N.Y. 2012) ....................................................... 24

*Rowe v. Wal-Mart Stores, Inc.,* 11 F. Supp. 2d 265 (W.D.N.Y. 1998)............................ 2

*Russitano v. Brown*, 2013 US Dist LEXIS 127957 (N.D.N.Y. 2013) ............................. 20

*Santiago v. City of Rochester*, 2022 U.S. Dist. LEXIS 52492 (W.D.N.Y. 2022).............. 5

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................................... 9

*Scott v. Harris,* 550 U.S. 372 (2007)............................................................................... 2

*Seattle Mideast Awareness Campaign*, 781 F.3d 489 (9th Cir. 2015)............................ 18

*Szymonik v. Connecticut*, 807 F.App'x 97 (2d Cir. 2020) ................................................ 4

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999)........................................................... 8, 9

*Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998) ....................................................... 8, 9

*Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ................................. 7

*Tyler v. City of Kingston*, 593 F. Supp. 3d 27 (N.D.N.Y. 2022) ...................................... 17

40821905.v2

## <u>TABLE OF AUTHORITIES</u>

*United States Postal Serv. v. Council of Greenburgh Ciil Ass'ns*,
  453 U.S. 114 (1981) ........................................................................................... 15

*Vill. of Freeport v. Bar relict*, 814 F.3d 594 (2d Cir. 2016) ............................... 3

*Wandering Dago, Inc., v. New York State Office of General Services*,
  992 F. Supp.2d 102 (N.D.N.Y. 2014) ........................................................... 12

*White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2d Cir.1993) ........................ 18

*Widmar v. Vincent*, 454 U.S. 263 (1981) ........................................................... 13

*X-Men Sec., Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999) ..................................... 9

*Young America's Found. v. Kaler*, 370 F.Supp.3d 967 (D.Minn. 2019) .......................... 13

**Statutes**

42 U.S.C. § 1983 ........................................................................................ 3, 7, 8, 11, 23

Fed. R. Civ. P. 56(a) ................................................................................................ 2

Local Rule 56.1(a) ................................................................................................... 1

First Amendment ........................................................................................... passim

Eleventh Amendment.................................................................................. 3, 4, 5, 14, 22

Fourteenth Amendment .............................................................. 2, 3, 4, 7, 11, 19, 20, 21

40821905.v2

## PRELIMINARY STATEMENT

Defendant John Pelletier, former Chief of SUNY-Binghamton's University Police Department ("University PD"), sued in his official and individual capacities, submits this memorandum of law in support of his motion for summary judgment seeking dismissal of plaintiffs' Amended Complaint and all claims against him. There were no violations of plaintiffs' constitutional rights, the claims against Pelletier in his official and individual capacity cannot stand, and plaintiffs are not entitled to the punitive damages or injunctive relief they seek. Also, plaintiff Rein Bey no longer has standing to sue. For the reasons explained in detail below, Pelletier requests an Order of this Court dismissing the Amended Complaint against him, in its entirety, on the merits and with prejudice.

## STATEMENT OF FACTS

The relevant facts are set forth in the accompanying Local Rule 56.1(a) Statement of Material Facts and are fully incorporated by reference into this memorandum of law and referenced herein. Briefly, this case arises from two separate incidents that occurred on November 14 and 18, 2019 at the SUNY-Binghamton University campus. The first arose from a tabling event by the College Republicans and Turning Point USA on the campus' Spine, which was disrupted by protestors (the "Tabling Event"). The second event was a lecture by economist Arthur Laffer, which plaintiffs Young America's Foundation ("YAF") and the College Republicans co-sponsored and which was also disrupted by protestors (the "Laffer Event").

As a result of the Tabling and Laffer Events, plaintiffs commenced this action against, among others, Pelletier, in his official and individual capacities. ECF Doc. 1. Following motion practice, the Court dismissed certain parties and claims. ECF Doc. 70. Plaintiffs thereafter filed an Amended Complaint, which asserts three causes of action. ECF Doc. 262. Of the three

remaining causes of action, only portions of the First and Sixth are directed against Pelletier. *Id*. Plaintiffs allege that Pelletier, in his official capacity, violated their First Amendment free speech and Fourteenth Amendment Equal Protection rights at both the Tabling and Laffer Events. As to Pelletier in his individual capacity, plaintiffs allege that he violated their First and Fourteenth Amendment rights at the Laffer Event. *Id*. There are no triable issues of fact regarding Pelletier's alleged liability, and therefore all claims against Pelletier, in both his individual and official capacities, should be dismissed as a matter of law.

## <u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.'" *Rowe v. Wal-Mart Stores, Inc.,* 11 F. Supp. 2d 265, 266 (W.D.N.Y. 1998).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (emphasis added). "[T]he mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis added).

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS AGAINST PELLETIER IN HIS OFFICIAL CAPACITY MUST BE DISMISSED.

Plaintiffs have asserted claims against Pelletier in his official capacity based on alleged violations of their First and Fourteenth Amendment rights at both the Tabling and Laffer Events. ECF Doc. 262. Before reaching plaintiffs' First Amendment and Equal Protection claims, the Court must first examine whether plaintiffs can pursue their claims against Pelletier pursuant to 42 U.S.C. § 1983. Section 1983 does not confer any substantive rights but "merely provides a method for vindicating federal rights elsewhere conferred." *Vill. of Freeport v. Bar relict*, 814 F.3d 594, 600 n.8 (2d Cir. 2016) quoting *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). "To state a claim under Section 1983, a plaintiff must show: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; [and] (4) damages." *Rahman v. Fisher*, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) citing *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). As a matter of law, plaintiffs cannot prevail on their official capacity claims against Pelletier for several reasons.

### A.    Plaintiffs' claims against Pelletier in his official capacity are really claims against the State of New York that are barred by sovereign immunity.

As a threshold matter, plaintiffs' claims against Pelletier in his official capacity are barred by sovereign immunity. It is beyond cavil that "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, it is treated as a

suit against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Because the real party in interest in an official capacity suit is the governmental entity and not the named official, the immunities available to the defendant are those that the governmental entity possesses. *See id/* at 167; *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, plaintiffs' causes of action against Pelletier are claims against the State of New York. *See also Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, n.55 (1978). As the Second Circuit has explained, a plaintiff that brings official capacity claims against defendants employed by SUNY "is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields SUNY." *Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98, 107 (2d Cir. 2001).

Plaintiffs are therefore limited to prospective injunctive relief (*see, e.g., Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 102 (N.D.N.Y. 2013), and they therefore may not recover monetary damages or declaratory relief (ECF Doc. 262 at p. 41) as against Pelletier in his official capacity. *See Puerto Rice Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Szymonik v. Connecticut*, 807 F.App'x 97, 101 (2d Cir. 2020) (finding the "Eleventh Amendment bars federal courts from issuing retrospective declaratory relief against state officials for pas violations of federal law").

Plaintiffs' requests for injunctive relief, however, do not fare any better. *Ex parte Young*, 209 U.S. 123 (1907) and progeny establish a limited exception to sovereign immunity where there is an ongoing violation of federal law and so the relief requested is actually prospective. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993). An isolated incident is insufficient to establish an ongoing violation. *See, e.g., Pierre v. N.Y. Dep't of Corr. Servs.*, 2009 U.S. Dist. LEXIS 51798 (S.D.N.Y. 2009). Here, however, the alleged violations of

plaintiffs' First and Fourteenth Amendment rights are not ongoing. The voluminous record demonstrates two singular occurrences, the Tabling and Laffer Events that occurred in November 2019. The alleged violations are not ongoing and the exception to Eleventh Amendment immunity as provided by the *Ex Parte Young* doctrine cannot and does not apply. Pelletier is therefore immune from suit with respect to all claims against him in his official capacity. *See LeVine v. NY State Police*, 2022 US Dist LEXIS 173677, at *32-33 (N.D.N.Y. 2022).

> **B.    There is no State policy or custom that can support official capacity claims against Pelletier.**

Because the State of New York is the real party in interest in plaintiffs' official capacity claims against Pelletier, a policy or custom of the State "must have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25 quoting *Graham*, 473 U.S. at 166; *see also Monell*, 436 U.S. at 694. An official policy or custom includes "decisions of a government's lawmakers, the acts of its policymaking officials, practices so persistent and widespread as to practically have the force of law." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020). Here, no State policy or custom existed that could have or did play a part in the alleged constitutional violations.

In their Amended Complaint, plaintiffs refer to an unwritten, undefined so called "speech suppression policy" to try to satisfy the policy or custom requirement. ECF Doc. 262. But bare allegations of the existence of a custom or policy, accompanied by conclusory allegations linking the asserted constitutional injuries to such policy, are insufficient. *See Montero v. City of Yonkers,* 890 F.3d 386, 403-404 (2d Cir. 2018); *Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 124 (2d Cir. 1991); s*ee also Santiago v. City of Rochester*, 2022 U.S. Dist. LEXIS 52492, *8-9 (W.D.N.Y. 2022) (collecting cases in which *Monell* claims were dismissed due to complaints

having conclusory assertions of governmental policies and customs); *McClean v. County of Westchester*, 2018 U.S. Dist. LEXIS 204269, *61 (S.D.N.Y. 2018)

In fact, the voluminous record in this case has conclusively established that no such policy ever existed. Plaintiffs themselves note in their Amended Complaint that SUNY rules prohibited the deliberate disruption of meetings and interference with the freedom of any person to express their views. ECF Doc. 262 at ¶ 19; *see also* Statement of Material Facts in Support of Defendant Pelletier's Motion for Summary Judgment Pursuant to FRCP 56 ("SMF") at ¶ 10. Moreover, and contrary to the alleged speech suppression policy, the College Republicans engaged in speech many times before and after the Tabling and Laffer Events – including hosting guest speakers, holding meetings, conducting elections, posting flyers, and participating in University events with other student organizations – and no one from the University PD or Binghamton University ever impeded their speech. SMF at ¶¶ 21, 22. Indeed, University PD had worked many political events on campus, including protests, rallies, political speaking events, and visits by the governor and President, none of which resulted in arrests, evacuation, cancellation, or the speaker being unable to continue speaking. SMF at ¶ 18. Furthermore, the well documented free speech policy applicable to the University confirms that it had a policy to promote and protect free speech, including plaintiffs' speech. SMF at ¶¶ 10-12. Thus, plaintiffs' official capacity claims against Pelletier fail as a matter of law.

In any event, an isolated episode of unconstitutional conduct that is not undertaken on behalf of a policymaker does not establish a policy for purposes of *Monell* liability. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) overruled on other grounds by *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Pelletier does not qualify as a policymaker for the State of New York simply based on his

6

position as Chief of the University PD. SMF at ¶¶ 8-9; *see Agosto v. New York City Department of Education*, 982 F.3d 86, 98 (2d Cir. 2020). Thus, the singular incidents at the Tabling and Laffer Events fail to rise to the level of "policy" necessary to support the official capacity claims under 42 U.S.C. § 1983.

Additionally, and crucially, "there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Mediavilla v. City of NY*, 259 F Supp. 3d 82, 109 (S.D.N.Y. 2016). Such link is missing here where University PD's actions at the Laffer and Tabling Events were not related to the content of plaintiffs' speech, but rather were in response to the dangers presented. SMF at ¶¶ 49, 50, 55, 59, 116, 122, 123-125. In the case of the Tabling Event, well before police allegedly intervened, plaintiffs had already ended their tabling because they had accomplished the goals of their speech, i.e. promoting the Laffer Event for several hours and handing out about 150 flyers. SMF at ¶ 62.

 **C. There was no underlying constitutional violation.**

Finally, plaintiffs' claims against Pelletier in his official capacity cannot stand without an underlying constitutional violation. Since the First Amendment and Fourteenth Amendment claims must be dismissed, as discussed below, the claims against Pelletier in his official (and individual) capacity likewise fail. *See, e.g., Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) citing *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 359 (N.D.N.Y. 2008) *aff'd*, 331 F. App'x 894 (2d Cir. 2009). Accordingly, there is no plausible basis for liability against Pelletier in his official capacity, and his motion for summary judgment dismissing the Amended Complaint against him should be granted in its entirety.

## II.   THE CLAIMS AGAINST PELLETIER IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY.

Plaintiffs assert claims against Pelletier in his individual capacity arising from the Laffer Event. ECF Doc. 262. Qualified immunity shields Pelletier from liability, and these claims must also be dismissed.

Individual capacity claims seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, in order to establish personal liability in a section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See Graham,* 473 U.S. at 166. While the plaintiff in a personal capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses. *See Hafer*, 502 U.S. at 25.

Pelletier is entitled to qualified immunity for his actions relating to the Laffer Event. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *City of Escondido, et al. v. Marty Emmons*, 586 U.S. 38 (2019), the Supreme Court explained the proper, detailed analysis for qualified immunity. The Court held that the clearly established right must be defined with specificity, and not at a high level of generality. The Court specifically held that "'it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on

the question of reasonableness.'" *Id*. at 42-43 (quoted case omitted). The established right must have sufficiently defined contours so that officers would understand when they would be violating that right. *See id.* There must be specific cases on point where an officer was acting under similar circumstances and thereby deemed to have violated the plaintiff's rights. *See id*.

Courts typically consider two questions in a qualified immunity analysis: (1) whether the facts shown make out a violation of a constitutional right; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). On the second element, the Court must evaluate (a) whether the defendant's action violated "clearly established law" and (b) whether it was "objectively reasonable" for the defendant to believe that his or her action did not violate such law. *Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002) quoting *Tierney*, 133 F.3d at 196.

A decision in favor of a public official based on qualified immunity is appropriate if: (1) the conduct attributed to him is not prohibited by federal law, or if such conduct is so prohibited; (2) if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65-66 (2d Cir. 1999); *see also Thomas*, 165 F.3d at 142-43.

As discussed in detail below, Pelletier's conduct did not violate any of plaintiffs' constitutional rights. But even if Pelletier had violated any of plaintiffs' rights, it was not objectively reasonable for him to know that his conduct arguably violated any such rights. It is settled law that "[t]he objective reasonableness test is met . . . if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas*, 165 F.3d at 143

9

*quoting Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Pelletier and the University PD took proactive steps before the Laffer Event so that it could proceed successfully and safely. SMF at ¶¶ 68-94, 98-105. As of November 11, 2019, neither plaintiffs nor Laffer had security concerns for the Laffer Event and so University PD planned to assign one plain clothes officer to attend the event, which was anticipated to attract approximately 150 people. SMF at ¶¶ 68-69. In the days after the Tabling Event, however, University PD became aware of the potential for protests. SMF at ¶ 70. Pelletier, University PD, and University administrators met to discuss the Laffer Event and the need to be proactive to make sure all parties were protected, which included making arrests in order to protect and enforce the First Amendment and planning a way for Laffer to give his lecture safely. SMF at ¶ 78-79. Pelletier volunteered to meet Laffer at the airport to inform him of the threat; Pelletier's belief that no one had informed Laffer of the threat turned out to be correct. SMF at ¶ 79, 94. They also moved the Laffer Event from the smaller room where it was originally scheduled to a larger, multi-tiered lecture hall that provided more ingress and egress routes for Laffer and for the police if they had to arrest someone and take them out, and which provided more space to give the police a tactical advantage in controlling the environment. SMF at ¶¶ 78-83. University PD also increased the number of officers to maintain order due to the disruption threat and put mobile video cameras in Laffer's lecture hall to record the Laffer Event in case it was needed for the prosecution of criminal activity. SMF at ¶¶ 88-94, 98.

Pelletier could not restrict who entered the Laffer Event because plaintiffs decided to have the lecture be an unticketed event open to the public. SMF at ¶¶ 95, 106. Plaintiffs wanted to have as many people as possible attend, both those who agreed with Laffer's message and those who disagreed. SMF at ¶ 95. Plaintiffs even fully anticipated that protestors would attend

and shut down the lecture. SMF at ¶ 96. As plaintiffs hoped, they had a large turnout at the lecture. And as plaintiffs' expected, protestors were among those who attended and they shut it down. SMF at ¶¶ 111-125. Pelletier did not shut down the lecture. SMF at ¶ 125. Pelletier and the other officers were faced with an increasingly dangerous situation in which they and plaintiffs themselves felt at risk of harm by the protestors. SMF ¶¶ 116-124. Pelletier did not force Laffer to end his lecture; College Republican president John Restuccia suggested they all leave and so they did. SMF at ¶ 125.

Even if plaintiffs argue that Pelletier instructed Laffer to leave, he would still be entitled to qualified immunity because there was no clearly established law prohibiting Pelletier from removing the source of the protestors' ire, Laffer, to protect the safety of himself (Pelletier), his officers, Laffer, and plaintiffs. It would have been objectively reasonable for Pelletier to believe that Laffer could be escorted away for everyone's safety. Thus, the personal capacity claims against Pelletier fail as a matter of law and must be dismissed.

## III.   PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF LAW.

### A.   The Spine is a limited public forum, and the alleged police actions in ending plaintiffs' Tabling Event did not violate plaintiffs' First Amendment rights.

Plaintiffs allege that defendants, including Pelletier, knowingly and intentionally deprived plaintiffs of their right to freedom of speech and engaged in content and viewpoint discrimination of student speech and expression during both the Tabling and Laffer Events in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the US Constitution and 42 U.S.C. § 1983. ECF Doc. 262 at ¶¶ 160-64. Importantly, however, there was no First Amendment violation, and for this additional reason, Pelletier is entitled to judgment as a matter of law.

The First Amendment prevents the government from "abridging the freedom of speech,

or freedom of the press," and assures "the right of the people peacefully to assemble." U.S. Const. amend. I. While broad, First Amendment protections are not absolute. *See Regan v. Boogertman*, 984 F.2d 577, 579 (2d Cir. 1993) citing *Elrod v. Burns*, 427 U.S. 347, 360 (1976). In order to establish that a plaintiff's First Amendment rights were violated, a court must determine: "(1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard." *Wandering Dago, Inc., v. New York State Office of General Services*, 992 F. Supp.2d 102, 115 (N.D.N.Y. 2014). There must also be a causal connection between the allegedly adverse action and the protected speech. *See Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

Assuming plaintiffs' speech at the Tabling Event was protected by the First Amendment, the Spine was a limited public forum, and the police response to the protests against plaintiffs was appropriate. In evaluating whether the government's attempts to restrict constitutionally protected activities are prohibited by the First Amendment, "the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 469 (S.D.N.Y. 2012). In the Second Circuit, there are four classifications of government property: (1) traditional public fora, (2) designated public fora, (3) limited public fora, and (4) nonpublic fora. *See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011). Once the Court determines the forum, it "then applies the requisite standards for that forum to the challenged speech restriction." *Am. Freedom Defense Initiative v. Metro Trans. Auth*, 880 F. Supp. 2d 456, 469 (S.D.N.Y. 2012).

Here, both the Spine where the Tabling Event occurred and lecture hall where the Laffer

12

Event took place were limited public fora. This Court already determined that the lecture hall was a limited public forum when deciding the motions to dismiss the complaint. ECF Doc. 70 at 23; *see also Hickok v. Orange Cty. Cmty. Coll.*, 472 F. Supp. 2d 469, 475 (S.D.N.Y. 2006) ("The lecture hall at the College is a limited public forum"). The lecture hall remains a limited public forum for purposes of this motion as well. Indeed, the cases are legion in which courts have held that university lecture halls are limited public fora. *See Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) (collecting cases) citing *Widmar v. Vincent*, 454 U.S. 263 (1981); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 226 F. Supp. 2d 401, 418 n.12 (S.D.N.Y. 2002) ("Most courts have interpreted the Court [in *Widmar*] as having treated the University's forum as a limited public forum."); *see also Young America's Found. v. Kaler*, 370 F.Supp.3d 967, 983 (D.Minn. 2019) (collecting cases); *Keister v. Bell*, 2020 U.S. Dist. 97794, *30-31 (N.D. Ala. May 19, 2020) (collecting cases).

A limited public forum is created when the State opens a non-public forum, but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects. *See Johnson v. Perry*, 859 F.3d 156, 172 (2d Cir. 2017); *see also Byrne v. Rutledge*, 623 F.3d 46, 55 n.8 (2d Cir. 2010) ("[T]he law of this [Circuit] describes a limited public forum as both a subset of the designated public forum and a nonpublic forum opened to certain kinds of speakers or to the discussion of certain subjects." (internal citations and quotation marks omitted). Like the lecture hall, the Spine where the Tabling Event occurred was also a limited public forum. Traditionally, public forums are places such as city streets and sidewalks. *See Hotel Emples. & Rest. Emples. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545 (2d Cir. 2002). The Spine was a campus walkway between the school's buildings. SMF ¶ 31. It had a high volume of foot traffic. SMF at ¶ 32. It was thus an area in high demand for tabling. SMF at

13

¶ 32. The University permitted tabling on the Spine, but due to the high demand, groups seeking to table were required to make advance reservations for the space. SMF at ¶¶ 30, 32, 53.

While the Second Circuit has stated that certain areas of a public college may be a traditional public forum, the court has not stated that an area like the Spine is such a forum. *Davis v. Stratton*, 360 F. App'x 182, 184 (2d Cir. 2010). The Seventh Circuit held that even a lawn at a university is a limited public forum. *Gilles v. Blanchard*, 477 F.3d 466, 471 (7th Cir. 2007). The *Gilles* court explained that the lawn was not a public forum because there was no indication that members of the general public were "permitted to give a speech, to play the bongo drums, to pitch a tent, to beg, to sunbathe, to play frisbee, or to engage in solicitation--without an invitation, whether from the university or from a faculty member or a student group." *Gilles*, 477 F.3d at 472. In other words, members of the public did not have nearly as much freedom to use the lawn as they would a traditional public forum. The same is true of the Spine. There is no indication that the Spine was open to all members of the public to use for any purpose. SMF at ¶¶ 31, 34.

Similarly, the Eleventh Circuit determined that a sidewalk at the University of Alabama is a limited public forum. *Keister v. Bell*, 29 F.4th 1239, 1255 (11th Cir. 2022). In a detailed decision, the *Keister* court observed that just because the government happens to own a sidewalk, it does not turn the sidewalk into a public forum comparable to a city street. To the contrary, the sidewalk at issue was part of the University campus, and "the University controls and maintains the Sidewalk. It shovels snow there, and its police department is responsible for responding to incidents on that spot." *Keister*, 29 F.4th at 1254. The Spine is virtually indistinguishable from the sidewalk in *Keister*. Both were part of university campuses and both were controlled by the respective universities. SMF at ¶¶ 30-32, 34. Additionally, University PD was responsible for

responding to incidents on the Spine, as it did in this case. SMF at ¶ 4.

If a lawn at a university and the University of Alabama's sidewalks are public fora, then so too is the Spine. Binghamton University controlled the Spine, had tabling reservation rules, was responsible for its upkeep, and was responsible for safety issues on the Spine. SMF at ¶¶ 30-32, 34. Thus, this Court should determine that the Spine is a limited public forum.

This is important because reasonable time, place, and manner restrictions on speech in a limited public forum comply with the First Amendment "so long as they are content-neutral, serve a significant government interest and leave open alternative channels for expression." *Brenchley*, 2005 WL 2437027 at *3 citing *United States Postal Serv. v. Council of Greenburgh Ciil Ass'ns*, 453 U.S. 114, 132 (1981); *Hansen v. Town of Smithtown*, 342 F Supp 3d 275, 291 (E.D.N.Y. 2018); *see Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009).

It is undisputed that Pelletier was not present for the Tabling Event. SMF at ¶ 63. In any event, even if he could be held liable in his official capacity for the University PD's actions in responding to the protests at the Tabling Event on the Spine, there was no First Amendment violation. By the time the tabling group left, the College Republicans had already accomplished their goals for tabling in the first place. SMF at ¶ 62. Specifically, they accomplished the goals of promoting the Laffer Event and handing out about 150 flyers. SMF at ¶ 62. In fact, College Republicans emailed YAF at 2:10 p.m., before the protesting turned into a volatile disturbance, to inform YAF that the College Republicans, not the University PD, ended the tabling, stating "we just ended tabling. We were getting protested by 30 people from progressives but we handed out 150 flyers." SMF at ¶ 62. A half hour later College Republicans emailed YAF again with the update that "over 100 people showed up." SMF at ¶ 62. Thus, the speech that plaintiffs claim was infringed had already concluded.

The College Republicans and Turning Point USA tabled without incident – despite intentionally choosing to violate the rules by not making a reservation (SMF at ¶ 35) – from 10:00 a.m. into the afternoon when a group of students confronted the tablers. SMF at ¶¶ 38-42. In response to a call about a disturbance on the Spine, approximately five to eight University PD arrived on scene. The police stood between the four or five tablers and the protestors for a period of time, protecting the tablers. SMF at ¶¶ 43, 56. Additionally, University and Student Association staff told the tablers to relocate their tabling because they had not made a reservation. SMF at ¶ 51. The College Republicans, who intentionally defied the reservation rules by making a conscious decision not to make a reservation, did not relocate. SMF at ¶ 52.

Meanwhile, protestors accused the officers of suppressing *their* speech by protecting the College Republicans and Turning Point USA. SMF at ¶¶ 56-58. The large crowd, numbering in the hundreds, became increasingly agitated and far outnumbered the officers. SMF at ¶ 59. Since there was a clear potential for violence, an officer informed the tabling group that if the crowd turned physically violent against those tabling, they did not know if they would be able to protect the tabling group's safety. SMF at ¶ 59. Officers told the tablers that it would be best to leave for their own protection. SMF at ¶ 60. This action was content neutral and undertaken to protect the peace. It occurred after the tablers had already successfully tabled for several hours and had already informed YAF that they were done for the day. SMF at ¶¶ 38-42, 62. The officers determined that given the particular circumstances, they could not safely arrest protestors at the scene because of the likelihood that an arrest would further escalate the protestors' conduct. SMF at ¶ 55. The officers also determined that they could not have dispersed the large crowd of protestors without using physical force. SMF at ¶ 54. Furthermore, University PD later brought criminal charges against two protestors pursuant to College Republicans' request. SMF at ¶ 65.

Nothing about the University PD's actions were discriminatory or violative of plaintiff College Republicans' First Amendment rights. After all, the tablers were there for several hours, even though their tabling could have been removed for not having a permit. It was not suggested they leave until a mob, which overwhelmingly outnumbered University PD officers and the tablers, became increasingly hostile and posed a very real, imminent threat. It is clear that the tablers were not asked to leave based on political viewpoints.

In fact, although the Spine is clearly a limited public forum, even it was a public forum, the University PD could have asked the tablers to leave. Limiting speech is permitted when there is a clear and present danger. *Tyler v. City of Kingston*, 593 F. Supp. 3d 27, 31 (N.D.N.Y. 2022) citing *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017). The Second Circuit defines a clear and present danger as an "immediate threat to public safety, peace, or order." *Johnson*, 859 F.3d at 171 (2d Cir. 2017). Here, there was an agitated crowd of hundreds of protestors trying to destroy tables and flyers, harassing the tablers, and ripping a Trump hat off a College Republican. There was an immediate threat to safety, peace, and order and University PD did not know if they could keep plaintiffs safe. Thus, there was a clear and present danger. Furthermore, as a matter of common sense, the University PD acted reasonably given the large number of protestors. The police decision to deescalate resulted in zero injuries and no need to resort to physical force.

Similarly, over 50 years ago, "where a public gathering threatened to escalate into racial violence and members of a hostile crowd began voicing physical threats, the Supreme Court expressly sanctioned police action that ended the demonstration and arrested the speaker, who defied police orders to cease and desist." *Papineau v. Parmley*, 465 F.3d 46, 57 (2d Cir. 2006), citing *Feiner v. New York*, 340 U.S. 315, 318 (1951). The US Supreme Court noted that law

17

enforcement was not "'powerless to prevent a breach of the peace in light of the 'imminence of greater disorder' that the situation created." *Papineau*, 465 F.3d at 57 (2d Cir. 2006), quoting *Feiner*, 340 U.S. at 321. In this case, by their own admission, the College Republicans were afraid of violence since a protester knocked off a hat off a College Republican. There was an immediate threat to safety and peace. In such a situation, the University PD lawfully suggested that the College Republicans to leave for their own protection. This conduct did not violate plaintiffs' First Amendment right to free speech.

Moreover, there was not causal link between the content of plaintiffs' speech and the actions of University PD at the Tabling Event. In order to meet the causation requirement of this cause of action, the facts have to show that the protected speech was "at least a 'substantial' or 'motivating' factor" in University PD's actions in escorting College Republicans from the Tabling Event. *See White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993) (citations omitted); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (same). The evidence in this case clearly demonstrates that the content of plaintiffs' speech was not a factor in University PD's actions in finally dispersing the tablers. Thus, there was no First Amendment violation, and therefore plaintiffs' Amended Complaint should be dismissed as against Pelletier as a matter of law.

### B. Pelletier's actions in the lecture hall during the Laffer Event did not endorse a heckler's veto or infringe plaintiffs' First Amendment rights.

The First Amendment does not permit a "heckler's veto," (*Deferio v. City of Syracuse,* 306 F. Supp. 3d 492 (N.D.N.Y. 2018), but plaintiffs' argument that Pelletier enforced a "heckler's veto" during the Laffer Event has a fatal flaw and likewise fails to substantiate a First Amendment violation.

While there is a dearth of case law directly discussing a "heckler's veto" in the context of

a limited public forum, the only appellate case directly addressing the issue favors Pelletier. In *Seattle Mideast Awareness Campaign*, 781 F.3d 489 (9th Cir. 2015), the Ninth Circuit held that while the concept of a "heckler's veto" may be applicable in cases concerning a limited public forum, that would only be if a claimed fear of a hostile audience reaction was based upon speculation, lacked substance, "or if only one side of a contentious debate is suppressed." *Id.* at 503. The safety concerns at the Laffer Event, however, were not based on speculation. It was not that there *might* be a hostile audience. There actually was a hostile audience, some even committing criminal offenses. SMF at ¶¶ 117, 118, 127, 128. The safety concerns, which were expressed by police, College Republicans, and YAF's representative (SMF at ¶¶ 122-124), warranted escorting Laffer out of the lecture hall for his own protection. Indeed, it was College Republicans' president, John Restuccia, who determined it was time to leave. SMF at ¶ 125.

At the Laffer Event, under Pelletier's command, the University PD arrested two protestors. SMF at ¶¶ 117-118. Both were charged with disorderly conduct, and one later received the added charge of obstruction of governmental administration. SMF at ¶¶ 117-118. Pelletier did not choose sides based on political views. Rather, officers removed individuals from the lecture hall for the safety of themselves and all others. Therefore, Pelletier cannot be held liable for violations of the First or Fourteenth Amendments on grounds that he imposed a "heckler's veto."

As explained above, in a limited public forum, such as the lecture hall, "the government may restrict speech in a way that is viewpoint-neutral and reasonable in light of the forum's established purpose." *R.O.*, 645 F3d at 540. During the Laffer Event, Pelletier's and the officers' actions were viewpoint neutral because they drew "no distinction between groups based on their message or perspective." *Roth v. Levittown Union Free Sch. Dist.*, 2023 US Dist LEXIS 171865,

19

at *6, citing *Christian Legal Socy. Ch. of the Univ. of California v Martinez*, 561 U.S. 661, 694 (2010). Even if Pelletier encouraged Laffer to leave, which the record does not support (SMF at ¶ 125), that was not because of the content of his speech or the College Republicans' views. This is obvious because the University PD also removed – and arrested – protestors. SMF at ¶¶ 117-118. No one was removed for a particular viewpoint, only for safety concerns and the protestors' criminal conduct. The police arrested only protestors, not any plaintiffs or Laffer. The record contains no evidence that Pelletier discriminated based on viewpoint. His actions and those of his officers were for the safety of everyone at the Laffer Event and the University campus as a whole. Thus, Pelletier cannot be held liable for violations of the First or Fourteenth Amendments, and the Amended Complaint should be dismissed as against him.

## C.     The lack of more arrests after the Tabling and Laffer Events did not violate plaintiffs' constitutional rights.

Plaintiffs make much of the fact that Pelletier and the University PD did not arrest more protestors after the Tabling and Laffer Events. ECF Doc. 262 at ¶ 134. Yet in their Amended Complaint, they acknowledge that Pelletier wanted to arrest more protestors after the Laffer Event, but was discouraged from doing so. ECF Doc. 262 at ¶ 135; *see also* SMF at ¶¶ 127-128. This completely undercuts plaintiffs' allegations that Pelletier discriminated against plaintiffs' viewpoint. Moreover, University PD did arrest and charge protestors from both events. SMF at ¶¶ 65, 117-118. Notably, the only individuals arrested were protestors, not plaintiffs. The decision to arrest (or not) more or different people after the events does not constitute a violation of plaintiffs' First or Fourteenth Amendment rights. In any event, "[a] private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings." *Lis v. Leahy*, No. CIV-90-834, 1991 U.S. Dist. LEXIS 21749, 1991 WL 99060, at *1 (W.D.N.Y. June 3, 1991); *see also Russitano v. Brown*, 2013 US Dist LEXIS 127957, at *28 (N.D.N.Y. 2013).

40821905.v2

Thus, the lack of additional arrests did not violate plaintiffs' constitutional rights.

## IV.    PLAINTIFFS' EQUAL PROTECTION CLAIMS UNDER THE FOURTEENTH AMENDMENT FAIL AS A MATTER OF LAW.

Plaintiffs allege that the defendants, including Pelletier, violated the Equal Protection Clause of the Fourteenth Amendment. ECF Doc. 262 at ¶¶ 192-93. Like the First Amendment claims, the Fourteenth Amendment claims fail as a matter of law.

Plaintiffs' Equal Protection claims fail because they rely on First Amendment claims that must be dismissed. "When a plaintiff's equal protection claims are based on alleged First Amendment violations, the former 'coalesce [ ] with the latter.'" *Gentile v. Nulty*, 769 F. Supp. 2d 573, 582-83 (S.D.N.Y. 2011) (internal citation omitted); *see African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002) (holding that the plaintiffs' First Amendment and Equal Protection claims coalesced because the alleged deprivation of Equal Protection was "punish[ment]" for plaintiffs' exercise of their First Amendment rights); *Gentile*, 769 F. Supp. 2d at 582-83; *see also Kempkes v. Downey*, 2008 U.S. Dist. LEXIS 25981 (S.D.N.Y. 2008) ("in other words where the First Amendment claim has failed, the equal protection claim fails, too.").

Even if plaintiffs' Equal Protection claims against Pelletier do not fail because they rely on the First Amendment claims, they still must be dismissed as a matter of law. "The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, 2008 U.S. Dist. LEXIS 104924, at *20 (N.D.N.Y. 2008) citing *Myers v. Barrett*, 1997 U.S. Dist. LEXIS 3995, at *3 (N.D.N.Y. 1997).

Plaintiffs' argument that they were treated differently than other student groups based on their political viewpoint fails as a matter of law. The record reveals no evidence of being treated differently than any similarly situated group. Their allegation of the existence of a "speech suppression policy" has not been corroborated with any evidence, nor could it be since such policy have never existed. Additionally, before the Tabling and Laffer Events, the College Republicans engaged in speech on campus many times, including hosting events and guests speakers, and neither the University PD nor any other University personnel ever impeded their speech. SMF at ¶ 21. They likewise continued to host events and speakers after the Laffer Event, without the University PD or other University personnel interfering. SMF at ¶ 22. There is no evidence of who any similar situated group was or that there was any discrimination against anyone. Nor is there evidence that plaintiffs were in a protected class.

## V.    PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES OR INJUNCTIVE RELIEF.

Because plaintiffs' remaining two causes of action against Pelletier must be dismissed as a matter of law, the entirety of their Amended Complaint against him should be dismissed, which necessarily includes their requests for relief. As explained above, plaintiffs are not entitled to recover damages from Pelletier in his official capacity because of Eleventh Amendment immunity or in his personal capacity due to qualified immunity and a lack of a violation of any constitutional right. Moreover, plaintiffs are not entitled to the injunctive relief they seek because they request impermissible "obey the law" injunctions, nor are punitive damages warranted against Pelletier. Accordingly, these requests for damages should be stricken.

### A.    Punitive damages are not warranted in this case.

Plaintiffs seek punitive damages from Pelletier in his individual capacity. ECF Doc. 262 at ¶ 3, and page 41 at ¶ G. That request should be stricken as a matter of law because as a matter

of law the conduct at issue does not rise to the level warranting punitive damages.

The purpose of punitive damages is "to punish the defendant and deter him and others from similar conduct in the future." *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996). As an initial matter, the deterrence objective cannot be satisfied here where Pelletier has retired from the University PD. SMF at ¶ 1. In any event, in a § 1983 action, punitive damages are available only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lee*, 101 F.3d at 808 (2d Cir. 1996) (internal citation omitted). Thus, in order "to be entitled to an award of punitive damages, a claimant must show a positive element of conscious wrongdoing." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2001). That element of conscious wrongdoing is missing here, and therefore plaintiffs are not entitled to punitive damages as against Pelletier. Rather than evincing a positive element of conscious wrongdoing, the admissible evidence proves that Pelletier acted to protect Laffer and plaintiffs and to remove and arrest protestors. SMF at ¶¶ 78-90, 92, 98, 102, 114, 115-118. Indeed, he wanted to arrest additional protestors, which belies any claim of evil motive or callous indifference to plaintiffs' rights. SMF at ¶¶ 127-128.

The claims against Pelletier in his individual capacity arising from the Laffer Event do not support an award of punitive damages. His conduct in responding to the protestors does not demonstrate the type of morally reprehensible conduct necessary to maintain a claim for punitive damages, and the request for punitive damages against him must be dismissed as a matter of law.

### B.    Plaintiffs are not entitled to the injunctive relief they request.

In plaintiffs' prayer for relief, they ask the Court to "B) permanently enjoin Defendants from disrupting and silencing Plaintiffs' speech and related activities as set forth in this

Complaint; C) permanently enjoin Defendants Stenger, Rose, and the new Chief of University PD from ratifying heckler's vetoes or otherwise enforcing the speech suppression policy." ECF Doc. 262 at 41. These vague requests for injunctive relief amount to nothing more than requests that the Court order the police chief and other defendants to not violate the US Constitution. These are nothing more than requests for impermissible "obey the law" injunctions.

As this Court has recognized, "'[o]bey the law injunctions are vague, do not require defendants to do anything more than that already imposed by the law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement. As such, these injunctions are not favored and the relief requested is not warranted here.'" *Akinlawon v. Mayo*, 2024 U.S. Dist. LEXIS 41749, at *14-15 (N.D.N.Y. 2024) *quoting Rowe v. N.Y. State Div. of the Budget*, 2012 U.S. Dist. LEXIS 132238, at *18 (N.D.N.Y. 2012); *see Peregrine Myanmar v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996); *Dublino v. McCarthy*, 2019 U.S. Dist. LEXIS 78347, at *52 (N.D.N.Y. 2019).

"Obey-the-law" injunctions are unenforceable in the context of First Amendment claims. *See Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006). Accordingly, plaintiffs are not entitled to the injunctive relief they seek in this case, and therefore the requests for injunctive relief should be stricken for this additional reason.

## VI.    PLAINTIFF REIN BEY HAS NO STANDING TO BRING THIS ACTION.

Plaintiff Rein Bey, who sues in her official capacity as president of the College Republicans of Binghamton University, has no standing in this action. She is no longer president of the College Republicans, and she is no longer registered as a SUNY Binghamton. SMF at ¶ 133. Thus, she cannot maintain this action and should be dismissed from the case.

## CONCLUSION

This case is not what plaintiffs thought or at least tried to allege that it was. Far from vindicating constitutional rights of students silenced by powerful university actors conspiring to enforce a speech suppression policy, plaintiffs are left with no cause of action against Pelletier. The evidence has demonstrated nothing more than two related incidents of disruptive protests that University PD promptly and safely addressed, resulted in arrests of protestors, and caused no harm to plaintiffs. For all of the foregoing reasons, the University's former Chief of Police, defendant John Pelletier, is entitled to judgment as a matter of law dismissing both of plaintiffs' causes of action against him. His motion for summary judgment should be granted, and the Amended Complaint should be dismissed as against him, in its entirety, on the merits and with prejudice.

DATED:  May 31, 2024                    **GOLDBERG SEGALLA LLP**

                                        *s/ Molly M. Ryan*
                                        _____
                                        Molly M. Ryan
                                        Bar Roll No.: 516097
                                        5786 Widewaters Parkway
                                        Syracuse, New York 13214
                                        315-413-5460
                                        mryan@goldbergsegalla.com

                                        Meghan M. Brown
                                        Bar Roll No.: 702824
                                        665 Main Street
                                        Buffalo, New York 14203
                                        716-844-3457
                                        mbrown@goldbergsegalla.com
                                        *Attorneys for Defendant John Pelletier*

40821905.v2