# King & Spalding

King & Spalding LLP
1290 Sixth Ave.
14th Floor
New York, NY 10104
Tel: +1 212 556 2100
www.kslaw.com

Andrew C. Hruska
Partner
1290 Sixth Ave.
14th Floor
New York, NY 10104
Direct Dial: +1 212 556 2278
ahruska@kslaw.com

**VIA ELECTRONIC CASE FILING**

Hon. Elizabeth C. Coombe
James M. Hanley Federal Building
100 S. Clinton St.
Syracuse, NY 13261

  Re: **Young America's Foundation, et al v. Pelletier, et al.**
     **Case No. 3:20-cv-00822-ECC-TWD GS File No. 1694.0001**

Dear Judge Coombe:

  Plaintiffs have issued subpoenas to former Defendants Stenger and Rose and University witness Ryan Yarosh to secure their live testimony at trial. Each now attempts to prevent the jury from hearing that testimony by arguing in letter submissions that their past depositions would be sufficient substitutes for their trial testimony. ECF No. 382 (Rose Letter); ECF No. 384 (Stenger Letter); ECF No. 386 (Yarosh Letter). Notwithstanding that each witness is apparently legally available, each indicated he would likely move to quash his trial subpoena. *Id.* In advance of Friday's conference, Plaintiffs wish to provide authority and background to help the Court understand why each witness stands to offer highly valuable testimony and why any purported inconvenience cannot thwart the jury's right to evaluate these witnesses' live testimony.

  While a subpoena's burden must be balanced against the likely relevance of the testimony sought, Rule 45's relevancy threshold is "relatively low," *Delta Air Lines, Inc. v. Lightstone Grp.*, LLC, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021). But in this case, each witness would offer not merely relevant but critical trial testimony.

  First, this testimony would bear on the Defendants' responsibility for key decisions that harm the Plaintiffs. Defendants in bureaucratic organizational settings attempt to evade liability by obscuring the scope of their responsibility. The jury will need to hear from these witnesses for what Defendants Pelletier and the Student Association were responsible. While each witness asserts he was not directly involved with Defendant Pelletier's handling of the Laffer Event or Defendant Student Association's suspension of the College Republicans' B-There account, their testimony will help explain the true scope of remaining Defendants' responsibilities for essential decisions.

Each witness would also offer unique or corroborating testimony on multiple other discrete and essential topics. These witnesses will testify to the University's reaction to these events which emboldened Defendants, to violate Plaintiffs' First Amendment rights.

For example:

- Rose was an eyewitness to the end of the Tabling Event and the police presence for the Laffer Event;

- Rose discussed preparations for the Laffer Event and Defendant Pelletier's airport meeting with Dr. Laffer with Defendant Pelletier;

- Rose communicated with Defendant Student Association about its decision to suspend the College Republicans' B-There account; and

- Rose was a participant in and witness to decisions against student discipline and raised his contemporaneous concerns about differential treatment of the College Republicans.

- Stenger was a participant in and witness to University messaging before, between and after these events;

- Stenger is a witness to the historical disciplinary record after an incident involving arrests and the post-event discussions of whether to discipline students involved in the Laffer Event disruption; and

- Stenger can testify to his own evaluation as a supervisor as to Defendant Pelletier's performance.

- Yarosh was an eyewitness to the Tabling and Laffer Events;

- Yarosh can testify to the University's awareness of and preparations for the disruption of the Laffer Event, including the origin of the pre-event letter issued by a number of groups announcing the planned disruption; and

- Yarosh can testify to his knowledge of and concerns with the Student Association's punishment of the College Republicans.

While the witnesses have already testified to some extent on these topics in their depositions, their deposition transcripts are not appropriate substitutes for live testimony. Plaintiffs did not explore these topics in the same way or to the same extent as they would at trial. Stenger and Rose were both parties to this action when they were deposed such that their *own* individual responsibilities were the focus of their deposition testimony.

Finally, the trial process is founded on live testimony before the jury. Appearing in response to a Rule 45 subpoena is not burdensome under normal circumstances. As courts

December 18, 2025
Page 3

in this circuit have repeatedly observed, "[t]he general rule is that testimony at all trials must be live" where deposition testimony is "not to be resorted to if the witness can appear in person." *Banks v. Yokemick*, 144 F.Supp.2d 272, 288 (S.D.N.Y. 2001) (citation omitted). Among other reasons, the "strong preference for live testimony" has often been honored because live testimony provides the trier of fact the opportunity to observe the witness's demeanor and evaluate his credibility. *Teller v. Helbrans*, 2019 WL 3975555, at *1-*2 (E.D.N.Y. 2019) (quoting *United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981)).

While no witness specifies the purported "burden" of testifying live, the Court may take judicial notice that the driving time from Binghamton to Syracuse is slightly over an hour. "When a party moves to quash a subpoena on the basis of undue burden, he must do more than simply allege that compliance will be inconvenient." *United States v. M/Y Amadea*, 2024 WL 4471617, at *3 (S.D.N.Y. 2024). Even granting the minor convenience of live testimony, inconvenience, "without more, is not a basis to quash a subpoena." *City of Almaty, Kazakhstan v. Sater*, 2020 WL 2765084, at *3 (S.D.N.Y. 2020) (citing *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013)); *see also James v. Runyon*, 1993 WL 173468, at *2 (N.D.N.Y. 1993).

None of these witnesses has even argued—let alone demonstrated—he is unavailable. Where live testimony from each is feasible and highly valuable, the Court should deny any coming motion to quash.

Sincerely,

*Andrew Hruska*

Andrew C. Hruska

CC:    All Counsel of Record (via ECF)