# KING & SPALDING

King & Spalding LLP
1290 Sixth Ave.
14th Floor
New York, NY 10104
Tel:  +1 212 556 2100
www.kslaw.com

Andrew C. Hruska
Partner
Direct Dial: +1 212 556 2278
ahruska@kslaw.com

July 15, 2026

**VIA ELECTRONIC CASE FILING**

Hon. Elizabeth C. Coombe
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

> **Re:   Young America's Foundation, et al v. Pelletier, et al.**
> **Case No. 3:20-cv-00822-ECC-CBF GS File No. 1694.0001**

Dear Judge Coombe:

Plaintiffs respectfully request that the Court include the following supplemental jury instruction in its final charge to the jury:

> You may have noticed that Binghamton University is not a party in this case. The law does not permit Plaintiffs to bring this type of damages claim against Binghamton University in this court. You should not speculate about why the University is not a defendant. You should decide this case based solely on the evidence presented to you concerning the defendant, John Pelletier, and the claims and defenses that have been submitted to you.

Plaintiffs submit this request now, during trial, because Defendant's counsel's opening statement has made the instruction necessary to prevent prejudice and juror confusion. For the reasons set forth below, the instruction is legally appropriate, narrowly tailored, and required to ensure a fair trial.

July 15, 2026
Page 2

## I.    Defendant's counsel's opening statement exploited the university's absence to prejudice Plaintiffs.

During her opening statement, Defendant's counsel employed a classic "empty chair" strategy designed to shift the jury's focus away from Defendant Pelletier's individual conduct and toward the absence of Binghamton University and other non-parties. Specifically, counsel stated:

> So I told you a little about Chief Pelletier and you will hear from him yourself. He is the only defendant. And the claims are against him in his individual capacity, as the court will instruct you. This is not a case against the university or any of its administrators, it is not a case against any of the protesters or groups that organized the protesters. They are not here to face any consequences for being the people who disrupted the speech. Trial Tr. (July 13) 146:9-16.

This statement was not an innocent observation about the procedural posture of the case. It was a deliberate rhetorical device calculated to accomplish two objectives. First, by emphasizing that the university is "not here," defense counsel invited the jury to infer that Plaintiffs chose not to sue the University—and that this choice reflects a weakness in the Plaintiffs' case. Second, by pointing out that the protesters who disrupted the speech are also absent, counsel suggested that Plaintiffs are pursuing the wrong defendant entirely and that whatever happened was the fault of parties who are not at the trial table to "face any consequences."  This is particularly unfair and prejudicial to Plaintiffs in this case, where each of those individuals and entities the Defendant referenced in his opening (Mr. Stenger, Mr. Rose, PLOT, and College Progressives) were sued by Plaintiffs but were dismissed by the Court.

Left unrebutted, this argument will distort the jury's deliberations. Jurors will naturally wonder why Plaintiffs did not sue the University if the University's policies or institutional failures are at issue. They may conclude, incorrectly, that Plaintiffs' decision to sue only Chief Pelletier reflects a lack of confidence in the claims. And they may be reluctant to impose personal liability on an individual employee for what defense counsel has framed as an institutional or third-party problem. The requested instruction is necessary to correct these misimpressions before they take root.

## II.    The requested instruction is consistent with the "empty chair" doctrine.

Federal courts have long recognized the need for curative or clarifying jury instructions when one party attempts to exploit the absence of a non-party to gain an unfair advantage at trial. This body of law, commonly referred to as the "empty chair" doctrine, arises most frequently in tort cases where a co-defendant has settled before

July 15, 2026
Page 3

trial and the remaining defendant attempts to shift blame to the absent party. Courts address this tactic through jury instructions that neutrally explain the absent party's status and direct the jury to decide the case solely on the evidence before it.

The same reasoning applies here with equal, if not greater, force. In the typical "empty chair" scenario, the absent party was once in the case and departed through a voluntary settlement. In this case, Binghamton University was never a viable damages defendant at all. The Eleventh Amendment to the United States Constitution bars suits for damages against state entities in federal court absent waiver or valid congressional abrogation. The Supreme Court held in *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989), that neither a state nor its officials sued in their official capacities are "persons" subject to liability under 42 U.S.C. § 1983. Because Binghamton University is a constituent part of the State University of New York and thus an arm of the state, the plaintiff is legally prohibited from bringing a § 1983 damages claim against it in this Court. The plaintiff's only available remedy is an individual-capacity suit against the official who personally caused the constitutional deprivation. *Hafer v. Melo,* 502 U.S. 21, 25 (1991).

The jury, of course, does not know any of this. And defense counsel's opening statement was crafted to exploit that ignorance. The "empty chair" doctrine exists precisely to prevent this kind of strategic manipulation. Just as a court would instruct a jury not to draw adverse inferences from a co-defendant's pretrial settlement, the Court should instruct this jury that the University's absence is a function of law, not a reflection on the merits of Plaintiffs' claims.

### III.    The instruction is narrowly tailored and neutral.

The proposed instruction does not editorialize, does not explain the intricacies of sovereign immunity doctrine, and does not invite sympathy for either party. It does four things, each of which is appropriate:

First, it identifies the absent party. Second, it provides a brief, neutral explanation that the law does not permit Plaintiff to bring this type of claim against the University. Third, it directs the jury not to speculate about the University's absence. Fourth, it refocuses the jury on the evidence and claims actually before it.

This structure mirrors the standard form of "empty chair" instructions used across the federal courts. It is no broader than necessary to counteract the prejudice introduced by defense counsel's opening statement, and it does not ask the jury to evaluate any legal doctrine outside its province.

July 15, 2026
Page 4

**IV.    The Court has broad discretion to fashion supplemental instructions.**

The Court possesses inherent authority and broad discretion to craft jury instructions that ensure a fair trial, prevent juror confusion, and respond to developments during the course of trial. This discretion extends to supplemental instructions that are not drawn from model charges, particularly when circumstances arise—such as a party's trial tactics—that the model instructions do not anticipate.

The Second Circuit reviews jury instructions for whether, taken as a whole, they adequately and accurately convey the applicable law without misleading or confusing the jury. A supplemental instruction that neutrally addresses an absent party and directs the jury to focus on the evidence before it falls well within the Court's discretion and poses no risk of reversal.

## Conclusion

Defendant's counsel has placed the University's absence squarely before the jury as a rhetorical weapon. Without a corrective instruction, the jury is left to speculate—and to draw precisely the adverse inferences that counsel's opening statement was designed to cultivate. Plaintiffs respectfully request that the Court include the proposed instruction in its final charge to prevent this prejudice and to ensure that the jury decides this case on the merits of the claims and evidence actually before it.

Sincerely,

/s/ Andrew Hruska

Andrew C. Hruska

CC:    All Counsel of Record (via ECF)